1
2
3
4
5
6
7

KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
JACQUELINE CONCILLA - # 335733
jconcilla@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

8
9

Attorneys for Defendant
TWILIO INC., a Delaware corporation,

UNITED STATES DISTRICT COURT

10

NORTHERN DISTRICT OF CALIFORNIA

11

SAN FRANCISCO DIVISION

12
13
14
15
16
17
18
19
20

NOAH BENDER, individually and on behalf of all others similarly situated,

                Plaintiffs,

     v.

TWILIO INC., a Delaware corporation,

           Defendant.

Case No. 3:24-cv-04914-AMO

**DEFENDANT TWILIO INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date:     January 23, 2025
Time:     2:00 p.m.
Dept.:     10, 19th Floor
Judge:    Hon. Araceli Martínez-Olguín

Date Filed: August 8, 2024

Trial Date:  None Set

21
22
23
24
25
26
27
28

2797136

# <u>TABLES OF CONTENTS</u>

**<u>Page</u>**

I.      INTRODUCTION ..................................................................................................2

II.     BACKGROUND ....................................................................................................4

      A.      Plaintiff downloaded and used the Calm App and agreed to Calm's Terms of Service and Privacy Policy. ......................................................................4

      B.      The Calm Terms of Service require disputes to be individually arbitrated. ...........5

      C.      The Calm Privacy Policy discloses that Calm shares its customers' information with third-party vendors. .......................................................5

      D.      Plaintiff alleges that Calm secretly shared his information with Twilio and asserts class action privacy claims against Twilio alone. .........................................6

III.    LEGAL STANDARD ............................................................................................7

IV.     ARGUMENT ..........................................................................................................8

      A.      Plaintiff's claims are within the scope of the arbitration agreement he entered into with Calm. ....................................................................8

      B.      Twilio is entitled to enforce Plaintiff's arbitration agreement with Calm as a non-signatory under California's doctrine of equitable estoppel. ........................9

            1.      Plaintiff's claims are intertwined with his contract with Calm because they require interpretation of the Calm Privacy Policy. ................9

            2.      Plaintiff's allegations that Calm and Twilio acted jointly to invade his privacy are similarly intertwined with the Calm Privacy Policy. ........13

      C.      The Court should stay this action pending resolution of arbitration. ....................15

V.      CONCLUSION.....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

*Airtourist Holdings LLC v. HNA Grp.*,
   No. C 17-04989 JSW, 2018 WL 3069444 (N.D. Cal. Mar. 27, 2018) ....................................13

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009).................................................................................................................9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).................................................................................................................7

*Carter v. Spiegel*,
   No. 21-cv-03990-TSH, 2022 WL 126303 (N.D. Cal. Jan. 13, 2022)..............................13, 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .................................................................................................8

*Coinmint v. DX Corr Design*,
   No. 23-CV-00599-RS, 2023 WL 9595893 (N.D. Cal. Apr. 24, 2023)............................14, 15

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985).................................................................................................................8

*Doe v. Google LLC*,
   No. 23-cv-04231-VC, 2024 WL3490744 (N.D. Cal. July 22, 2024) ..................................3, 10

*Epic Sys. Corp v. Lewis*,
   584 U.S. 497 (2018).................................................................................................................7

*Franklin v. Cmty. Regional Med. Ctr*,
   998 F.3d 867 (9th Cir. 2021) ...............................................................................................9, 10

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................3, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)...................................................................................................................7

*Herrera v. Cathay Pac. Airways Ltd.*,
   104 F. 4th 707 (9th Cir. 2024) .......................................................................................3, 9, 10, 12

*Hunt v. Meta Platforms, Inc.*,
   — F. Supp. 3d ——, No. 23-cv-04953-PCP, 2024 WL 2503118 (N.D. Cal. May
   24, 2024) .......................................................................................................................... *passim*

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ............................................................................................7, 9

2797136

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012)..................................................................................................7

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) ..................................................................................9

*In re Pac. Fertility Ctr. Litig.*,
   814 F. App'x 206 (9th Cir. 2020) ............................................................................10

*S.S. by & through Stern v. Peloton Interactive, Inc.*,
   566 F. Supp. 3d 1019 (S.D. Cal. 2021)......................................................................8

*Salas v. Universal Credit Servs., LLC*,
   No. 17-CV-2352 JLS, 2019 WL 1242448 (S.D. Cal. Mar. 18, 2019) ................................3, 14

*Sanders v. Swift Transp. Co. of Ariz., LLC*,
   843 F. Supp. 2d 1033 (N.D. Cal. 2012) ................................................................13, 14

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)..................................................................................................15

*United States v. Sutcliffe*,
   505 F.3d 944 (9th Cir. 2007) ....................................................................................7

*Uptown Drug Company v. CVS Caremark Corporation.*,
   962 F. Supp. 2d 1172 (N.D. Cal. 2013) ................................................................12, 13

*Williams v. Eaze Sols, Inc.*,
   417 F. Supp. 3d 1233 (N.D. Cal. 2019) ......................................................................8

*Young v. ByteDance Inc.*,
   700 F. Supp. 3d 808 (N.D. Cal. 2023) ........................................................................9

**Federal Statutes**

9 U.S.C. § 1..........................................................................................................5, 7, 8

9 U.S.C. § 3..........................................................................................................1, 15

9 U.S.C. § 4..............................................................................................................1

9 U.S.C. § 16..............................................................................................................8

18 U.S.C. § 2510........................................................................................................7

18 U.S.C. § 2511......................................................................................................10

**State Statutes**

Cal. Penal Code § 631.............................................................................................7, 11

2797136

1

Cal. Penal Code § 502..........................................................................................................3, 7, 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TWILIO INC.'S MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-04914-AMO

2797136

**TWILIO'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 23, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Araceli Martínez-Olguín in Courtroom C – 15th Floor of the Phillip Burton Federal Building and U.S. Courthouse at 450 Golden Gate Avenue, San Francisco, California, Defendant Twilio Inc. ("Twilio") will and hereby does move to compel this action to individual arbitration and stay this action pending resolution of arbitration.

Twilio moves to compel individual arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. Plaintiff entered into a valid and enforceable arbitration agreement with non-party Calm.com, Inc. ("Calm") when he used the Calm application and agreed to the Calm Terms and Conditions. That arbitration agreement covers Plaintiff's claims in this action and contains a class action waiver. Twilio is entitled to enforce Plaintiff's arbitration agreement and class action waiver with Calm under the California doctrine of equitable estoppel. Plaintiff's claims should thus be compelled to individual arbitration. Further, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, this action should be stayed pending resolution of that arbitration.

This motion is based on this notice of motion and motion, the following memorandum of the points and authorities, the supporting declaration of Jon Tien and the exhibits attached thereto, and the pleadings, records, and other papers on file in this action, as well as any further briefing, evidence, or argument that may be presented to the Court.

Dated:  October 18, 2024                    KEKER, VAN NEST & PETERS LLP

                                            By:    */s/ Benjamin Berkowitz*
                                                   BENJAMIN BERKOWITZ
                                                   MATAN SHACHAM
                                                   JACQUELINE CONCILLA
                                                   NATALIE R. HEIM

                                                   Attorneys for Defendant
                                                   TWILIO INC., a Delaware corporation,

2797136

I.      INTRODUCTION

        Defendant Twilio Inc. ("Twilio") respectfully moves to compel Plaintiff Noah Bender's

claims in this action to individual arbitration.[1]

        Plaintiff alleges that Calm, a company that offers a meditation application (the "Calm

App"), used Twilio's Segment software development kit ("Segment SDK") to collect information

about Plaintiff's use of the Calm App, create a customer profile about him, and use it to predict

his purchasing habits. Dkt. 1 ("Compl.") ¶¶ 19, 26, 28, 31. Calm's Privacy Policy informs its

users that it "may disclose information about [a user] . . . with companies and contractors that

perform services for [Calm], including . . . analytics providers, advertising partners, and other

service providers." Declaration of Jon Tien ("Tien Decl."), ¶ 22 & Ex. D at 4–5 (the "Calm

Privacy Policy"). Nevertheless, Plaintiff alleges that Calm never disclosed that it may share his

information with third-party vendors, and that Calm acted in concert with Twilio to secretly

collect and use his information without his consent. Compl. ¶ 33.

        Despite the central role that Calm plays in Plaintiff's allegations, Plaintiff has not sued

Calm in any forum. Tien Decl. ¶ 28. Rather, he asserts claims against Twilio alone. This is likely

because Plaintiff's agreement with Calm requires him to individually arbitrate any claims against

Calm. *See Id.* ¶ 20 and Ex. B ("Calm Terms") ¶ 16 ("Any dispute, claim, or controversy arising

out of or relating to these Terms or the breach, termination, enforcement, interpretation, or

validity thereof, or the use of the Services, including any claims related to privacy or data security

. . . will be settled by binding arbitration . . . ."); ¶ 16b (requiring arbitration to be on an individual

basis). Plaintiff seemingly believes that by suing Twilio alone, he can circumvent his arbitration

agreement with Calm and assert, on behalf of a putative class, claims that must be arbitrated

individually.

        California's doctrine of equitable estoppel bars Plaintiff from doing that. Twilio is entitled

to enforce Plaintiff's arbitration agreement with Calm so long as either: (1) "the claims against

[Twilio] are intimately founded in and intertwined with the underlying contract;" or

---

[1] Twilio has also filed a Motion to Dismiss in the alternative, to preserve its rights, but the Court
need not rule on the Motion to Dismiss before the issue of arbitrability is decided.

(2) "[Plaintiff] alleges substantially interdependent and concerted misconduct by the [Twilio] and [Calm] and the allegations of the interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F. 4th 702, 707, 711 (9th Cir. 2024). Both circumstances are present here.

First, Plaintiff's claims against Twilio are "intimately founded in and intertwined with" the privacy rights and obligations set forth in his agreement with Calm. Each of Plaintiff's claims requires that Plaintiff prove that Calm failed to disclose that it would share his customer information with third-party vendors. *See Doe v. Google LLC*, No. 23-cv-04231-VC, 2024 WL 3490744, *5 (N.D. Cal. July 22, 2024); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020); Cal. Penal Code § 502(c) ("CDAFA"). Evaluating these claims requires interpreting the Calm Privacy Policy which contains Calm's disclosures regarding its practices of sharing information with third parties like Twilio. This type of intertwinement warrants equitable estoppel. *Hunt v. Meta Platforms, Inc.*, — F. Supp. 3d ——, No. 23-cv-04953-PCP, 2024 WL 2503118, at *2 (N.D. Cal. May 24, 2024).

Second, Plaintiff also alleges "substantially interdependent and concerted misconduct" between Calm and Twilio that is similarly "founded in or intimately connected with" the privacy rights and obligations set out in the Calm Privacy Policy. The allegations suggest a coordinated effort between Calm and Twilio to collect user information without disclosing that they were doing so. Because these allegations of concerted misconduct between Calm and Twilio also turn on whether Calm disclosed that it may share customer information with its third-party vendors, equitable estoppel is warranted on these grounds as well. *See Salas v. Universal Credit Servs., LLC*, No. 17-CV-2352 JLS, 2019 WL 1242448, at *4 (S.D. Cal. Mar. 18, 2019).

Ultimately, "[t]he 'linchpin' of equitable estoppel is fairness." *Herrera*, 104 F.4th at 710. It would be unfair to allow Plaintiff, who agreed that disputes related to his agreement with Calm and his use of its app would be determined by individual arbitration, to circumvent that agreement by filing a federal class action against Calm's software vendor, Twilio.

Accordingly, Twilio respectfully requests that the Court compel arbitration of Plaintiff's claims against it and stay the litigation pending the completion of the arbitration.

2797136

## II.    BACKGROUND

### A.    Plaintiff downloaded and used the Calm App and agreed to Calm's Terms of Service and Privacy Policy.

Plaintiff alleges that he downloaded and used the Calm meditation application on his Android device within the past year. Compl. ¶ 30. To create an account and login to the Calm App, Plaintiff was required to agree to the Calm Terms of Service and the Calm Privacy Policy that they incorporate. *See id.* ¶ D; *see also* Calm Privacy Policy[2] & Calm Terms.[3] When users first open the Calm App on an Android device, they are prompted to create an account and informed that "[b]y tapping Continue or logging into an existing Calm account, you agree to our Terms and acknowledge that you have read our Privacy Policy, which explains how to opt out of offers and promos," with each underlined phrase containing a hyperlink to the relevant document. Tien Decl. ¶¶ 8–9.  When users proceed to set up an account by pressing "Continue with Email," they are prompted to enter their first name, email address, and password and are again notified that "[b]y tapping Continue or logging into an existing Calm account, you agree to our Terms and acknowledge that you have read our Privacy Policy, which explains how to opt out of offers and promos," with each underlined phrase containing a hyperlink to the relevant document. *Id.* ¶¶ 10– 11. A user must press "continue" to finish creating their account and log into the App. *Id.* ¶ 11. Further, every time a Calm user logs into their account, they are informed that by proceeding to log in, they are agreeing to the Calm Terms of Service and Calm Privacy Policy, which are underlined and hyperlinked on the login page. *Id.* ¶¶ 12–13.

When a user clicks on the hyperlinked Terms, the Calm Terms from Calm's website are presented in full in contrasting black font on a light grey background. *Id.* ¶¶ 14–15. The Calm Terms instruct users to refer to "refer to the Privacy Policy for information regarding how we collect, use, and disclose information about you," with the underlined phrase in contrasting purple

---

[2] "Calm Privacy Policy" means the current version effective December 21, 2023. The Calm Privacy Policy was previously updated on October 13, 2023 and June 16, 2022, but all versions are the same in all relevant respects. *See* Tien Decl. ¶¶ 22–25 & Exs. D–F.

[3] "Calm Terms" refers to the current version of the Calm Terms of Service effective October 13, 2023. The prior version of the Terms was in effect from October 2, 2017 to October 12, 2023, but both versions are the same for the purposes discussed herein. *See* Tien Decl. ¶¶ 20–21, 25 & Exs. B–C.

2797136

font and hyperlinked to the Calm Privacy Policy. *Id.* ¶¶ 15–16. When a user clicks on the hyperlinked Privacy Policy, the terms are presented in full in contrasting black font on a light grey background. *Id.* ¶¶ 17–18.

**B.     The Calm Terms of Service require disputes to be individually arbitrated.**

The Calm Terms include an arbitration agreement and class action waiver. Tien Decl. Ex. B. Section 16 of the Terms provides that "[a]ny dispute, claim, or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation, or validity thereof, or the use of the Services, including any claims related to privacy or data security . . . will be settled by binding arbitration." *Id.* ¶ 16.[4] Covered "Services" include Calm's "websites, social media pages, software applications, and other online services." *Id.* at 1.

In agreeing to Calm's Terms, signatories acknowledge "THAT ANY ARBITRATION UNDER THESE TERMS WILL TAKE PLACE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS AND CLASS ACTIONS ARE NOT PERMITTED, AND YOU AND CALM ARE AGREEING TO GIVE UP THE ABILITY TO PARTICIPATE IN A CLASS ACTION." *Id.* ¶ 16b. Further, the Calm Terms permit users to opt out of binding arbitration by emailing Calm within 30 days of first agreeing to the Terms. *Id.* ¶ 16. Calm has no record of Bender opting out of mandatory arbitration. Tien Decl. ¶ 27.

The Calm Terms state that "the enforceability of this [arbitration agreement] will be substantively and procedurally governed by the Federal Arbitration Act, 9 U.S.C. § 1, *id.* ¶ 16, and that any arbitration brought under the Calm Terms "will be governed by the laws of the State of California without regard to its conflict of laws provisions." *Id.* ¶ 17.

**C.     The Calm Privacy Policy discloses that Calm shares its customers' information with third-party vendors.**

Calm's Privacy Policy informs users that Calm "may disclose information about [its users]" as described in its Privacy Policy, including "with companies and contractors that perform services for [Calm], including email service providers, payment processors, fraud prevention vendors, analytics providers, advertising partners, and other service providers." Calm Privacy

---

[4] The Calm Terms set out two types of claims that are exempt from arbitration, neither of which is relevant here.

Policy at 4–5. Calm also expressly discloses that this user information may include, among other things: (1) "personal details" such as a user's "name, email address, linked social media details, and street address"; (2) "other information [a user] may provide," including "goals, previous meditation experience, sleep habits, and moods and reflections [a user] provide[s] during check-ins"; (3) "usage information" such as "the sessions [a user] use[s], videos [they] view, content [they] listen to, screens of features [they] access, and other similar types of usage information." *Id.* at 1–2.

Additionally, the Calm Privacy Policy includes a section on "Advertising and Analytics Services Provided by Others" which states that Calm "allow[s] others to provide analytics services and serve advertisements on [its] behalf across the web and other online services" and that "[t]hese entities use cookies, web beacons, device identifiers, and other technologies to collect information about [a user's] use of the Services and other websites and online services, including your IP address, device identifiers, web browser, mobile network information, pages viewed, time spent on pages or in apps, links clicked, and conversion information." *Id.* at 5–6. It states that "Calm and others may use this information to, among other things, analyze and track data, determine the popularity of certain content, deliver advertising and content targeted to [a user's] interests, and better understand [a user's] online activity." *Id.* The Privacy Policy further describes the information Calm collects when users use its service or interact with Calm, including "the sessions [customers] use, videos [they] view, content [they] listen to, screens or features [they] access, and other similar types of usage information." *Id.* at 2.

**D.    Plaintiff alleges that Calm secretly shared his information with Twilio and asserts class action privacy claims against Twilio alone.**

Plaintiff alleges that Calm secretly "embedded [Twilio's] Segment SDK into its mobile application allowing Twilio to intercept communications between Plaintiff and Calm such as Plaintiff's keystrokes, button presses, search terms he input into the Calm App, the results of his searches, page views, his name, email address, information about which app(s) he uses, device IDs and fingerprint data." Compl. ¶ 31. He alleges that Twilio "uses the data it collects across various apps and websites to create a unified profile about the customer." *Id.* ¶ 26. Further, he alleges that "Twilio places the consumer into an audience 'segment' and applies its artificial

6

2797136

intelligence algorithms to the consumer profile" allowing Twilio to "predict a consumer's 'propensity . . . to make a purchase,' '[p]redict a customer's future spend over the next 90 days,' and even '[p]roactively identify customers who are likely to stop using [a] product' among other behavioral predictions." *Id.* ¶ 28. Plaintiff alleges that neither Twilio nor Calm disclosed to Plaintiff that the Segment SDK was embedded in the Clam app or that Calm would share his information with Twilio if he used the app. *Id.* ¶ 33.

However, Plaintiff filed this purported class action lawsuit against Twilio alone. He asserts three claims: (1) violation of the federal Wiretap Act (18 U.S.C. § 2510, *et seq.*), (2) violation of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") (Cal. Penal Code § 502), and (3) violation of the California Wiretap Act (Cal. Penal Code § 631). *Id.* ¶¶ 41–47 (Wiretap Act claim under 18 U.S.C. § 2510, *et seq.*), ¶¶ 48–54 (CDAFA claim under Cal. Penal Code § 502), & ¶¶ 55–63 (Cal. Wiretap Act claim under Cal. Penal Code § 631).

## III.   LEGAL STANDARD

Congress enacted the Federal Arbitration Act ("FAA") to reverse the "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see* 9 U.S.C. § 1, et seq. The Supreme Court has held that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (internal quotation marks omitted). The Supreme Court has also instructed that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms.'" *Epic Sys. Corp v. Lewis*, 584 U.S. 497, 506 (2018) (citation omitted). The FAA respects arbitration as "a matter of contract" between parties and prohibits courts from jumping in when the parties agreed to resolve disputes privately. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019).

The FAA governs contracts involving interstate commerce. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). Use of the Calm App involves interstate commerce because users access the Calm App through the internet on a mobile device, and moreover, the app sells access to premium content to users across the country, so the FAA applies here. *See United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007) (explaining that "the Internet is an

instrumentality and channel of interstate commerce"); *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1042 (S.D. Cal. 2021) (finding that contract affected interstate commerce because it related to company's services and use of those services "require[d] use of the Internet, the Agreement would involve interstate commerce.").[5]

## IV.   ARGUMENT

### A.   Plaintiff's claims are within the scope of the arbitration agreement he entered into with Calm.

The FAA "mandates that . . . courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

When Plaintiff created a Calm account and logged into the Calm App, he was required to agree to the Calm Terms and the Calm Privacy Policy. Tien Decl. ¶¶ 8–13. In agreeing to the Calm Terms, Plaintiff agreed to individually arbitrate any dispute relating to his use of the Calm App. *Id.* ¶ 16. Calm's arbitration provision covers "[a]ny dispute, claim, or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation, or validity thereof, or the use of the Services, including any claims related to privacy or data security." *Id.* Plaintiff's claims are squarely within the scope of this arbitration clause.  They arise out of Plaintiff's use of the Calm App, which is one of the covered Services, *id.* at p. 1, and they are "related to privacy," *id.* ¶ 16. They also arise out of or relate to the Terms, *id.*, which address Calm's use of data.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (where the "[r]esolution of the dispute would require an analysis of the [contract terms]," "[t]he dispute unquestionably arises out of or relates to [its] construction"). Thus, Plaintiff entered into a valid and enforceable arbitration agreement that covers this lawsuit.

---

[5] The Calm Terms also expressly state that they "affect interstate commerce, and the enforceability of this section 16 will be substantively and procedurally governed by the Federal Arbitration Act, 9 U.S.C. §, et seq., to the extent permitted by law." Calm Terms § 16; *see Williams v. Eaze Sols, Inc.*, 417 F. Supp. 3d 1233, 1238 (N.D. Cal. 2019) (finding that the FAA applied where the terms of service stated that the FAA governed the interpretation and enforcement of the dispute resolution provision).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Twilio is entitled to enforce Plaintiff's arbitration agreement with Calm as a non-signatory under California's doctrine of equitable estoppel.**

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128. "[S]tate law [may] allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories.").

California's doctrine of equitable estoppel permits a non-signatory defendant to compel a signature plaintiff to arbitration: (1) "when the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract"; or (2) "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of the interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F. 4th at 707, 711.

While only one is required, both circumstances are present here. Plaintiff's privacy claims, which rely on his allegation that Calm did not disclose that it would share customer information with third-party vendors like Twilio, are intertwined with the privacy rights and obligations set out in the same contract that contains Calm's arbitration provision. Plaintiff cannot "bypass" or "sidestep[]" his agreement to arbitrate this dispute by tactically suing Twilio and not Calm. *See Franklin v. Cmty. Regional Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021); *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 814 (N.D. Cal. 2023). This implicates fairness, which courts have described as the "linchpin" of equitable estoppel. *See Herrera*, 104 F.4th at 710.

**1.      Plaintiff's claims are intertwined with his contract with Calm because they require interpretation of the Calm Privacy Policy.**

The first circumstance allowing equitable estoppel exists when a plaintiff's claims against a non-signatory are "intimately founded in and intertwined with" the rights and obligations that

9

2797136

are set out in the agreement containing the arbitration clause. *Herrera*, 104 F.4th at 712. In making this determination, courts look to "the relationship of persons, wrongs, and issues" alleged in the complaint, *regardless* of whether the plaintiff references the underlying contract containing the arbitration agreement. *Franklin*, 998 F.3d at 871. The purpose of "examining the facts alleged in the complaint" in this manner is to determine "whether they *rely or depend on* the terms, duties, or obligations in the contract containing the arbitration provision in asserting the claims." *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020) (emphasis added). It does not matter if some of those allegations do not rely or depend on the underlying contract. "California law does not require that every allegation in the complaint be intertwined with the contract containing the arbitration clause for equitable estoppel to apply." *Herrera*, 104 F.4th at 710. To sufficiently establish intertwinement, Twilio need demonstrate only that this Court would have to interpret the disclosures set out in the Calm Privacy Policy in order to adjudicate the dispute between Plaintiff and Twilio. *See id.* at 711; *Franklin*, 998 F.3d at 871; *Pac. Fertility*, 814 F. App'x at 209. Under this framework, Plaintiff's claims are intertwined with his contract with Calm.

Each of Plaintiff's three claims requires him to prove that Calm failed to disclose that it may share the information it collected from him with third parties like Twilio. First, there is no liability under the Federal Wiretap Act "where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d); *see Doe v. Google LLC*, 2024 WL3490744, *5 (N.D. Cal. July 22, 2024) (finding that plaintiffs failed to adequately allege a violation of the Federal Wiretap Act when plaintiffs alleged that one party had consented to the interception). Second, CDAFA prohibits "knowingly access[ing] and without permission" taking certain actions with respect to data. *See* Cal. Penal Code § 502(c). This is true of all three subsections under which Plaintiff alleges violations. *See id.* §§ 502(c)(1)–(2), (7). Thus, to prove his CDAFA claim, Plaintiff must show that Twilio accessed and obtained his information "without permission." Third, to succeed on a CIPA claim for intentional wiretapping, a plaintiff must prove that the defendant made an "*unauthorized* connection" with a "telegraph or telephone wire" or has attempted to read or learn the contents of a communication "***without the consent*** of

all parties." Cal. Penal Code § 631(a) (emphases added); *accord Google Assistant*, 457 F. Supp. 3d at 828 (explaining that an element of a wiretapping claim is the lack of authorization or consent from all parties).

Accordingly, Plaintiff alleges in support of each of his privacy claims that he did not know, consent, or authorize Calm to share his information with third-party vendors like Twilio. Compl. ¶¶ 33 (generally), 44 (Federal Wiretap Act claim); 46 (same), 59 (CIPA claim). Thus, Plaintiff's privacy claims each depend on the issue of Calm's disclosure and Plaintiff's consent and authorization.

Those allegations cannot be evaluated without interpreting the contract between Calm and Plaintiff—composed of the Calm Terms and the Calm Privacy Policy—which sets out in detail Calm's users' privacy rights and Calm's privacy obligations. *See* Calm Privacy Policy & Calm Terms. Calm's Privacy Policy discloses that Calm may disclose customer information to "companies and contractors that perform services for [Calm], including email service providers, payment processors, fraud prevention vendors, analytics providers, advertising partners, and other service providers." Calm Privacy Policy at 4. Calm's Privacy Policy describes when it collects user information, including "when [a customer] register[s] for an account, participate[s] in interactive features (like submitting a meditation rating or completing a check-in, fill[s] out a form or a survey, participate[s] in a contest or promotion, make[s] a purchase, communicate[s] with [Calm] via social media sites, request[s] customer support, or otherwise interact[s] with [Calm]." *Id.* at 1.

Plaintiff cannot succeed on any of his privacy claims if it is determined that the Calm Privacy Policy discloses that Calm may share his personal information with third-party vendors like Twilio. Indeed, Plaintiff's claims cannot be evaluated or understood without the context of the data-usage disclosures in the Calm Privacy Policy. Thus, Twilio is entitled to enforce the Calm arbitration agreement against Plaintiff in this lawsuit under equitable estoppel.

Courts in this District have found that intertwinement exists under similar circumstances. Recently, in *Hunt v. Meta Platforms*, the court granted Meta and Google's motions to compel individual arbitration on equitable estoppel grounds. *See* 2024 WL 2503118, at *1–3. There, the

2797136

plaintiff alleged that H&R Block (an online tax-preparation service) contracted with Meta and Google (internet advertisers) to trick its customers into providing their personal information to H&R Block on its website so that it could be secretly shared with Meta and Google for advertising purposes. *Id.* at *1. The plaintiff asserted civil RICO claims against all three companies, including predicate wire-fraud claims. *Id.* at *1–2. The merits of those fraud predicates turned on whether H&R Block had disclosed to its customers in its Privacy Policy that it could share their information with third parties like Meta and Google. *Id.* at *2.

Meta and Google moved to enforce the plaintiff's arbitration agreement with H&R Block on equitable estoppel grounds, arguing, just as here, that the plaintiff's claims were intertwined with the disclosures in the H&R Block Privacy Policy. *Id.* The court agreed in full. Because the plaintiff's claims required him to prove that H&R Block's Privacy Policy did not disclose that H&R Block could share his personal information with Meta and Google, "[the plaintiff's] claims against Google and Meta by their own terms are closely intertwined with his agreement with H&R Block." *Id.* at *2. It did not matter that the plaintiff did not formally allege a breach of the agreement, or that his claims arose from statute. Instead, "the question under California law is whether the claims 'are in *any way* founded in or bound up with the terms.'" *Id.* at *3 (quoting *Herrera*, 94 F.4th at 1090–91). "[B]ecause the [plaintiff's] claims allege fraud arising from the H&R Block agreements as one of the elements of his RICO claims, those claims are intimately intertwined with the H&R Block agreements (including the incorporated privacy notice)." *Id.*

Similarly instructive is *Uptown Drug Company v. CVS Caremark Corporation*. *See* 962 F. Supp. 2d 1172, 1184 (N.D. Cal. 2013). There, the plaintiff, which provided pharmacy services through certain healthcare plans, was a competitor of CVS, which provided pharmacy services at retail stores. *Id.* at 1176. CVS merged with Caremark, a pharmacy services intermediary, which had a business relationship with the plaintiff that was subject to a contract containing an arbitration provision. *Id.* Following the merger, the plaintiff came to believe that Caremark disclosed its trade secret customer information to CVS without authorization. *Id.* The plaintiff sued several CVS entities for trade secret misappropriation, unfair competition, and tortious interference. *Id.* The CVS entities that had signed the contract moved to compel arbitration. *Id.*

The CVS entities that did not sign the contract also moved to compel arbitration on equitable estoppel grounds. *Id.* at 1183. These non-signatories argued that the plaintiff's claims were intertwined with its contract with Caremark because that contract "expressly addresses the use, dissemination, and ownership of the customer information" at issue. *Id.* at 1184. The court agreed. To determine whether intertwinement existed, the court first looked to the elements of the plaintiff's claims and then the terms of the plaintiff's contract. *See id.* at 1185. The court found that all but one of the plaintiff's claims required interpretation of the terms in that contract. In short, "The question of whether Caremark was to any extent barred from disclosing or using [the plaintiff's] customer data must be answered by looking at the terms of the [contract] because that contract explicitly governs the collection and use of such information and because it provides the underlying basis for [the plaintiff's] disclosure of such information." *Id.* at 1185. Thus, these claims were plainly intertwined with the contract and equitable estoppel was appropriate. *Id.*; *see also Airtourist Holdings LLC v. HNA Grp.*, No. C 17-04989 JSW, 2018 WL 3069444, at *3 (N.D. Cal. Mar. 27, 2018) (compelling arbitration because "the claims in the complaint are premised upon the construction of the terms and foundational agreements" with the plaintiff).

Here, just as in *Hunt* and *Uptown Drug*, Plaintiff's claims are intertwined with the terms and duties set out in his contract with Calm and therefore should be compelled to arbitration.

### 2. Plaintiff's allegations that Calm and Twilio acted jointly to invade his privacy are similarly intertwined with the Calm Privacy Policy.

The second circumstance allowing equitable estoppel exists where a plaintiff alleges a signatory and non-signatory have acted "jointly in furtherance of a common scheme," and the legality of that scheme cannot be resolved without looking to the terms of the plaintiff's contract. *See Sanders v. Swift Transp. Co. of Ariz., LLC*, 843 F. Supp. 2d 1033, 1038 (N.D. Cal. 2012) (compelling arbitration on this basis). Where the signatory is the "principal wrongdoer," in that it initiated and organized the common scheme with the non-signatory, estoppel is particularly appropriate. *See Carter v. Spiegel*, No. 21-cv-03990-TSH, 2022 WL 126303, at *6 (N.D. Cal. Jan. 13, 2022) (compelling arbitration on this basis).

Here, the core theory of Plaintiff's case is that Calm allegedly colluded with Twilio to secretly collect and use Calm users' information for their mutual profit. *See* Compl. ¶ 31 ("The

13

developers of the Calm mobile app embedded the Segment SDK into its mobile app allowing Defendant to intercept communications between Plaintiff and Calm"); *id.* ¶ 33 ("Neither Defendant nor Calm informed Plaintiff, or otherwise disclosed to Plaintiff, that the Segment SDK was embedded in the Calm app"). Plaintiff's complaint is thus rooted in allegations that Calm and Twilio acted "jointly in furtherance of a common scheme" to collect his information. *See Sanders*, 843 F. Supp. 2d at 1038. Indeed, it would have been impossible for Twilio to engage in the conduct that Plaintiff alleges without Calm, which is the party that allegedly hired Twilio as a vendor, installed Twilio's SDK on its website, configured the Twilio SDK to collect the information Calm desired, made the relevant disclosures in its Privacy Policy, and received its customers' information. For that same reason, Twilio cannot be the "principal wrongdoer" described in this case. *See Carter*, 2022 WL 126303, at *6. Twilio is merely a third-party vendor that provided Calm with a lawful set of technical tools that Calm itself configured and deployed. Given that these allegations of coordinated misconduct between Calm and Twilio hinge on whether Calm properly disclosed that it may share customer information with third-party vendors, evaluating these claims would require interpreting the Calm Privacy Policy, and so equitable estoppel is warranted on these grounds.

Courts have found that allegations of concerted misconduct warrant equitable estoppel under similar circumstances. For example, in *Salas v. Universal Credit Services, LLC*, the plaintiff enrolled in a debt settlement program with defendant Priority, pursuant to a contract with an arbitration provision. 2019 WL 1242448, at *1. Even though that contract "authorized" Priority to share the plaintiff's credit report with third parties to perform its services, the plaintiff sued it and several such third parties under credit reporting statutes. *Id.* at *4. The non-signatories moved to compel arbitration, and the court granted their motions. *Id.* The court found that the allegations of "interdependent conduct" regarding the defendants' sharing of his credit report were "intimately connected to the obligations" set out in his contract because it addressed whether they could do so. *Id.* Further, it was "clear that all of the [d]efendants will rely on the [contract's disclosure] as a defense for their actions." *Id.*

Similarly, in *Coinmint v. DX Corr Design*, the plaintiff alleged that it was fraudulently

induced into purchasing Bitcoin mining rigs from a nonparty (Katena) that it never received. *See* No. 23-CV-00599-RS, 2023 WL 9595893, at \*1 (N.D. Cal. Apr. 24, 2023). The plaintiff initiated arbitration against Katena under their purchase agreement, but also sued several non-signatories, including DX Corr (a third-party computer chip design company), DX Corr's owner, and several of its own employees, who all allegedly conspired to enable the fraudulent scheme. *Id.* The court granted the non-signatory defendants' motion to compel arbitration on equitable estoppel grounds, finding that these conspiracy allegations were "grossly intertwined" with the plaintiff's claims, given the prevalence of allegations about the non-party signatory's misconduct. *Id.* at \*3–4. "Far more than allegations of parallel misconduct resulting in discrete injuries to Plaintiff[]," "Plaintiff[] allege[s] a single scheme to achieve a single aim." *Id.* at \*4. The same is true here.

Finally, in *Hunt v. Meta Platforms*, also discussed above, the court similarly found that the plaintiff had "alleged concerted misconduct" between H&R Block, Meta, and Google that was "undoubtedly connected to [his] underlying agreement with H&R Block[.]" 2024 WL 2503118, at \*3. But because the court had already granted Meta and Google's arbitration motions on intertwinement grounds, it did not need to reach this further basis for equitable estoppel. *Id.*

### C.     The Court should stay this action pending resolution of arbitration.

Finally, Twilio requests a mandatory stay of this action pending resolution of individual arbitration. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (discussing 9 U.S.C. § 3). Thus, a stay is proper here.

## V.     CONCLUSION

For the foregoing reasons, Twilio respectfully requests that the Court grant its motion to compel individual arbitration and stay this action pending resolution of that arbitration.

//

//

2797136

1    Dated:  October 18, 2024                          KEKER, VAN NEST & PETERS LLP

2

3                                            By:    /s/ Benjamin Berkowitz
                                                    BENJAMIN BERKOWITZ
4                                                   MATAN SHACHAM
                                                    JACQUELINE CONCILLA
5                                                   NATALIE R. HEIM

6                                                   Attorneys for Defendant
                                                    TWILIO INC., a Delaware corporation,
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TWILIO INC.'S MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-04914-AMO

2797136