1   KEKER, VAN NEST & PETERS LLP
    BENJAMIN BERKOWITZ - # 244441
2   bberkowitz@keker.com
    MATAN SHACHAM - # 262348
3   mshacham@keker.com
    JACQUELINE CONCILLA - # 335733
4   jconcilla@keker.com
    NATALIE R. HEIM - # 340549
5   nheim@keker.com
    633 Battery Street
6   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
7   Facsimile:    415 397 7188

8   Attorneys for Defendant
    TWILIO INC., a Delaware corporation
9
                        UNITED STATES DISTRICT COURT
10
                     NORTHERN DISTRICT OF CALIFORNIA
11
                          SAN FRANCISCO DIVISION
12

13  NOAH BENDER, individually and on behalf      Case No. 3:24-cv-04914-AMO
    of all others similarly situated,
14                                               **REQUEST FOR JUDICIAL NOTICE IN
                  Plaintiffs,                    SUPPORT OF TWILIO INC.'S MOTION
15                                               TO DISMISS COMPLAINT**
          v.
16                                               Date:       January 23, 2025
    TWILIO INC., a Delaware corporation,         Time:       2:00 p.m.
17                                               Dept.:      10, 19th Floor
                  Defendant.                     Judge:      Hon. Araceli Martínez-Olguín
18
                                                 Date Filed: August 8, 2024
19
                                                 Trial Date: None Set
20

21

22

23

24

25

26

27

28

**TWILIO'S REQUEST FOR JUDICIAL NOTICE**

## I.     INTRODUCTION

Plaintiff Noah Bender alleges that Calm, a subscription-based app for meditation and sleep, installed Defendant Twilio's Segment SDK on its mobile app. Dkt. No. 1 ("Compl.") Compl. ¶ 31. He further contends that he "downloaded and used the [the Calm App] on his Android device within the last year." *Id.* ¶ 30. He says that the Segment SDK allows Twilio to collect information about his interactions within the Calm App such as his "keystrokes, button presses, search terms he input into the Calm [A]pp, the results of his searches, page views, his name, email address, information about which app(s) he uses, device IDs, and fingerprint data." *Id.* ¶ 31. Plaintiff claims that "[n]either Defendant nor Calm informed Plaintiff, or otherwise disclosed to Plaintiff" that if he used the Calm App, service providers like Twilio would obtain his In-App Activity. *Id.* ¶ 33. He further contends that Twilio is not a "mere extension of" the Calm App because it used his In-App Activity data for its "own purposes;" namely, "to correlate data across various mobile apps to create a unified customer profile" and "make various behavioral predications about Plaintiff." *Id.* ¶ 45.

On that basis, he has filed this putative class action against Twilio for wiretapping and eavesdropping under the California Invasion of Privacy Act ("CIPA") and Federal Wiretap Act, and for violating various anti-hacking provisions of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"). In doing so, he seeks to represent a class involving: "All individuals who downloaded and used an app on their mobile device (1) with Twilio's Segment SDK embedded into the app and (2) that did not publicly disclose 'Twilio' in any of the app's notices or disclosures." Compl. ¶ 34.

Twilio has moved to dismiss Plaintiff's action for failing to state a claim. In support of that motion, Twilio respectfully requests that the Court take notice of several documents that are referenced, necessarily relied upon, cited, and/or quoted in Plaintiff's complaint or are otherwise subject to judicial notice as they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. These documents—Calm's User Interfaces, Privacy Policy, Calm's Twilio Software Contract, Twilio's Business Terms, and webpages describing

Twilio's software products referenced by Plaintiff (the "Product Descriptions")—are subject to judicial notice and/or incorporated by reference into Plaintiff's complaint for the reasons set forth below. Courts have taken judicial notice of, or found incorporation by reference for, similar documents on motions to dismiss. *See, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, No. C 12-01382 PSG, 2012 WL 6738343, at *3–4 (N.D. Cal. Dec. 28, 2012) (Google's "past and present" Privacy Policies); *Yuksel v. Twitter, Inc.*, No. 22-CV-05415-TSH, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (Twitter's Terms of Service); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (Privacy Policy); *Della v. Colgate-Palmolive Co.*, No. 23-CV-04086-JCS, 2024 WL 457798, at *16 (N.D. Cal. Feb. 6, 2024) (product webpages); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *as amended* (July 28, 1998) (contract not directly attached to complaint).

## II. LEGAL STANDARD

In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court may consider any matters subject to judicial notice. *Swartz v. KMPG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Tellabs, Inc. v. Makor Issues & Rts.*, Ltd., 551 U.S. 308, 322 (2007). A matter is subject to judicial notice when it is "not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

Further, under the incorporation-by-reference doctrine, a court may consider a document extrinsic to the complaint if "the plaintiff's complaint necessarily relies on [it]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).[1] A plaintiff's complaint necessarily relies on an extrinsic document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). The Ninth Circuit has also held that quoting from a document is sufficient to

---

[1] "[T]he Court may consider [documents'] contents under the incorporation by reference doctrine even if they fail to satisfy Rule 201's requirements for judicial notice.." *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1061 (C.D. Cal. 2012).

2801623

incorporate a document by reference. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Where incorporated by reference, a district court can treat a document as part of the complaint and "thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

## III.     DOCUMENTS SUBJECT TO THIS REQUEST

**Calm User Interfaces:** Attached as **Exhibit A** to the Declaration of Natalie Heim filed concurrently herewith ("Heim Decl."), is a true and correct copy of the Calm App User Interface and related disclosures presented to users when they navigate to the Calm App via the Google Play Store from an Android Device. Likewise attached as **Exhibit B** is a true and accurate copy of the Calm App's Log-in Page presented to users who download and open the Calm App on their mobile device.

**Calm's Privacy Policy.** Attached as **Exhibit C** is a true and correct copy of the publicly available Calm Privacy Policy that has been in effect from December 21, 2023, through the present. Attached as **Exhibit D** is a true and correct copy of the Calm Privacy Policy that was in effect from October 13, 2023, to December 20, 2023. Attached as **Exhibit E** is a true and correct copy of the Calm Privacy Policy that was in effect from June 16, 2022, to October 12, 2023. There are no material differences between these versions for purposes of Twilio's motion, but Twilio includes each of them so that the Court will have a complete record of the Privacy Policies that were presented to users during the period when Plaintiff alleges he used the Calm App. *See* Complaint ¶ 30.

**The Twilio Software Contract.** Attached as **Exhibit F** is a true and correct copy of Twilio's Order Form between Twilio and Calm regarding the Segment software that is at issue in this case, executed on September 29, 2023. Attached as **Exhibit G** is a true and correct copy of the Platform Agreement that is expressly incorporated by reference in the Order Form. Collectively, Exhibits F and G are referred to as the "Twilio Software Contract."

2801623

**Twilio Business Terms:** Attached as **Exhibit H** is Twilio's Data Protection Addendum ("DPA"), which is expressly incorporated by reference in the Platform Agreement and publicly available on Twilio's website. Attached as **Exhibit I** is a true and correct copy of Twilio's Security Overview, which is expressly incorporated by reference in the DPA and publicly available on Twilio's website. Collectively, Exhibits H-I, the publicly available portions of the business agreement between Twilio and Calm, are referred to as "Twilio's Business Terms."

**Product Descriptions.** Attached as **Exhibit J** is a true and correct copy of the publicly available webpage entitled "How to Collect and Use First-party Data for Your Business_Twilio. **Exhibit K** is a true and correct copy of the publicly available webpage entitled "First-Party vs. Third-Party Data Differences, Use Cases, & Tips." **Exhibit L** is a true and correct copy of the publicly available webpage entitled "Leveling Up" Identity Resolution: Best Practices for Data Scientists | Twilio Segment." **Exhibit M** is a true and correct copy of the publicly available webpage entitled "Twilio Engage: Personalize every interaction with Twilio Engage." **Exhibit N** is a true and correct copy of the publicly available webpage entitled "Segment Unify is here: complete, real-time, portable customer profiles." **Exhibit O** is a true and correct copy of a the publicly available webpage entitled "CustomerAI Predictions_Twilio Segment." **Exhibit P** is a true and correct copy of the publicly available webpage entitled "Twilio Segment Plans & Pricing. **Exhibit Q** is a true and correct copy of the publicly available webpage entitled "Native Mobile Spec." **Exhibit R** is a true and correct copy of the publicly available webpage entitled "Four Data Types Companies Need to Utilize" **Exhibit S** is a true and correct copy of the publicly available webpage entitled "Privacy Portal." **Exhibit T** is a true and correct copy of the webpage entitled "Connections." **Exhibit U** is a true and correct copy of the webpage entitled "Cookies, Compliance, and Customer Data." Collectively, these documents are referred to as the "Product Descriptions." These webpages are cited to, quoted from, summarized, referenced (or otherwise provide context for such cited pages) in the Complaint. *See* Compl. ¶¶ 13, 16-19, 25-29, 43, 57, 60-61.

**Calm's Terms of Service**: Attached as **Exhibit V** is a true and correct copy of the publicly available Calm Terms of Service, published on October 13, 2023, and effective through

2801623

the present. Attached as **Exhibit W** is a true and correct copy of the Calm Terms of Service in effect before October 13, 2023, that were published on October 16, 2017. There are no material differences between these versions for purposes of Twilio's motion, but Twilio includes each of them so that the Court will have a complete record of the Terms that were presented to users during the period when Plaintiff alleged he used the Calm App. *See* Complaint ¶ 30.

## IV.    ARGUMENT

### A.    The publicly available webpages and the Twilio Software Contract are subject to judicial notice as the contents therein can be accurately and readily determined.

The Court may properly take judicial notice of the Calm App User Interfaces (Exhibits A-B); Calm's Privacy Policy (Exhibits C-E), Calm's Terms of Service (Exhibits V-W), Twilio's Business Terms (Exhibit H-I) and the Product Descriptions (Exhibits J-U) because they are each publicly-available webpages, and their authenticity is not subject to reasonable dispute. "In general, websites and their contents may be judicially noticed." *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *In re Intel Corp. Sec. Litig.*, No. 5:20-CV-05194-EJD, 2023 WL 2767779, at *9 (N.D. Cal. Mar. 31, 2023), a*ff'd*, No. 23-15695, 2024 WL 1693340 (9th Cir. Apr. 19, 2024) ("[E]xhibits are [] judicially noticeable as publicly available articles.") (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)). For that reason, courts in this District regularly take judicial notice of publicly-available websites and their contents, including "privacy policies" and "terms of service." *E.g.*, *Zhang v. Twitter Inc.*, No. 23-CV-00980-JSC, 2023 WL 5493823, at *3 (N.D. Cal. Aug. 23, 2023); *see also, e.g.*, *In re Google, Inc. Privacy Policy Litig.*, 2012 WL 6738343, at *3–4 (Google's "past and present" Privacy Policies); *Yuksel*, 2022 WL 16748612, at *2 (Twitter's Terms of Service); *Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F.Supp.2d 974, 983–84 (N.D. Cal. 2010) (Microsoft's Xbox Terms of Use); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *5 (C.D. Cal. Sept. 18, 2018) ("[T]he Court takes judicial notice of the Privacy Policy as "matters of public record outside the pleadings that are not subject to reasonable dispute.").  The Court may also take judicial notice of the Twilio Software Contract (Exhibits F-G) because the documents can be readily and accurately determined from Twilio's

business records and are not reasonably subject to dispute. *See Soil Retention Prod., Inc. v. Brentwood Indus.*, Inc., 521 F. Supp. 3d 929, 946 (S.D. Cal. 2021) ("A court may take judicial notice of the fact that a contract was signed.") (internal citation omitted).

These documents are all relevant to the Court's review of Plaintiff's complaint and Twilio's motion to dismiss. The Calm App User Interfaces, Calm's Privacy Policy, and Calm's Terms contain disclosures and product information that were presented to Plaintiff and defeat all of his privacy claims against Twilio as a matter of law. *See* Motion to Dismiss at 10-11. The Twilio Software Contract and Business Terms are relevant to Twilio's argument that it lacked the requisite *mens rea* to violate CIPA, the Wiretap Act or CDAFA. *See id.* at 12-13. The Twilio Software Contracts are also relevant to Twilio's argument for dismissal of Plaintiff's wiretapping claims on the basis of Calm's consent to the use of Twilio's services. *See id.* at 19-20. And the Product Descriptions are documents that Plaintiff quotes, cites, and relies upon in his complaint, but which he mischaracterizes in a manner that inaccurately conveys their contents to misdescribe the Twilio software product at issue in this case. *See* Compl. ¶¶ 25-29, 60-61. For example, Plaintiff alleges based on the Product Descriptions that Twilio "merges" the data that it may collect from one client with other clients. *Id.* ¶ 26. But none of the Product Descriptions on which Plaintiff relies to support this claim say that. *See* Twilio's Motion to Dismiss at 14-16. Accordingly, judicial notice of these documents is proper and relevant to the Court's review of Twilio's motion to dismiss.

**B.  Plaintiff incorporates by reference each of the exhibits either by citing to, referring to, and/or necessarily relying on them to form the basis of his privacy claims.**

**1.  Calm User Interfaces, Calm Privacy Policy, and Calm Terms of Service**

The Calm User Interfaces, Calm Privacy Policy, and Calm Terms of Service (Exhibits A-E, V-W) are also incorporated by reference into the Complaint because Plaintiff's claims necessarily rely on his contention that he used the Calm App but did not authorize Calm's data collection and sharing practices. *See* Compl. ¶ 30; *see also, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of pleadings, including California and Federal wiretap claims, where the practice complained of "f[ell] within the scope of Plaintiffs' consent to

6

Facebook's Terms and Policies."); *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at \*3 (9th Cir. Mar. 5, 2024) (holding privacy claim was "properly dismissed" where the privacy policy "expressly disclosed Google's intention to track their activity on third-party apps"). Plaintiff alleges that he "downloaded and used" the Calm App on his Android device within the past year. *Id.* ¶ 30. The Calm User Interfaces show the sequence of screens, disclosures, and options presented to every user who "downloads and uses" the Calm App on an Android Device. Because these pages establish where, when, and how Calm made Plaintiff aware of its Terms and Privacy Policy, which disclose the relevant data collection and sharing practices, Plaintiff necessarily relies on them, even if Plaintiff does not explicitly reference them in the Complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the court may consider a document "even though the plaintiff does not explicitly allege the contents of that document in the complaint" where "the plaintiffs claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document."); *see also Laatz v. Zazzle, Inc.*, 682 F. Supp. 3d 791, 804 (N.D. Cal. 2023) (finding screenshots of the defendant's sign up pages were incorporated by reference into Complaint because they formed the basis of Plaintiff's fraud claims).

Likewise, although Plaintiff fails to mention Calm's Privacy Policy in the Complaint, he claims that "[n]either Defendant nor Calm informed Plaintiff, or otherwise disclosed to Plaintiff" that if he used the Calm App, service providers like Twilio would obtain his In-App Activity. Compl. ¶ 33. But Plaintiff's own allegations implicitly acknowledge that whether he was sufficiently informed turns on the contents of the app's "notices and disclosures. *Id.* ¶ 34. "Because Plaintiff's claim necessarily depends on the application of [Calm's privacy] policies— which relate directly to the issue of consent," the Court should hold that these documents "may appropriately be considered on a motion to dismiss." *Garcia*, 78 F. Supp. 3d at 1136 (incorporating by reference Privacy Policy where Plaintiff did not mention it but alleged he did not consent to the data practices at issue in CIPA action) (citing *Knievel*, 393 F.3d at 1076); *see also Al-Ahmed v. Twitter, Inc.*, No. 21-CV-08017-EMC, 2022 WL 1605673, at \*4 (N.D. Cal. May 20, 2022) (incorporation by reference of notices that the plaintiff claims do not exist is

2801623

appropriate where the authenticity of the materials is undisputed). Here, there is little doubt that Plaintiff's claims rely on Calm's privacy disclosures and the authenticity of the publicly available Privacy Policy and Terms are not reasonably subject to dispute. *See, e.g., Laatz*, 682 F. Supp. 3d at 804 (appropriate to take judicial notice of webpages captured via Wayback Machine).

### 2. Product Descriptions

The Product Descriptions (Exhibits J-U) are webpages from Twilio's website that Plaintiff appears to selectively quote, cite, rely upon in his Complaint, and/or that provide additional context for those cited pages. Plaintiff cites incomplete language and mischaracterizes these webpages in a manner that inaccurately conveys their contents to misdescribe the Twilio software products at issue in this case. Compl. ¶¶ 13, 16-17, 25-29, 60-61. The product descriptions are essential to Plaintiff's claims because they are used to try to establish various elements of each claim and to overcome defenses obvious from the face of the Complaint (*i.e.*, the party exception to the wiretapping claims). For instance, to support his CIPA claim, Plaintiff alleges that Twilio "uses" his data for its "own" purposes and supports that allegation by citing a Twilio webpage that states that it can help businesses "merge complete customer histories into a single profile.'" Compl. ¶ 31 (apparently citing Exhibit J); *see also* Compl. ¶ 60 (restating allegation to support CIPA claim). But when the cited webpage is viewed in full context it becomes clear that Twilio is describing a product feature that it offers to clients, that allows ***its clients*** to aggregate ***their*** first-party data, *i.e.*, data "collected directly from users when they interact with [the clients'] business" and collected across that client's own platforms (*e.g.*, on the client's "website, app, or other owned channels."). Exhibit J. Thus, Twilio's description of "merged" or "unified" profiles has nothing to do with Twilio's own "use" of Plaintiff's data but instead refers to a tool in Twilio's software portfolio that can help clients "collect, clean, consolidate, and activate first-party data" across their own platforms. *Id.*

That Plaintiff has failed to actually attach or link the websites he quotes and characterizes does not lead to a different result as the incorporation-by-reference doctrine is specifically intended to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF TWILIO INC.'S MOTION TO DISMISS
Case No. 3:24-cv-04914-AMO

2801623

*Khoja*, 899 F.3d at 1002; *Knievel*, 393 F.3d at 1076; *Della*, 2024 WL 457798, at *16 ("Plaintiffs sufficiently rely on the Product websites to justify applying the doctrine of incorporation by reference to the websites as a whole, even if the specific webpages offered by Colgate are not expressly referenced in the FAC."). Exhibits K-U, like Exhibit J, likewise are webpages that appear to contain language quoted or mischaracterized from Twilio's website (or provide context for such pages) as support for Plaintiff's claims and are incorporated by reference for the same reasons.

### 3. Twilio Software Contract and Business Terms

Likewise, Plaintiff's claims necessarily rely on the Twilio Software Contract and Business Terms, because it is only by virtue of those agreements that Calm is able to "embed the Segment SDK" that Plaintiff alleges "allow[s]" the "interception" and unauthorized "access" to occur. Compl. ¶¶ 2, 31, 52. And Plaintiff's complaint is clear that he is accusing Calm and Twilio of acting in concert. *See, e.g., id.* ¶¶ 22, 31, 32. Therefore, the agreements are incorporated by reference in the Complaint. *See, e.g., Parrino*, 146 F.3d at 706 (incorporating employee health plan where the claims were premised upon plaintiff's coverage under the plan).

Moreover, Plaintiff's allegations regarding the ways in which Twilio "uses" his data refer to specific Calm products he implicitly (and incorrectly) suggests Calm purchased from Twilio. Compl. ¶¶ 26-29 (citing without attaching webpages that discuss "unified profiles," "identity resolution," and "predictive traits"). As such, Plaintiff's "use" allegations necessarily rely on the contracts between Calm and Twilio establishing which specific products Calm has in fact purchased from Twilio and which it has not. Therefore, because Plaintiff's claims necessarily rely on the Twilio Software Contract and Business Terms, those documents are incorporated by reference into the Complaint. *See Parrino*, 146 F.3d at 706; *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 936 n. 21 (S.D. Cal. 2023), *on reconsideration in part*, No. 21MD2992-GPC(MSB), 2024 WL 3174380 (S.D. Cal. June 25, 2024) (finding contract between defendant and non-party was incorporated by reference because fiduciary duty claim relied "in part" on the terms of the contract).

2801623

1

## V. CONCLUSION

2      Twilio respectfully requests that the Court grant its request to judicially notice and

3 incorporate by reference the foregoing documents in support of its motion to dismiss.

4

5

6

7 Dated:  October 18, 2024                    KEKER, VAN NEST & PETERS LLP

8                                                              By:   /s/ Benjamin Berkowitz

9                                                                     BENJAMIN BERKOWITZ
                                                                        MATAN SHACHAM
10                                                                    JACQUELINE CONCILLA
                                                                        NATALIE R. HEIM

11                                                                    Attorneys for Defendant
12                                                                    TWILIO INC., a Delaware corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF TWILIO INC.'S MOTION TO DISMISS
Case No. 3:24-cv-04914-AMO

2801623