# EXHIBIT G

# FILED UNDER SEAL



**CONFIDENTIAL**

**Twilio Platform Agreement**

| Customer Name | Calm.com, Inc. |
|---|---|
| Customer Address | 77 Geary Street 3rd Floor, San Francisco, California 94105 |
| Customer State or Country of Incorporation | CA |
| Customer Entity Type | Corporation |

This Twilio Platform Agreement ("***Agreement***") sets forth the terms for Customer's use of the Services (as defined below) and is entered into as of the last date beneath the parties' signatures below ("***Effective Date***") between Twilio Inc., a Delaware corporation, with a place of business at 101 Spear Street, 1st Floor, San Francisco, CA 94105 ("***Twilio***") and the customer identified above ("***Customer***"). This Agreement consists of the following Terms and Conditions, all exhibits and attachments hereto, and any applicable Order Form(s) (as defined below).

As of the Effective Date of this Agreement, any new Order Forms between Customer and Twilio (or Segment.io, Inc) will be governed by this Agreement. The Master Subscription Agreement (including any modifications or amendments thereto) effective December 20, 2021, between the Customer and Segment.io, Inc. ("***Original Agreement***") will terminate upon the expiration of the paid subscription term of Order Form Number Q-48993-5, on December 31, 2022. At which time neither party shall have any further obligations under the Original Agreement, except for any outstanding payment obligations and any provisions under the Original Agreement that by their nature survive termination. For the avoidance of doubt, after December 31, 2022, any references to the "Agreement" means this Agreement which consists of the terms and conditions set forth below, any exhibits, documentation, or Addendum identified below and any Order Form that references the Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement through their respective duly authorized representatives as of the Effective Date.

| **Customer** | **Twilio Inc.** |
|---|---|
| By: DocuSigned by: Will Larson 117A3F59038A41D... | By: DocuSigned by: Robbie Petrie 2C2EB95E4E0743A... |
| Name: Will Larson | Name: Robbie Petrie |
| Title: Chief Technology Officer | Title: VP Finance |
| Date: 11/29/2022 | Date: 12/1/2022 |



**CONFIDENTIAL**

**Terms and Conditions**

**1. Definitions**

"***Affiliate***" means any entity that directly or indirectly controls or is controlled by, or is under common control with, the party specified. For purposes of this definition, "control" means direct or indirect ownership of more than fifty percent (50%) of the voting interests of the subject entity.

"***Beta Offerings***" means Services that are identified as alpha, beta, not generally available, limited release, developer preview, trial, or any similar Services offered by Twilio.

"***Customer Application***" means any software application or service that Customer makes available to Customer's End Users that interfaces with the Services.

"***Customer Data***" means data and other information made available by or for Customer, to Twilio, through the use of the Services under this Agreement.

"***Customer Materials***" means any information, specifications, instructions, or materials that Customer provides to Twilio in connection with the Advisory Services.

"***Documentation***" means Twilio's documentation, including any usage guides and policies, for the Services, the current version of which is available at https://www.twilio.com/docs.

"***End User***" means any user of each Customer Application.

"***Malicious Code***" means code, files, scripts, agents, or programs intended to do harm, including, for example, viruses, worms, time bombs and Trojan horses.

"***Order Form***" means an ordering document between Customer and Twilio, or any of their Affiliates, that specifies mutually agreed upon rates for certain Services and any commercial terms related thereto.

"***Services***" means the products and services provided by Twilio or its Affiliates, as applicable, that are (a) used by Customer, including, without limitation, products and services that are on a trial basis or otherwise free of charge or (b) ordered by Customer under an Order Form. Services include products and services that provide both (x) platform services, including access to any application programming interface ("***Twilio API***") and (y) where applicable, communications services used in connection with the Twilio APIs.

"***Service Usage Data***" means any data that is derived from the use of the Services that does not directly or indirectly identify Customer, Customer's End Users, or any natural person and includes (a) data such as volumes, frequencies, bounce rates, and Service performance data and (b) subject to any restrictions under applicable law or regulation, data that is anonymized, de-identified, and/or aggregated such that it could no longer directly or indirectly identify Customer, Customer's End Users, or any natural person.

"***Support Terms***" means the terms of support for the Services, the current version of which is available at https://www.twilio.com/support-plans.

"***Twilio Acceptable Use Policy***" means certain terms relating to the use of the Services, including the Service and Country Specific Requirements set forth therein, the current version of which is available at https://www.twilio.com/legal/aup.

"***Twilio Data Protection Addendum***" means the terms relating to the processing of personal data pursuant to this Agreement, the current version of which is available at https://www.twilio.com/legal/data-protection-addendum.

"***Twilio Privacy Notice***" means the privacy notice for the Services, the current version of which is available at https://www.twilio.com/legal/privacy.



"***Twilio Security Overview***" means the security related terms for the Services, the current version of which is available at https://www.twilio.com/legal/security-overview.

"***Twilio SLA***" means the service level agreement for the Services, the current version of which is available at https://www.twilio.com/legal/service-level-agreement.

Capitalized terms not defined in this Section 1 will have the meaning given to them in this Agreement.

**2. Services**

2.1 Provision of the Services. Twilio will: (a) provide the Services to Customer pursuant to this Agreement, the applicable Documentation, and any applicable Order Form(s); (b) comply with the Twilio SLA; (c) comply with the security terms for the Services as set forth in the Twilio Security Overview; (d) provide the Services in accordance with laws applicable to Twilio's provision of the Services to its customers generally (i.e. without regard for Customer's particular use of the Services), subject to Customer's use of the Services in accordance with this Agreement, the applicable Documentation, and any applicable Order Form(s); (e) make commercially reasonable efforts to use industry standard measures designed to scan, detect, and delete Malicious Code; (f) if applicable, use trained, qualified personnel to provide the Services and Advisory Services; and (g) use commercially reasonable efforts to provide Customer with applicable support for the Services as described in the Support Terms. Any Advisory Services shall be provided in accordance with the Advisory Services Requirements set forth in the AUP. Additionally, in the event Customer wants to purchase any professional services from Twilio, such professional services shall be subject to a separate Professional Services Agreement.

2.2 Customer Responsibilities. Customer will: (a) be solely responsible for all use of the Services and Documentation under its account and each Customer Application; (b) not transfer, resell, lease, license, or otherwise make available the Services to third parties (except to make the Services available to Customer's End Users in connection with the use of each Customer Application as permitted herein) or offer them on a standalone basis; (c) use the Services only in accordance with this Agreement, the Twilio Acceptable Use Policy, the applicable Documentation, any applicable Order Form(s), and applicable law or regulation; (d) be solely responsible for all acts, omissions, and activities of Customer's End Users, including their compliance with this Agreement, the Twilio Acceptable Use Policy, the applicable Documentation, any applicable Order Form(s), and applicable law or regulation; (e) use commercially reasonable efforts to prevent unauthorized access to or use of the Services and notify Twilio promptly of any such unauthorized access or use; (f) provide reasonable cooperation regarding information requests from law enforcement, regulators, or telecommunications providers; and (g) comply with its representations and warranties set forth in Section 5 (Representations, Warranties, and Disclaimer).

2.3 Suspension of Services. Except to the extent required by a telecommunications carrier or regulatory body, where practicable, and in so far as the security, integrity of availability of Twilio Services is not threatened by such notice, Twilio will provide Customer with at least 10 business days' prior written notice to Customer for cause if Twilio, in good faith, determines: (a) that Customer or an End User of Customer materially breaches (or Twilio, in good faith, believes that Customer or an End User of Customer has materially breached) any provision of this Agreement, including its obligations under the Twilio Acceptable Use Policy; (b) there is an unusual and material spike or increase in Customer's use of the Services and that such traffic or use is fraudulent or materially and negatively impacting the operating capability of the Services; (c) that its provision of the Services is prohibited by applicable law or regulation; (d) there is any use of the Services by Customer or an End User of Customer that threatens the security, integrity, or availability of the Services; or (e) that information in Customer's account is untrue, inaccurate, or incomplete. Customer remains responsible for the Fees (as defined below). Once the issue requiring suspension is resolved, Twilio will promptly restore Customer's access to the Services in accordance with this Agreement.

2.4 Changes to the Services. Customer acknowledges that the features and functions of the Services may change over time; provided, however, Twilio will not materially decrease the overall functionality of the Services. It is Customer's responsibility to ensure each Customer Application is compatible with the Services. Although Twilio endeavors to avoid changes to the Twilio APIs that are not backwards compatible, if any such changes become necessary, Twilio will use commercially reasonable efforts to notify Customer at least sixty (60) days prior to



implementation. In the event Twilio makes a non-backwards compatible change to a Twilio API and such change materially and negatively impacts Customer's use of the Services ("***Adverse API Change***"), (a) Customer will notify Twilio of the Adverse API Change and (b) Twilio may agree to work with Customer to resolve or otherwise address the Adverse API Change, except where Twilio, in its sole discretion, has determined that an Adverse API Change is required for security reasons, by telecommunications providers, or to comply with applicable law or regulation.

2.5 Beta Offerings. If Customer accesses any Services or service features as Beta Offerings, the use is permitted only for Customer's internal evaluation during the period designated by Twilio (or if not designated, 30 days). Twilio will identify all Beta Offerings and their use may be subject to additional terms and agreed by the parties. Beta Offerings may be inoperable, incomplete, or include features Twilio may never release, and their features and performance information are Twilio's Confidential Information. **Notwithstanding anything else in this Agreement, Twilio provides no warranty, SLA or support for Beta Offerings and Twilio liability for Beta Offerings will not exceed US$50.**

**3. Fees and Payment Terms**

3.1 Fees. Customer agrees to pay the fees set forth in the applicable Order Form(s). If Customer uses any Services not set forth in the applicable Order Form(s), Customer will be charged the applicable rates available at https://www.twilio.com/pricing.

3.2 Taxes and Communications Charges.

(a) Taxes. Twilio fees are exclusive of any applicable taxes, levies, duties, or other similar exactions imposed by a legal, governmental, or regulatory authority in any applicable jurisdiction, including, without limitation, sales, use, value-added, consumption, communications, or withholding taxes (collectively, "***Taxes***"). Customer will pay all Taxes associated with this Agreement, excluding any taxes based on Twilio's net income, property, or employees. If Customer is required by applicable law to withhold any Taxes from payments owed to Twilio, Customer will reduce or eliminate such withheld Taxes upon receipt of the appropriate tax certificate or document provided by Twilio. Customer will provide Twilio with proof of payment of any withheld Taxes to the appropriate authority. Taxes will be shown as a separate line item on an invoice.

(b) Communications Charges. All fees are exclusive of any applicable communications service or telecommunication provider (e.g., carrier) fees or surcharges (collectively, "***Communications Surcharges***"), Customer will pay all Communications Surcharges associated with Customer's use of the Services. Communications Surcharges will be shown as a separate line item on an invoice. Customer will pay all costs, fines, or penalties that are imposed on Twilio by a government or regulatory body or a telecommunications provider as a result of Customer's or an End User of Customer's use of the Services.

(c) Exemption. If Customer is exempt from paying certain Taxes or Communications Surcharges, Customer will provide the necessary exemption information as requested by Twilio or a valid exemption certificate issued by the appropriate authority via e-mail to taxforms@twilio.com. Customer will be exempt on a going-forward basis once Twilio has approved Customer's exemption request. If the appropriate authority determines, at any time, that Customer is not exempt from paying any Taxes or Communications Surcharges, Customer will promptly pay such Taxes or Communications Surcharges to Twilio, plus any applicable interest or penalties.

3.3 Except as otherwise expressly set forth herein, payment obligations are non-cancelable and fees, Taxes, and Communications Surcharges (collectively, "***Fees***"), once paid, are non-refundable. Except as otherwise set forth in the applicable Order Form(s) and subject to Section 3.4 (Payment Disputes), Customer will pay the Fees due hereunder in accordance with the following applicable payment method:

(a) Credit Card. If Customer elects to add funds to its account by credit card and uses such funds to pay the Fees due, Customer is responsible for ensuring such funds cover the Fees due. If Customer's account does not have sufficient funds or Customer's credit card declines a charge for the Fees due, Twilio may suspend the provision



of the Services to all of Customer's accounts until the Fees due are paid in full. Customer is prohibited from creating new accounts until the Fees due are paid in full.

(b) Invoicing. If Customer elects to receive invoices and Twilio approves Customer for the same, then, except as otherwise set forth in the applicable Order Form(s), (x) invoices will be sent to Customer each month via email to the email address(es) Customer designates in its account and (y) Customer will pay the Fees due within thirty (30) days of the date of the invoice. Except as otherwise set forth in the applicable Order Form(s) or an invoice to the extent Customer procures the Services without any applicable Order Form(s), the Fees are payable in United States dollars. If Customer fails to pay the Fees and remedy such failure within fifteen (15) days of the date Twilio provides Customer with written notice of the same, then Twilio may (i) assess and Customer will pay a late fee of the lesser of 1.5% per month or the maximum amount allowable by law and (ii) suspend the provision of the Services to all of Customer's accounts until the Fees due are paid in full. Customer is prohibited from creating new accounts until the Fees due are paid in full.

3.4 Payment Disputes. Customer will notify Twilio in writing within sixty (60) days of the date Twilio bills Customer for any Fees that Customer wishes to dispute. Customer may withhold the disputed Fees until the dispute is resolved. Where Customer is disputing any Fees, Customer must act reasonably and in good faith and will cooperate diligently with Twilio to resolve the dispute. Twilio will not charge Customer a late fee or suspend the provision of the Services for unpaid Fees that are in dispute, unless Customer fails to cooperate diligently with Twilio or Twilio determines the dispute is not reasonable or brought in good faith by Customer.

**4. Ownership, Customer Data, and Confidentiality**

4.1 Ownership Rights. As between the parties, Twilio exclusively owns and reserves all right, title, and interest in and to the Services, the Documentation, Twilio's Confidential Information (as defined below), Service Usage Data, and any feedback or suggestions provided by Customer or an End User of Customer regarding the Services. As between the parties, Customer exclusively owns and reserves all right, title, and interest in and to the Customer Applications, Customer's Confidential Information, and Customer Data, subject to Twilio's rights to process Customer Data in accordance with this Agreement.

4.2 Customer Data. Customer grants Twilio and its Affiliates the right to process Customer Data as necessary to provide the Services in a manner that is consistent with this Agreement, the Twilio Data Protection Addendum, and the Twilio Privacy Notice. Customer is responsible for the quality and integrity of Customer Data.

4.3 Confidentiality. (a) Definition. "Confidential Information" means information or data, regardless of whether it is in tangible form, disclosed to the receiving party under this Agreement that is designated by the disclosing party as proprietary or confidential or that should be reasonably understood to be proprietary or confidential due to its nature and the circumstances of its disclosure. Confidential Information includes the terms and conditions of this Agreement, Order Form(s), Customer Data, security reports and attestations, audit reports, customer lists, pricing, concepts, processes, plans, designs and other strategies, "know how", financial, and any technical or performance information about the disclosing party or Affiliates. These confidentiality obligations do not apply to information that the receiving party can document (a) is or becomes public knowledge through no fault of the receiving party, (b) is rightfully known or possessed prior to receipt under this Agreement, (c) is rightfully received from a third party without breach of confidentiality obligations or (d) is independently developed without using the disclosing party's Confidential Information.

(b) Use and Disclosure. As the receiving party, each party will (a) hold Confidential Information in confidence and not disclose it to third parties except as permitted in this Agreement, including Section 4.2 (Customer Data), and (b) only use Confidential Information to fulfill its obligations and exercise its rights in this Agreement. The receiving party may disclose Confidential Information to its respective employees, agents, legal counsel, accountants, contractors, and in Twilio's case subcontractors, and other representatives ("***Representatives***") having a legitimate need to know, provided it remains responsible for their compliance with this Section 4.3 and they are bound to confidentiality obligations no less protective than this Section 4.3. Notwithstanding the foregoing, Customer may disclose Twilio's SOC2 or similar report, which will constitute Twilio's Confidential Information, only to an End



User of Customer or an End User of Customer's employee or contract worker who has a "need to know" for such SOC2 or similar report and is legally bound to terms of confidentiality that are at least as protective as the terms of this Section 4.3.

(c) Required Disclosures. Except as outlined in the DPA, nothing in this Agreement prohibits either party from making disclosures, including of Customer Data and other Confidential Information, if required by law, subpoena or court order, provided (if permitted by law) it notifies the other party in advance and cooperates in any effort to obtain confidential treatment.

(d) Remedies. Unauthorized use or disclosure of Confidential Information may cause substantial harm for which damages alone are an insufficient remedy. Each party may seek appropriate equitable relief, in addition to other available remedies, for breach or threatened breach of this Section 4.3.

**5. Representations, Warranties, and Disclaimer**

5.1 Power and Authority Representation. Each party represents and warrants that it has validly entered into this Agreement and has the legal power to do so.

5.2 Anti-Corruption and International Trade Laws. Each party (a) warrants that it will comply with all applicable anti-corruption, anti-money laundering, economic and trade sanctions, export controls, and other international trade laws, regulations, and governmental orders (collectively, "***Anti-Corruption and Trade Laws***") in the jurisdictions that apply directly or indirectly to the Services, including, without limitation, the United States, and (b) represents that it has not made, offered, promised to make, or authorized any payment or anything of value in violation of Anti-Corruption and Trade Laws. Customer will promptly notify Twilio in writing of any actual or potential violation of Anti-Corruption and Trade Laws in connection with the use of the Services and take all appropriate steps to remedy or resolve such violations, including any steps requested by Twilio. Customer represents that it has obtained, and warrants that it will continue to obtain, all licenses or other authorizations required to export, re-export, or transfer the Services. Each party represents that it (and in the case of Customer, also Customer's End Users) is not on any government prohibited, denied, or unverified-party, sanctions, debarment, or exclusion list or export-controlled related restricted party list (collectively, "***Sanctions Lists***"). Customer will immediately (a) discontinue its use of the Services if Customer becomes placed on any Sanctions List and (b) remove an End User of Customer's access to the Services if such End User of Customer becomes placed on any Sanctions List. Customer represents that it has not, and warrants that it will not, export, re-export, or transfer the Services to an entity on any Sanctions List without prior authorization from the applicable governmental authority. Notwithstanding anything to the contrary in this Agreement, either party may terminate this Agreement immediately upon written notice to the other party if the other party is in breach of its obligations in this Section 5.2. If Customer's account is blocked because it is operating in a country or region prohibited under this Section 5.2, Customer will receive notice of its account being inoperable when Customer attempts to log into its account in such prohibited country or region.

5.3 Consents and Permissions. Customer represents and warrants that it has provided and will continue to provide adequate notices, and that it has obtained and will continue to obtain the necessary permissions and consents, to provide Customer Data to Twilio for processing pursuant to Section 4.2 (Customer Data).

5.4 Services. Twilio represents and warrants that the Services perform materially in accordance with the applicable Documentation. Customer's exclusive remedy for a breach of this Section 5.4 will be, at Twilio's option, to (a) remediate any material non-conformity or (b) refund to Customer the Fees paid for the time period during which the affected Services do not comply with this Section 5.4.

5.5 Additional Warranty. Twilio will comply with all applicable laws in its provision of the Services but for clarity, Twilio's responsibilities under Applicable Data Protection Laws (as defined in the DPA) are governed by the DPA.

5.6 DISCLAIMER. WITHOUT LIMITING A PARTY'S EXPRESS WARRANTIES AND OBLIGATIONS HEREUNDER, AND EXCEPT AS EXPRESSLY PROVIDED HEREIN, THE SERVICES ARE



PROVIDED "AS IS," AND NEITHER PARTY MAKES ANY WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, AND EACH PARTY SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT TO THE FULLEST EXTENT PERMITTED BY LAW. TWILIO ADDITIONALLY DISCLAIMS ALL WARRANTIES RELATED TO TELECOMMUNICATIONS PROVIDERS. CUSTOMER ACKNOWLEDGES THE INTERNET AND TELECOMMUNICATIONS PROVIDERS' NETWORKS ARE INHERENTLY INSECURE AND THAT TWILIO WILL HAVE NO LIABILITY FOR ANY CHANGES TO, INTERCEPTION OF, OR LOSS OF CUSTOMER DATA WHILE IN TRANSIT VIA THE INTERNET OR A TELECOMMUNICATIONS PROVIDER'S NETWORK. BETA OFFERINGS ARE PROVIDED "AS IS" AND "AS AVAILABLE" WITH NO WARRANTIES AND TWILIO WILL HAVE NO LIABILITY AND NO OBLIGATION TO INDEMNIFY FOR ANY BETA OFFERING WHATSOEVER.

**6. Mutual Indemnification**





DocuSign Envelope ID: 3638EE93-4B22-44A0-A5D0-A2E449E5F245

CONFIDENTIAL

[content redacted]

## 7. Limitation of Liability

[content redacted]

## 8. Term, Termination, and Survival



8.1 Agreement Term. This Agreement will commence on the Effective Date and continue until terminated in accordance with Section 8.2 (Termination) ("***Term***").

8.2 Termination.

(a) For Convenience. Either party may terminate this Agreement for convenience by providing the other party with at least thirty (30) days prior written notice. Notwithstanding the preceding sentence, if there are any Order Form(s) in effect, this Agreement will not terminate until all such Order Form(s) have expired or have been terminated in accordance with the terms therein.(b) Material Breach. Either party may terminate this Agreement (including all Order Form(s) and Services that are in effect) in the event the other party commits any material breach of this Agreement and fails to remedy such breach within fifteen (15) days of the date of written notice of such breach. For the avoidance of doubt, a breach of the Twilio Acceptable Use Policy will be considered a material breach of this Agreement. If Twilio terminates this Agreement because of Customer's material breach, then Twilio will also close Customer's accounts.

(c) Insolvency. Subject to applicable law, either party may terminate this Agreement immediately by providing written notice in the event of the other party's liquidation, commencement of dissolution proceedings, or any other proceeding relating to a receivership, failure to continue business, assignment for the benefit of creditors, or becoming the subject of bankruptcy.

8.3 Survival. Upon termination of this Agreement, the terms of this Section 8.3 and the terms of the following Sections will survive: Section 2.1(c) (regarding the Twilio Security Overview), Section 3 (Fees and Payment Terms), Section 4 (Ownership, Customer Data, and Confidentiality), Section 5.5 (Disclaimer), Section 6 (Mutual Indemnification), Section 7 (Limitation of Liability), and Section 10 (General).

**9. Insurance**

**10. General**



10.1 Affiliates.

(a) Affiliates of Customer. An Affiliate of Customer may use the Services under and in accordance with the terms of this Agreement. Customer represents and warrants that it has sufficient rights and the authority to make this Agreement binding upon each Affiliate of Customer. Customer and each Affiliate of Customer will be jointly and severally liable for the acts and omissions of such Affiliate in connection with this Agreement and such Affiliate's use of the Services. Any claim from an Affiliate of Customer will only be brought against Twilio by Customer on behalf of such Affiliate.

(b) Affiliates of Twilio. An Affiliate of Twilio may provide the Services, or a portion thereof, to Customer or an Affiliate of Customer, as applicable, in accordance with this Agreement and any applicable Order Form(s) with such Affiliate of Twilio. Twilio will (x) be responsible for the Services its Affiliates provide and (y) not be relieved of its obligations under this Agreement if its Affiliates provide the Services or a portion thereof. Twilio will enforce the terms of this Agreement relating to the Services its Affiliates provide. Notwithstanding anything to the contrary in this Agreement, an Affiliate of Twilio may directly bill Customer or an Affiliate of Customer, as applicable, (i) for the Services it provides or (ii) solely as a billing agent for Twilio or the Affiliate of Twilio providing the Services, as applicable.

10.2 Assignment. Neither party hereto may assign or otherwise transfer this Agreement or any applicable Order Form(s), in whole or in part, whether by operation of law or otherwise, without the other party's prior written consent (not to be unreasonably withheld or delayed). Notwithstanding the foregoing, either party may assign this Agreement or any applicable Order Form(s), in whole or in part, without consent to (a) a successor to all or part of its assets or business or (b) an Affiliate. Any attempted assignment, delegation, or transfer by either party in violation hereof will be void. Subject to the foregoing, this Agreement and any applicable Order Form(s) will be binding on the parties and their respective successors and permitted assigns.

10.3 Relationship. Each party is an independent contractor in the performance of each and every part of this Agreement. Nothing in this Agreement is intended to create or will be construed as creating an employer-employee relationship or a partnership, agency, joint venture, or franchise. Each party will be solely responsible for all of its employees and agents and its labor costs and expenses arising in connection therewith and for any and all claims, liabilities, damages, or debts of any type whatsoever that may arise on account of its activities, or those of its employees and agents, in the performance of this Agreement. Neither party has the authority to commit the other party in any way and will not attempt to do so or imply that it has the right to do so.

10.4 No Third-Party Beneficiaries. This Agreement does not confer any benefits on any third party (including any End User of Customer or an Affiliate) unless it expressly states that it does.

10.5 Notices. Notices to Twilio will be provided via email to legalnotices@twilio.com. All notices to Customer will be provided via email to the relevant contact(s) designated by Customer in its account.

10.6 Governing Law and Attorneys' Fees. This Agreement is governed by the laws of the State of California and the United States without regard to conflict of laws provisions and without regard to the United Nations Convention on the International Sale of Goods. The jurisdiction and venue for actions and related to this Agreement will be the state and United States federal courts located in San Francisco, California and both parties submit to personal jurisdiction of those courts. In the event of any adjudication of any dispute under this Agreement, the prevailing party in such action will be entitled to reimbursement of its attorneys' fees and related costs by the non-prevailing party.

10.7 Dispute Resolution. In the event of a dispute, claim, or controversy arising out of or in connection with this Agreement or the breach, termination, enforcement, interpretation, or validity thereof (other than for disputes, claims, or controversies related to the intellectual property of a party) (collectively, "***Disputes***"), each party's senior representatives will engage in good faith negotiations with the other party's senior representatives to amicably resolve a Dispute. If the parties are unable to resolve a Dispute within thirty (30) days after the first request to engage in good



faith negotiations or within such other time period as the parties may agree to in writing, then either party may seek remedies available under this Agreement.

10.8 Force Majeure. No failure, delay, or default in performance of any obligation of a party will constitute an event of default or breach of this Agreement to the extent that such failure to perform, delay, or default arises out of a cause, existing or future, that is beyond the control and without negligence of such party, including action or inaction of governmental, civil or military authority, fire, strike, lockout, or other labor dispute, flood, terrorist act, war, riot, theft, earthquake, or other natural disaster (collectively, "***Force Majeure Events***"). The party affected by a Force Majeure Event will take all reasonable actions to minimize the consequences of any such event.

10.9 Waiver and Order of Precedence. No failure or delay by either party in exercising any right or enforcing any provision under this Agreement will constitute a waiver of that right or provision, or any other provision. Titles and headings of sections of this Agreement are for convenience only and will not affect the construction of any provision of this Agreement. In the event of any conflict or inconsistency among the following documents, the order of precedence will be: (1) the applicable Order Form(s), (2) the Twilio Data Protection Addendum, (3) the terms set forth in the body of this Twilio Platform Agreement, (4) the Twilio Acceptable Use Policy, (5) any other terms incorporated by reference herein or any other exhibits or attachments hereto, and (6) the applicable Documentation.

10.10 Severability. In the event that any provision of this Agreement is held by a court or other tribunal of competent jurisdiction to be unenforceable, such provision will be limited or eliminated to the minimum extent necessary to render such provision enforceable and, in any event, the remainder of this Agreement will continue in full force and effect.

10.11 Counterparts. This Agreement may be executed in multiple counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Counterparts may be delivered via electronic mail (including .pdf or electronic signature) or other transmission method and any counterpart so delivered will be deemed to have been duly and validly delivered and be valid and effective for all purposes.

10.12 Entire Agreement. This Agreement (including all exhibits and attachments hereto) will constitute the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous understandings, proposals, statements, sales materials, presentations, or non-disclosure or other agreements, whether oral or written. No oral or written information or advice given by Twilio, its agents, or its employees will create a warranty or in any way increase the scope of the warranties or obligations in this Agreement. The parties agree that any term or condition stated in Customer's vendor registration form or registration portal or in any Customer purchase order document or similar document will be construed solely as evidence of Customer's internal business processes and the terms and conditions contained therein will be void and have no effect with regard to this Agreement, even if accepted by Twilio or signed by the parties after the Effective Date.