Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Jared Lucky (SBN 354413)
jlucky@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought

Counsel for Plaintiff and the Putative Classes

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| NOAH BENDER, individually and on behalf of all others similarly situated,<br><br>　　　　　*Plaintiff*,<br>　v.<br><br>TWILIO INC., a Delaware corporation,<br><br>　　　　　*Defendant*. | Case No. 3:24-cv-04914-AMO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE** |

In connection with its motion to dismiss, Defendant Twilio Inc. moves the Court to take judicial notice of a variety of webpages and a handful of private contractual documents, or to consider the documents incorporated in the Complaint. Plaintiff responds to each request below:

**Exhibit A** to the Heim Declaration: Exhibit A is a series of screenshots purporting to show what is displayed within the Google Play Store when a user searches for the Calm app and clicks on certain links. Twilio contends that these screenshots are judicially noticeable because publicly available webpages are generally judicially noticeable. (Dkt. 22, Request for Judicial Notice in Support of Twilio Inc.'s Motion to Dismiss Complaint, at 5.) But Twilio has not shown that this is the page flow that Mr. Bender would have seen when he downloaded the Calm app. The Heim Declaration states only that screenshots depict what the declarant saw on October 8, 2024, indisputably after Mr. Bender downloaded the app. (Dkt. 32, Declaration of Natalie Heim ("Heim Decl.") ¶ 2.) As this document is introduced to show that Mr. Bender consented, that flaw should doom the request for judicial notice. *See In re Easysaver Rewards Litig.*, 737 F.Supp.2d 1159, 1168 (S.D. Cal. 2010) (denying request for judicial notice when it was not clear whether submitted versions of webpages were actually viewed by the plaintiff); *see also Davis v. Meta Platforms, Inc.*, No. 2:23-cv-01352-APG-BNW, 2024 WL 3293644, at *7 (D. Nev. July 3, 2024) (denying request to take judicial notice of websites because "I cannot accurately and readily determine that the webpages have remained unchanged since Davis visited the Nevada DMV website").

Twilio also says this document is incorporated by reference into the Complaint, as Mr. Bender alleges he did not consent to Twilio intercepting his communications with Calm. (See Complaint ("Compl.") ¶ 32.) Twilio's argument is doubly wrong. First, Twilio contends that Mr. Bender's claim implicates "Calm's data collection and sharing practices." (Dkt. 22 at 6.) But that characterization is a misconstruction of the Complaint itself, which is concerned not with what Calm does, but with what *Twilio* does. Second, references to a lack of consent do not incorporate by reference any document in which the plaintiff might conceivably have provided consent, as persuasively explained in *Turner v. Nuance Commc'ns., Inc.*, No. 22-cv-05827-DMR, 2024 WL 2750017, at *7 (N.D. Cal. May 28, 2024). Rejecting a materially identical argument, the *Turner*

court held that because the plaintiff's claim could be assessed based solely on the face of the complaint, it was inappropriate to incorporate documents that the complaint did not itself reference. *Id.* The same is true here. *See also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (holding that if a document not referenced in complaint "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint").

**Exhibit B:** Exhibit B suffers from the same flaws as Exhibit A: there is nothing to suggest that the screenshots accurately reflect what Mr. Bender saw. (*See* Heim Decl. ¶ 3 (admitting that the screenshots were taken on October 8, 2024).) Similarly, the document is not referenced in the Complaint, and there is no basis to consider it incorporated by reference.

**Exhibit C:** Exhibit C is the Calm Privacy Policy. Although it is nominally judicially noticeable, it is dated December 21, 2023. There is nothing to suggest that Mr. Bender ever saw this Policy, or ever agreed to terms that incorporated it. The Complaint does not allege that Mr. Bender's activity on the Calm app postdates December 21, 2023. Further, the Complaint does not reference Calm's Privacy Policy, and there is no reason to consider incorporated by reference.

**Exhibit D:** Exhibit D suffers from the same issue as Exhibit C. It is an older version of the Calm Privacy Policy, dated October 13, 2023. The Complaint does not allege that Mr. Bender's activity on the Calm app postdates October 13, 2023. Further, the Complaint does not reference the Calm Privacy Policy, and there is no reason to consider it incorporated by reference.

**Exhibits F-G:** Exhibits F and G purport to be documents executed by Calm and Twilio in which Calm has contracted for Twilio's services. There is no reasonable argument that these documents, a private contract between the defendant and a third party, are subject to judicial notice. Twilio briefly contends that the contract or contracts are subject to judicial notice because "the documents can be readily and accurately determined from Twilio's business records and are not subject to reasonable dispute." (Dkt. 22 at 5-6.) This is nonsense. Twilio's business records are not free from reasonable dispute. Neither Mr. Bender nor the Court has any ability to test whether the documents produced from these records are accurate or complete. *Cf. Neilson v. Union Bank of Cal.,*

*N.A.*, 290 F.Supp.2d 1101, 1115 (C.D. Cal. 2003) (denying request to take notice of private letter sent by counsel, since the letter's authenticity could not be tested, and the facts in the letter were not generally known in the district or capable of ready determination). Admission of a business record into evidence typically requires the creation of a record designed to ensure the accuracy and truthfulness of the record, none of which is present here. *See* Fed. R. Evid. 803(6). And while some district courts have said that they may take judicial notice of the fact that a contract is signed, *see, e.g.*, *Hartranft v. Encore Capital Grp., Inc.*, 543 F.Supp.3d 893, 916 n.9 (S.D. Cal. 2021), that rule (if it is even correct) does not appear ever to have been applied other than to contracts between the parties whose existence is undisputed, a materially different situation than the one we have here.

**Exhibits H-I:** Exhibit H is Twilio's "Data Protection Addendum," which is available on Twilio's website. Exhibit I is Twilio's "Security Overview," which also is available on Twilio's website. The existence of these documents is judicially noticeable, but the statements contained in the documents cannot be assumed true. *See Smith v. Google LLC*, No. 23-cv-03527-PCP, 2024 WL 2808270, at *3 (N.D. Cal. June 3, 2024) ("Second, Google seeks judicial notice of two other pages on its website that discuss Google Analytics. This request is similarly granted, but notice is again limited to the existence of these documents. The Court cannot conclude that these documents … accurately characterize how Google's tools operate."). Perhaps sensing the issue, Twilio insists that the documents are "expressly incorporated by reference" into the Complaint. (Dkt. 22 at 4.) That is not true. Neither document is quoted or referenced in the Complaint, and none of the claims necessarily rely on either document. Indeed, although Twilio provides extensive argument about how other documents are incorporated by reference, Twilio never explains how either of these exhibits can be considered incorporated into the Complaint. (*See* Dkt. 22 at 6-9.)

**Exhibit J:** Twilio contends that Exhibit J forms the basis of several paragraphs in the Complaint. The document is not cited or referenced in the Complaint, Twilio simply assumes that Exhibit J must be the source of the information Plaintiff alleges in several parts of the Complaint. Twilio appears to believe that the document "forms the basis of the plaintiff's claim." *U.S. v.*

*Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003). But Twilio is misconstruing that rule, as its citations show.

For instance, in *Knievel v. ESPN*, a defamation case concerning a photograph appearing on the defendant's website, the court considered the surrounding website, noting that an allegedly defamatory statement must be viewed in context—that is, the surrounding website was essentially part of the defamatory statement. 393 F.3d 1068, 1076-77 (9th Cir. 2005). And in *Della v. Colgate-Palmolive*, the plaintiff alleged that certain statements on product packaging were misleading. No. 23-cv-04086-JCS, 2024 WL 457798, at *16 (N.D. Cal. Feb. 6, 2024). The statements referred the reader to the manufacturer's website, which the plaintiffs contended did not cure the problem. The district court ruled that it could consider the websites as well, as they were part of the alleged misrepresentations. *Id.* These cases teach that when the document at issue is what makes the defendant's conduct potentially actionable or not, for instance, when it is part of an allegedly defamatory communication or an alleged misrepresentation, it is not error to consider the whole document or representations.

That is not what is happening here. The statements on Twilio's website (assuming for the moment that Twilio has identified the correct source material) are not what makes Twilio's conduct actionable. Instead, it is Twilio's actual conduct, in writing the code that intercepts communications, siphons off the relevant data, and then combines that data on the back end, that forms the basis for Plaintiff's claims. That those *actions* may be described in a document somewhere doesn't mean that the *document* forms the basis of Plaintiff's claims. There is no basis to consider the document incorporated by reference.

Exhibit J is available on public website, so its existence may be judicially noticed. But even though the existence of this document is judicially noticeable, the statements contained in the document cannot be assumed true. *See Smith*, 2024 WL 2808270 at *3.

**Exhibits L, O**: Exhibit L is the source of the quote in paragraph 27 of the Complaint. Exhibit O is an updated version of the webpage quoted in paragraph 28 of the Complaint. (Twilio does not provide the webpages that are quoted in paragraphs 12 and 26.) The Complaint contains

single quotations from each document. As *Khoja* explains, documents quoted in a complaint only become incorporated if they are quoted "extensively," which "should, ordinarily at least, mean more than once." 899 F.3d at 1003. Exhibits L and O flunk this standard. A single quotation is not the kind of extensive reliance that can justify incorporating these documents by reference. And even if the Court were to deem them incorporated into the Complaint, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.*

**Exhibits K, M, N, P, Q, R, S, T, U**: Twilio lumps Exhibits K-U together, saying that they are "webpages that appear to contain language quoted or mischaracterized from Twilio's website (or provide context for such pages) as support for Plaintiff's claims." (Dkt. 22 at 9.) Plaintiff is aware of no case, and certainly Twilio cites to none, that would permit a court to deem a document incorporated by reference because it "provide[s] context" for a plaintiff's claims. Indeed, such an approach would, at the very least, seem to run afoul of *Khoja*'s warning that defendants may abuse the incorporation-by-reference doctrine to "topple otherwise cognizable claims" with unpleaded facts. *Khoja,* 899 F.3d at 1002-03. Documents submitted to "provide context" cannot be considered incorporated by reference into the Complaint.

It appears, although Twilio does not cite the case, that Twilio is relying on the decision in *Knievel*, 393 F.3d 1068 at 1076-77. *Knievel* was a defamation action, and, as the court noted, a defamation claim requires assessing "all parts of the communication that are ordinarily heard or read" with the allegedly defamatory statement. *Id.* at 1076 (quoting Restatement (Second) of Torts § 563, Comment (d).) The complaint only alleged the defamatory statement itself, the defendant offered the other parts of the communication in its motion to dismiss, and the court held those materials properly considered, as they provided context to the allegedly defamatory statement. *Id.* at 1076-77. But the *Knievel* rule does not apply here. *Knievel* does not support attaching *new* documents to provide "context," only providing the complete version of existing documents already cited in the complaint. *See Al-Ahmed v. Twitter Inc.*, 603 F.Supp.3d 857, 868 (N.D. Cal. 2022) (rejecting claim that *Knievel* supported argument that "exhibits that provide context may be

incorporated by reference," noting that "[h]ere, there is no issue with the completeness of an otherwise admissible document. It is a new document altogether.").

Exhibits K, M, N, and P-U are such documents, apparently submitted to provide the context Twilio believes is necessary. They are not quoted or referenced in the Complaint, and there is no argument made that any of Plaintiff's claims rely on these documents. They are, therefore, not incorporated by reference. All of these documents are available on a public website, so their existence may be judicially noticed. But while the existence of these documents is judicially noticeable, the statements contained in the documents cannot be assumed true. *See Smith*, 2024 WL 2808270 at *3.

**Exhibits V and W:** Exhibits V and W are copies of the Calm Terms of Service. Exhibit V is dated October 13, 2023, although the Complaint does not allege that Mr. Bender's use of Calm postdated that date. Moreover, as explained above, references to a lack of consent do not incorporate by reference any document in which the plaintiff might conceivably have provided consent. *See Turner*, 2024 WL 2750017 at *7 (document that defendant alleged showed consent was not incorporated by reference where "Plaintiffs clearly alleged that they were not aware and did not consent to [defendant's conduct,] … Plaintiffs did not rely on the [document] for any of their claims … [, and] the documents were not even mentioned in the complaint").

Respectfully submitted,

**NOAH BENDER**, individually and on behalf of all others similarly situated,

Dated: December 18, 2024

By: /s/ *Jared Lucky*
One of Plaintiff's Attorneys

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Jared Lucky (SBN 354413)
jlucky@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111

Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought*

*Counsel for Plaintiff and the Putative Classes*