KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
JACQUELINE CONCILLA - # 335733
jconcilla@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant
TWILIO INC., a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NOAH BENDER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWILIO INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:24-cv-04914-AMO<br><br>**DEFENDANT TWILIO INC.'S, REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:        June 26, 2025<br>Time:        2:00 p.m.<br>Dept.:        10, 19th Floor<br>Judge:       Hon. Araceli Martínez-Olguín<br><br>Date Filed:  August 8, 2024<br><br>Trial Date:  None Set |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT ...............................................................................................................1

    A. The undisputed evidence establishes that Plaintiff assented to the Calm Terms, which include an arbitration provision. ...........................................1

    B. Both of the alternative circumstances for equitable estoppel apply. ...................6

        1. Plaintiff does not dispute that his claims are intertwined with the Privacy Policy, and there is no basis to separate it from the Terms. ..........7

        2. Plaintiff cannot erase the allegations that establish joint misconduct connected with the agreement...............................................................10

    C. The Court should not—and may not—adopt a new standard for equitable estoppel contrary to binding precedent from the Ninth Circuit and California's Court of Appeal. ...............................................................11

    D. The third-party beneficiary clause is irrelevant to the application of equitable estoppel.........................................................................................13

III. CONCLUSION...........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Airtourist Holdings LLC v. HNA Grp*,
    No. C 17-04989 JSW, 2018 WL 3069444 (N.D. Cal. Mar. 27, 2018) ...................11

*Applebaum v. Lyft, Inc.*,
    263 F. Supp. 3d 454 (S.D.N.Y. 2017).........................................................................6

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)................................................................................................14

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ................................................................................3, 5

*Bui-Ford v. Tesla, Inc.*,
    No. 4:23-CV-02321, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ........................10

*Carter v. Spiegel*,
    No. 21-cv-03990-TSH, 2022 WL 126303 (N.D. Cal. Jan. 13 2022)......................11

*Coinmint, LLC v. DX Corr. Design, Inc.*,
    2023 WL 9595893 (N.D. Cal. Apr. 24, 2023) ...............................................10, 11

*Dohrmann v. Intuit, Inc.*,
    823 Fed. App'x 482 (9th Cir. 2020) .........................................................................4

*Franklin v. Cmty. Reg'l. Ctr.*,
    998 F.3d 867 (9th Cir. 2021) ...........................................................9, 11, 12, 15

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ............................................................10, 12

*Hansen v. LMB Mortg. Servs., Inc.*,
    1 F.4th 667 (9th Cir. 2021) ......................................................................................2

*Harries v. Stark*,
    No. 3:14–CV–2684–L, 2015 WL 4545071 (N.D. Tex. July 28, 2015).................15

*Harris v. Pac. Gas & Elec. Co.*,
    2022 WL 16637987 (N.D. Cal. Nov. 22, 2022) ...................................................14

*Herrera v. Cathay Pac. Airways Ltd.*,
    104 F.4th 702 (9th Cir. 2024)......................................................................7, 9, 11

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) ..................................................................................8

2844390

*Hunt v. Meta Platforms, Inc.*,
    735 F. Supp. 3d 1133 (N.D. Cal. 2024) ................................................................7, 10, 11

*India Price v. Carnival Corp.*,
    712 F. Supp. 3d 1347 (S.D. Cal. 2024) ........................................................................10

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ...................................................................................11

*Lee v. Intelius Inc.*,
    737 F.3d 1254 (9th Cir. 2013) .....................................................................................6

*Lee v. Ticketmaster*,
    817 Fed. Appx. 393 (9th Cir. 2020) .............................................................................5

*Ma v. Golden State Renaissance Ventures, LLC*,
    No. 3:21-cv-00856-WHO, 2021 WL 2190912 (N.D. Cal. May 31, 2021) ....................9, 11

*Maree v. Deutsche Lufthansa AG*,
    No. SACV 20-885-MWF, 2021 WL 267853 (C.D. Cal. Jan. 26, 2021) ...........................5, 6

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ....................................................................................12

*Oberstein v. Live Nation Entm't, Inc.*,
    60 F.4th 505 (9th Cir. 2023) ......................................................................................5

*In re Pac. Fertility Ctr. Litig.*,
    814 F. App'x 206 (9th Cir. 2020) ..............................................................................11

*Perry-Hudson*,
    No. 24-cv-03741-VC, 2024 WL 4933332 (N.D. Cal 2024) ........................................ *passim*

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) .........................................................................5

*Pizarro v. QuinStreet, Inc.*,
    No. 22-cv-02803-MMC, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ...........................4, 5

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017) .....................................................................................8

*Prescott v. Contra Costa Cty.*,
    No. 24-cv-01660-HSG, 2024 WL 3090489 (N.D. Cal. June 21, 2024) ...........................12

*Reyes v. Educ. Credit Mgmt. Corp.*,
    773 Fed. App'x 989 (9th Cir. 2019) ...........................................................................10

*Salas v. Universal Credit Servs. LLC*,
    No.: 17-CV-2352 JLS (BLM), 2019 WL 1242448 (S.D. Cal. Mar. 18, 2019) .................10, 11

2844390

*Sanders v. Swift Transp. Co. of Ariz., LLC,*
    843 F. Supp. 2d 1033 (2012) ...................................................................................11

*Scott v. Harris,*
    550 U.S. 372 (2007).........................................................................................................2

*Sgouros v. TransUnion Corp.,*
    817 F.3d 1029 (7th Cir. 2016) ....................................................................................6

*Uptown Drug Co. v. CVS Caremark Corp.,*
    962 F. Supp. 2d 1172 (N.D. Cal. 2013) ..............................................................7, 11

*Zenith Ins. Co. v. Old Republic Ins. Co.,*
    392 F. Supp. 3d 1108 (N.D. Cal. 2019) ......................................................................8

**State Cases**

*Alameda County v. Deputy Sheriff's Association v. Alameda County Employees*
    *Retirement Associatio,*
    9 Cal. 5th 1032 (2020) ................................................................................................13

*Davis v. Nissan N.A., Inc.,*
    100 Cal. App. 5th 825 (2024) ....................................................................................12

*Goldman v. KPMG LLP,*
    173 Cal. App. 4th 209 (2009) ..............................................................................12, 14

*Gonzalez v. Nowhere Beverly Hills LLC,*
    107 Cal. App. 5th 111 (2024) ........................................................................7, 11, 12

*Gorlach v. Sports Club Company,*
    209 Cal. App. 4th 1497 (2012) ..................................................................................13

*Metalclad Corp v. Ventana Env. Org. Pship.,*
    109 Cal. App. 4th 1705 (2003) ..................................................................................12

*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.,*
    186 Cal. App. 4th 696 (2010) ....................................................................................12

*Shaw v. Regents of Univ. of Cal.,*
    58 Cal. App. 4th 44 (1997) ...........................................................................................8

*Suh v. Super. Ct.,*
    181 Cal. App. 4th 1504 (2010) ..................................................................................14

*Victrola89, LLC v. Jaman Props. 8 LLC,*
    46 Cal. App. 5th 337 (2020) ......................................................................................11

DEFENDANT TWILIO INC.'S, REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-04914-AMO

2844390

# I. INTRODUCTION

Twilio has presented evidence that, on no fewer than three separate occasions, Plaintiff was presented with and agreed to Calm's Terms of Service, which contain an arbitration clause and a class action waiver. Plaintiff presents no evidence to the contrary. And he makes no attempt to distinguish any of the cases cited by Twilio in which courts in this District have applied equitable estoppel to compel plaintiffs to arbitration in similar circumstances. Instead, Plaintiff tries to avoid his agreement to individually arbitrate by asking the Court to both ignore the undisputed evidence of his consent and to depart from binding Ninth Circuit and California Court of Appeal precedent. Plaintiff's arguments are legally and factually baseless. For these reasons, and as detailed below and in Twilio's opening brief, the Court should compel Plaintiff's claims to individual arbitration and stay this case.

# II. ARGUMENT

## A. The undisputed evidence establishes that Plaintiff assented to the Calm Terms, which include an arbitration provision.

Twilio presented evidence—a sworn declaration from Calm's Chief Product Officer, with supporting documents—that, when Plaintiff downloaded and used the Calm App within the last year, Complaint ("Compl.") ¶ 30, Dkt. 1, he was presented with and required to agree to Calm's Terms, which contain an arbitration clause, no fewer than three separate times.

- When he first opened the Calm App, Calm prompted Plaintiff to start the process of creating an account by clicking "Continue with Email," "Continue with Facebook," or "Continue with Google. Directly beneath those buttons, Calm informed Plaintiff that, "By tapping Continue or logging into an existing Calm account, you agree to our <u>Terms</u> and acknowledge that you have read our <u>Privacy Policy</u>." Declaration of Jon Tien in Support of Motion to Compel Arbitration ("Tien Decl.") ¶¶ 8–9, Dkt. 20-1.

- Next, Plaintiff was directed to another page, which prompted him to enter his first name, email address and password, or to "Continue with Facebook" or "Continue with Google." Under those fields, Calm informed Plaintiff again that "By tapping Continue or logging into an existing Calm account you agree to our <u>Terms</u> and

1

acknowledge that you have read our <u>Privacy Policy</u>." *Id.* ¶¶ 10-11.

- Then, Plaintiff was prompted in a third page to log into the Calm App by either entering his email and password or by clicking "Sign in with Facebook," "Sign in with Google," or "Sign in with Apple." There, again, he was informed that "By tapping Sign in or logging into an existing Calm account, you agree to our <u>Terms</u> and acknowledge that you have read our <u>Privacy Policy</u>." *Id.* ¶¶ 12-13.

- Plaintiff would be shown this same page again every time he logged in. *Id.*

In response, Plaintiff submits no evidence—not even a self-serving declaration—to rebut Twilio's evidence that he entered into this arbitration agreement with Calm. Plaintiff does not deny that the pages presented in Calm's declaration are what he saw when he downloaded the Calm App, created his Calm account, and every time he logged into the Calm App. Instead, Plaintiff argues he should be allowed to avoid the arbitration agreement because these pages were "too inconspicuous and ambiguous." Plaintiff's Response to Motion to Compel Arbitration ("Opp.") at 1, Dkt. 30. Specifically, he complains that a user may not have seen the language about agreeing to the Calm Terms on any of the pages because it was below the buttons, or that a user may have been confused because the buttons say "Continue" rather than "Agree to Terms" or words to that effect. *Id.* at 6-8. Plaintiff's argument fails for three reasons.

***First***, and most importantly, Plaintiff's argument is pure speculation, unsupported by any evidence. Tellingly, Plaintiff did not present a declaration stating that ***he*** failed to see the link to the Calm Terms on every page and every time he signed up, or that ***he*** was somehow confused because the buttons said "Continue"—or even that he believed he had not entered into the agreement for any other reason. Rather, he relies solely on attorney argument, musing about what a hypothetical user may or may not have seen or thought. Thus, Twilio's evidence is unrebutted. On a motion to compel arbitration—which is decided on a summary-judgment standard, not a motion-to-dismiss standard, *see Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021)—Plaintiff's failure to oppose with ***evidence*** is fatal to his opposition. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

***Second***, Plaintiff's argument that the notice to the Calm Terms was insufficient because it

was too far below the "Continue" buttons and difficult to see has no basis in fact or law. In California, "a contract can be enforced based on inquiry notice if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Perry-Hudson*, No. 24-cv-03741-VC, 2024 WL 4933332, at *1 (N.D. Cal 2024) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022)). "[R]easonably conspicuous notice requires looking at the context of the overall design and content of the website." *Id.*

Here, examining the three consent flow pages makes it clear that they meet this standard.



Tien Decl. ¶¶ 9, 11, 13. In each, the notice that clicking the button means agreeing to the Calm Terms is immediately below the buttons, in a font that is high-contrast—white on a dark blue background—and the same size as other text. The word "Terms" is underlined, to note a hyperlink. The page is uncluttered and does not require the user to scroll at all. These actual pages are a far cry from Plaintiff's description of them. *See* Opp. at 6-7 (complaining about a user

3

needing to "scan all the way down to the fine print," "at the very bottom of the screen," to "gray font smaller than the rest of the text" in "screens cluttered with text fields").

This "sign-in wrap" agreement is well within the norms of what courts in this District have found to be reasonably conspicuous notice. For example, in *Perry-Hudson*, the court recently considered—and granted Twilio's motion to compel arbitration based on a similar page. 2024 WL 4933332, at *3. There, the plaintiff saw this page when he completed the questionnaire on the website for a company that used Twilio's product:

Kanig Reply Declaration in Support of Motion to Compel Arbitration, Ex. F, Dkt. No. 28-2, *Perry-Hudson*, 2024 WL4933332. The court found that notice was sufficient because the hyperlink to the terms was "conspicuously displayed directly . . . beneath the action button" and the design of the sign-in screen "lack[ed] clutter." *Id.* at *4. Additionally, the black font contrasted against the white background, ensuring the hyperlink was visible. *Id.*

Other courts have reached similar conclusions. *See, e.g.*, *Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (hyperlinks were deemed conspicuous when presented in an uncluttered interface with a muted and uniform color scheme); *Dohrmann v. Intuit, Inc.*, 823 Fed. App'x 482, 484 (9th Cir. 2020) (finding contract

2844390

formed where terms-of-use hyperlink was "the only text on the webpage in italics" and "located directly below the sign-in button," and overall webpage design was "relatively uncluttered"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) (finding contract formed where terms-of-use hyperlink appeared "directly below" the "sign-up button," its text "contrast[ed] clearly with the background" and was "plainly readable," and overall webpage design was "uncluttered").

Plaintiff does not mention *Perry-Hudson* or any of these other cases. Instead, Plaintiff relies on *Berman v. Freedom Financial Network*. Opp. at 7. But in *Berman*, the textual notice containing the "Terms & Conditions" hyperlink was "in a tiny gray font ... so small that it [was] barely legible to the naked eye," surrounded by "comparatively larger" text that "naturally direct[ed] the user's attention everywhere else," and "sandwiched" between a "large green button with text that stated, in easy-to-read white letters, 'Continue [],' " and two other large buttons that allowed the user to "select [a] gender." 30 F.4th at 854, 856-57. In addition, *Berman's* "textual notice [was] further deemphasized by the overall design of the webpage, in which other visual elements," including a bright blue border and "several fields" requiring the user to input information "dr[ew] the user's attention away from the barely readable critical text." *See id.* at 854, 857. The court in *Perry-Hudson* distinguished *Berman* on this basis. *Perry-Hudson*, 2024 WL 4933332, at *1. This Court should similarly find that *Berman* has no application here.

**Third**, Plaintiff's argument that the consent flow is insufficient if the button the user clicks says "Continue" rather than something explicitly referring to an agreement is legally baseless. In *Perry-Hudson*, for example, the button said "Continue," just as it does here. *Id.* The same is true in numerous other decisions from the Ninth Circuit and courts in this District. *See, e.g.*, *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 515-16 (9th Cir. 2023) ("Sign In" and "Place Order"); *Lee v. Ticketmaster*, 817 Fed. Appx. 393, 394-95 (9th Cir. 2020) ("Sign In"); *Pizarro*, 2022 WL 3357838, at *3 ("See My Rates"); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 586 (N.D. Cal. 2020) ("Sign Up").

The cases Plaintiff cites do not help him. In *Maree v. Deutsche Lufthansa AG*, No. SACV 20-885-MWF (MRWx), 2021 WL 267853, at *3-4 (C.D. Cal. Jan. 26, 2021), the court found that

a website did not put a user on inquiry notice of its terms and conditions, not because the action button was labeled "Complete Booking," but because the "Terms of Use hyperlink appear[ed] on a cluttered page nestled between several lines of extraneous, colored and bolded text." *Id.* at *4.

*Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017), did not involve an action button that purported to form a contract. Rather, *Applebaum* looked at whether users were on notice that checking a box manifested assent to an application's terms and conditions. Again, the court found that the *overall design* of the page undermined inquiry notice, this time because the "Terms of Service" hyperlink was difficult to see in a small, low-contrast light blue font on a white background, the hyperlink was not underlined or highlighted, and there was no indication of the significance of the box. *Id.* at 468-9.

Similarly, in *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035–36 (7th Cir. 2016), the court held that it was misleading for a webpage to state directly above a button labeled "I Accept & Continue to Step 3," that by clicking the button, users "are providing 'written instructions' to [the webpage] authorizing [it] to obtain information from your personal credit profile," when in fact, clicking the button also assented to the company's terms. Not only did the page lack any notice that clicking the button constituted assent, but it informed users that clicking the button meant something entirely different. Likewise, in *Lee v. Intelius Inc.*, 737 F.3d 1254 (9th Cir. 2013), the button at issue was labeled "YES And show my report," but there was no language above or below the button even mentioning the "Terms and Conditions" or "Privacy Policy," let alone indicating that clicking manifested assent to them. *Id.* at 1261–62.

In sum, the undisputed evidence and case law demonstrate that Plaintiff consented to Calm's Terms, including its agreement to arbitrate on an individual basis.

**B.      Both of the alternative circumstances for equitable estoppel apply.**

"There are two circumstances in which a party can be equitably estopped from avoiding arbitration with a nonsignatory to the arbitration agreement: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another

signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Perry-Hudson*, 2024 WL 4933332, at \*2; *accord, e.g.*, *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024); *Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 118–19 (2024). Plaintiff's opposition makes clear that both of these alternative circumstances apply here.

### 1. Plaintiff does not dispute that his claims are intertwined with the Privacy Policy, and there is no basis to separate it from the Terms.

Plaintiff's claims are intimately intertwined with his agreement with the Calm Privacy Policy. Plaintiff does not dispute that, in order to decide his claims against Twilio, the Court must interpret the disclosures in Calm's Privacy Policy. Nor could Plaintiff do so, because his claims depend on allegations that he did not know about or consent to Calm sharing his information with third-party vendors like Twilio, and those allegations cannot be evaluated without looking at Calm's Privacy Policy, which sets out how Calm may collect and share information. (If there is any doubt, the Court can look to Plaintiff's opposition to Twilio's motion to dismiss, which argues at length about the proper interpretation of Calm's Privacy Policy and whether various terms therein do or do not disclose the data collection practices at issue. Plaintiff's Opposition to Motion to Dismiss ("MTD Opp.") at 5–7, Dkt. 31.

Plaintiff also makes no effort to address the cases analyzed in Twilio's opening brief in which courts in this District found intertwinement exists under similar circumstances. *Hunt v. Meta Platforms, Inc.*, 735 F. Supp. 3d 1133, 1136–37 (N.D. Cal. 2024); *Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1184 (N.D. Cal. 2013); *see also* Mot. at 11–13.

Plaintiff also ignores *Perry-Hudson*, which is directly on point. *See* 2024 WL 4933332, at \*2. There, the court found that the plaintiff's "claims [were] rooted in whether Twilio's use of his personal information was lawful, and those claims turn[ed] on whether [the plaintiff] consented to disclosure of his personal information to Twilio." *Id.* The third-party website that allegedly used Twilio's technology disclosed in its privacy policy that it provided information to third-party vendors. *Id.* Thus, the court concluded that "even though [the plaintiff brought] suit only against Twilio, his claims [were] intimately founded in and intertwined with his agreement with [the third-party website] because consent is an element to each claim, and Twilio asserts that [the

plaintiff] consented to having [the website] share his data to Twilio through his agreement to the Terms & Conditions." *Id.*

Instead, Plaintiff argues that he can avoid equitable estoppel because the Privacy Policy is a different document than the Calm Terms, which contain the arbitration clause. Opp. at 18. This argument fails because the Calm Privacy Policy is incorporated into the Calm Terms by reference. Under California law, a document is incorporated by reference where (1) "the incorporation is clear and unequivocal," (2) "the reference [is] called to the attention of the other party," and (3) "the terms of the incorporated writing [are] known or easily available to the contracting parties." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019). A "contract need not recite that it 'incorporates' another document as long as it 'guide[s] the reader to the incorporated document.'" *Zenith Ins. Co. v. Old Republic Ins. Co.*, 392 F. Supp. 3d 1108, 1115 (N.D. Cal. 2019) (citing *Shaw*, 58 Cal. App. 4th at 54). When these conditions are satisfied, the documents are "read together as a single document." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1269 (9th Cir. 2017).

Here, the Calm Terms clearly guide the reader to the Privacy Policy. In fact, ***the very first line*** a user sees when he opens the Calm Terms is the following: "Please refer to the Privacy Policy [hyperlink] for more information regarding how we collect, use, and disclose information about you." Tien Decl. ¶ 15 & Ex. B.[1] Moreover, the Calm Terms and Privacy Policy are referred to together in each of the three consent pages. Tien Decl. ¶ 9 ("By tapping Continue . . . you agree to our Terms and acknowledge that you have read our Privacy Policy . . . ."); *id.* ¶ 11 (same); *id.* ¶ 13 (same). And the arbitration clause itself explicitly refers to and includes "***any claims related to privacy.***" Tien Decl. Ex. B, ¶ 16.

Plaintiff's only basis for arguing that the Privacy Policy is not incorporated by reference is that the reference to the Privacy Policy comes above the heading that says "Terms of Service,"

---

[1] Plaintiff objects that Exhibit B is not searchable and that a portion of text in the bottom left corner is obscured by a watermark. *See* Opp. at 10 n.2. However, Twilio filed Exhibit B as it appears when accessed and printed from the Calm website, and the obscured text is immaterial to the present motion. Further, Twilio has provided links to the Calm Terms and Privacy Policy, both of which are available online in a text-searchable format without the watermark. *See* Decl. of Natalie Heim, Dkt. 23, at ¶¶ 4-6, 23-24. If the Court requests, Twilio can file new copies of these documents without the watermark.

Opp. at 18. But Plaintiff does not—and cannot—dispute that this very same document directs him to the Privacy Policy, including by providing him with a hyperlink to it in its very first sentence. This is all that the case law requires (and Plaintiff cites no authority to the contrary). And nothing in the document tells him he may ignore these privacy terms – rather, it directs him to "[p]lease refer" to the Privacy Policy "for information regarding how we collect, use, and disclose information about you." *Id.* Again, Plaintiff does not present a declaration stating that **he** (or anyone else) actually misunderstood this. Nor does Plaintiff cite any cases supporting his contention that the incorporation-by-reference doctrine would not apply in light of this language—or any cases refusing to apply equitable estoppel on that basis. Indeed, he ignores that, in the *Perry-Hudson* matter, the Privacy Policy was also a separate document than the Terms that contained the arbitration agreement. *Perry-Hudson*, 2024 WL 4933332, at *2.

Plaintiff further argues that there is no intertwinement because he "has obviously not sought to hold Twilio liable for any 'duty' imposed by Calm's Terms" and his Complaint "does not cite or quote the Calm Terms." Opp. at 17. This argument depends on the same false distinction between the Privacy Policy and the Terms discussed above, and thus fails for the same reason. Moreover, the fact that Plaintiff avoided mentioning the Calm Terms or Privacy Policy in his Complaint is irrelevant; Plaintiff cannot avoid equitable estoppel through artful pleading. *Perry-Hudson*, 2024 WL 4933332, at *2 ("And while [plaintiff] does not mention the Privacy Policy or the Terms & Conditions in his Complaint, parties may not plead around equitable estoppel."); *accord Ma v. Golden State Renaissance Ventures, LLC*, No. 3:21-cv-00856-WHO, 2021 WL 2190912, at *9 (N.D. Cal. May 31, 2021). The central issue remains whether Plaintiff's claims are "fully viable without reference to" the Calm Terms and Privacy Policy—and they are not. *Perry Hudson*, 2024 WL 4933332, at *2; *see also Franklin v. Cmty. Reg'l Ctr.*, 998 F.3d 867, 875–76 (9th Cir. 2021) (intertwinement exists where "the substance of [the plaintiff's] claims is rooted in" and "cannot be answered without reference to [their contract]"; *see also Herrera*, 104 F.4th at 710 (sufficient intertwinement exists where allegations "are in *any way* founded in or bound up with the terms or obligations in the operating agreement").

Plaintiff's argument that the Calm Terms are only "relevant to Twilio's affirmative

2844390

defenses" fails for the same reason. Moreover, courts have repeatedly affirmed that for privacy claims, lack of consent is not merely an affirmative defense. *E.g.*, *Perry-Hudson*, 2024 WL 4933332, at *2 ("Each claim requires [plaintiff] to plead (and ultimately prove) that he did not consent to Twilio's interception . . . . [C]onsent is an element to each claim . . . ."); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-36 (N.D. Cal. 2015) ("As an initial matter, the Court disagrees with Plaintiff's assertion that lack of consent is not an element of his [CIPA] claim."); *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019) ("[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record."); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1356 n.7 (S.D. Cal. 2024) (noting lack of consent must be pled for a federal wiretap claim); *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024) (explaining that what makes access unlawful under CDAFA is that it is done "without permission").

### 2. Plaintiff cannot erase the allegations that establish joint misconduct connected with the agreement.

Plaintiff has alleged substantially interdependent and concerted joint conduct by Calm and Twilio that is founded in or intimately connected with the obligations of the Calm Privacy Policy. Plaintiff alleges that "[t]he developers of the Calm mobile app embedded the Segment SDK into its mobile app allowing [Twilio] to intercept communications between Plaintiff and Calm." Compl. ¶ 31. He further alleges that "[n]either [Twilio] nor Calm informed Plaintiff, or otherwise disclosed to Plaintiff, that the Segment SDK was embedded in the Calm app." *Id.* ¶ 33. These allegations establish a theory of joint misconduct that is intertwined with the underlying agreement, satisfying the second, alternative circumstance for equitable estoppel. Again, Plaintiff ignores the cases cited by Twilio in which courts reached that conclusion based on similar allegations. *See Salas v. Universal Credit Servs. LLC*, No.: 17-CV-2352 JLS (BLM), 2019 WL 1242448, at *4 (S.D. Cal. Mar. 18, 2019); *Coinmint, LLC v. DX Corr. Design, Inc.*, 2023 WL 9595893, at *3 (N.D. Cal. Apr. 24, 2023); *Hunt*, 735 F. Supp. 3d at 1136–57; *see also* Mot. at 14–15. Again, Plaintiff also ignores *Perry-Hudson*, which did the same. 2024 WL 4933332, at *3.

Instead, Plaintiff attempts to run away from the allegations in his own Complaint. Opp. at 19. He says that just because he alleged that "Calm's use of the SDK 'allow[ed] Defendant to

intercept communications between Plaintiff and Calm,'" that "does not imply a *conspiracy* between Calm and Twilio." *Id.* (emphasis in original). But the law does not require Plaintiff to allege a conspiracy—just concerted misconduct. *E.g.*, *Sanders v. Swift Transp. Co. of Ariz., LLC*, 843 F. Supp. 2d 1033, 1038 (2012). Plaintiff also tries to recast his Complaint as being just about alleged misconduct by Twilio, pointing to allegations about Twilio's "process for identity resolution" (Compl. ¶¶ 26-27) and how its platform "allows sharing of data" (*id.* ¶ 29). But equitable estoppel does not require that ***all*** the alleged misconduct be joint. *See Salas*, 2019 WL 1242448, at *4 (equitable estoppel applies "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement") (quoting *Kramer*, 705 F.3d at 1128–29). And these allegations—even if they were true—do not erase the allegations of joint misconduct. Compl. ¶¶ 31, 33. At bottom, Plaintiff has alleged a theory that Calm and Twilio worked together to secretly collect and use his information, *see id.*, and Plaintiff cannot erase these allegations now to avoid arbitration.

### C. The Court should not—and may not—adopt a new standard for equitable estoppel contrary to binding precedent from the Ninth Circuit and California's Court of Appeal.

Plaintiff's Opposition asks this Court to break from settled law. For nearly 20 years, the Ninth Circuit, district courts within it, and the California Court of Appeal have consistently and repeatedly applied the test articulated above and in Twilio's opening brief to assess whether a nonsignatory can enforce an arbitration agreement based on equitable estoppel. *E.g.*, *Herrera*, 104 F.4th at 707; *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d at 870; *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013); *Hunt*, 735 F. Supp. 3d at 1136–57; *Coinmint,*, 2023 WL 9595893, at *3; *Carter v. Spiegel*, No. 21-cv-03990-TSH, 2022 WL 126303, at *6 (N.D. Cal. Jan. 13 2022); *Airtourist Holdings LLC v. HNA Grp*, No. C 17-04989 JSW, 2018 WL 3069444, at *3 (N.D. Cal. Mar. 27, 2018); *Uptown Drug Co.*, 962 F. Supp. 2d at 1184; *Ma*, 2021 WL 2190912, at *9; *Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 118–19 (2024); *Victrola89, LLC v. Jaman*

*Props. 8 LLC*, 46 Cal. App. 5th 337, 353 (2020); *Garcia*, 11 Cal. App. 5th at 786; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 706 (2010) *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009); *Metalclad Corp v. Ventana Env. Org. Pship.*, 109 Cal. App. 4th 1705, 1713 (2003). The court in *Perry-Hudson* applied this same test just recently. 2024 WL 4933332, at *2.

Plaintiff believes all these cases were wrongly decided, and asks this Court to use a different standard, which would also require Twilio to establish that it detrimentally relied on Plaintiff's conduct. Opp. at 12-17. The Court cannot do that because it is bound by the Ninth Circuit's interpretation of California law. Only in cases of "clear irreconcilability" can district courts "consider themselves bound by [an] intervening higher authority and reject [a] prior opinion of [the Ninth Circuit] as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc); *see also Prescott v. Contra Costa Cty.*, No. 24-cv-01660-HSG, 2024 WL 3090489, at *4 (N.D. Cal. June 21, 2024) ("[T]his Court is not the Ninth Circuit, and it simply is not free to cast aside that court's binding decisions unless the strict requirements reflected in *Miller v. Gammie* and related authority are met"). This Court is also bound by the rulings from the California Court of Appeal on issues of substantive California law absent "convincing evidence that the California Supreme Court would decide differently." *Franklin*, 998 F.3d at 871.

Here, Plaintiff offers nothing that would meet these stringent requirements for allowing the Court to depart from well settled Ninth Circuit or California Court of Appeal precedent. His only authority is dicta in a footnote in a Court of Appeal decision, *Davis v. Nissan N.A., Inc.*, 100 Cal. App. 5th 825 (2024). There, the court mused in a footnote that, unlike California courts, certain other states have applied the "four traditional elements for equitable estoppel" in the arbitration context. *Id.* at 835 n.3. But the court did not reach that issue because it had not been briefed. *Id.* Moreover, the court went on to apply the same test Twilio articulates here and ultimately held that equitable estoppel did not apply because the plaintiff's breach of warranty claims against a vehicle manufacturer were not intertwined with the dealership's sales contract that contained an arbitration provision. *Id.* at 842–43. In any event, since *Davis*, in *Gonzalez v.*

*Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 118–19 (2024), the Court of Appeal again applied the standard Twilio articulates.

Even if the Court were free to depart from binding precedent, it should not do so. Plaintiff does not point to any case in which any court has applied his test to determine whether a nonsignatory can enforce an arbitration agreement through equitable estoppel. Instead, Plaintiff cites two cases applying equitable estoppel in different contexts. First, *Alameda County v. Deputy Sheriff's Association v. Alameda County Employees Retirement Association* applies equitable estoppel principles to determine whether a public entity should be bound by terms that varied between a settlement agreement and a statutory provision establishing the calculation of pension benefits. 9 Cal. 5th 1032 (2020). Not only did this have nothing to do with a nonsignatory seeking to enforce the terms of an agreement through equitable estoppel, but the Court made clear that equitable estoppel is applied "sparingly" against a government body. *Id.* at 1072. Second, while *Gorlach v. Sports Club Company* happens to involve an arbitration agreement, the case evaluates equitable estoppel in the context of first-party contract formation; the question was whether a company should be permitted to compel arbitration against a former employee who led the employer to believe she had signed a contract when she had not. 209 Cal. App. 4th 1497 (2012). The case has nothing to do with a third party seeking to enforce an agreement through equitable estoppel.

Thus, Plaintiff would have the Court be the first to announce this standard, contrary to binding precedent. Moreover, Plaintiff's standard makes no sense in the context of a third party trying to prevent a signatory from avoiding an arbitration clause, because a third party, by definition, would not be present to witness or be able to rely upon what the signatories did.

### D. The third-party beneficiary clause is irrelevant to the application of equitable estoppel.

Plaintiff argues that he should not be bound by the arbitration agreement because Calm's Terms also include a clause stating that they "are not intended to confer third-party beneficiary rights." Opp. at 10 (quoting Tien Decl., Ex. B at 17). But Twilio is not asserting that it is a third-party beneficiary of the Calm Terms, nor does it rely on the third-party beneficiary doctrine to enforce the arbitration provision. Rather, Twilio seeks to bar Plaintiff from avoiding arbitration

2844390

based on equitable estoppel. These are two separate legal doctrines. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("[S]tate law [may] allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel"); *Suh v. Super. Ct.*, 181 Cal. App. 4th 1504, 1515 (2010) (same, under California law). They apply under different circumstances, and they require the third-party to establish different things. *Compare Perry-Hudson*, 2024 WL 4933332, at *2 (equitable estoppel standard), *and Harris v. Pac. Gas & Elec. Co.*, 2022 WL 16637987, at *13 (N.D. Cal. Nov. 22, 2022) (a nonsignatory is a third-party beneficiary of an agreement where the contract was "made expressly for the benefit" of the nonsignatory).

Plaintiff does not cite to any case refusing to apply equitable estoppel based on the existence of a no-beneficiary clause—or to any case law at all to support his argument. He also ignores that this same argument was made in the *Perry-Hudson* case, but the court in that case compelled arbitration nonetheless. *See* Plaintiff's Opp. to Mot. to Compel Arbitration, Dkt. No. 24, *Perry-Hudson*, 2024 WL 4933332 at *5–6.

Plaintiff's emphasis on language stating that the arbitration provision binds "you and Calm" is similarly unavailing. The equitable estoppel doctrine does not hinge on the explicit inclusion of a nonsignatory in the arbitration agreement. Indeed, the whole point of the equitable estoppel doctrine is to address situations where the party seeking to compel arbitration is ***not*** part of the agreement. Again, Plaintiff points to no case law supporting the proposition that equitable estoppel is inapplicable when the underlying agreement mentions only the signatories. This argument was also made in the *Perry-Hudson* case, and the Court compelled arbitration nonetheless. *Perry-Hudson*, 2024 WL 4933332, at *3.

At bottom, equitable estoppel is about preventing unfairness. *Goldman*, 173 Cal. App. 4th at 220 ("The linchpin for equitable estoppel is equity—fairness"). What we have here is an unfair situation in which Plaintiff is trying to get around an arbitration agreement by suing Calm's vendor instead of Calm. *See Perry-Hudson*, 2024 WL 4933332, at *3 ("Permitting Twilio to equitably enforce the arbitration agreement in this case would be fairer than permitting [plaintiff]

DEFENDANT TWILIO INC.'S, REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. 3:24-cv-04914-AMO

2844390

to skirt its agreement with [the third-party website] by suing only Twilio based on allegations that center on [the third party's] disclosure of [plaintiff's] information to Twilio"). The inclusion of the "no third-party beneficiary" clause or the "You and Calm" language does not change that, and allowing Plaintiff to get away with avoiding arbitration based on these sorts of technical arguments is inconsistent with the linchpin of the equitable estoppel doctrine. *See Harries v. Stark*, No. 3:14–CV–2684–L, 2015 WL 4545071, at *11 (N.D. Tex. July 28, 2015); *see also Franklin*, 998 F.3d at 875 ("Equity always looks to the substance, and not to the form").

## III.    CONCLUSION

This Court should compel Plaintiff's claims to individual arbitration and stay this case.


Dated:  January 31, 2025                                    KEKER, VAN NEST & PETERS LLP


                                                By:   */s/ Benjamin Berkowitz*
                                                      BENJAMIN BERKOWITZ
                                                      MATAN SHACHAM
                                                      JACQUELINE CONCILLA
                                                      NATALIE R. HEIM

                                                      Attorneys for Defendant
                                                      TWILIO INC., a Delaware corporation

2844390