KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
JACQUELINE CONCILLA - # 335733
jconcilla@keker.com
NATALIE R. HEIM - # 340549
nheim@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
TWILIO INC., a Delaware corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NOAH BENDER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWILIO INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:24-cv-04914-AMO<br><br>**DEFENDANT TWILIO INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:        June 26, 2025<br>Time:        2:00 p.m.<br>Dept.:        10, 19th Floor<br>Judge:       Hon. Araceli Martínez-Olguín<br><br>Date Filed: August 8, 2024<br><br>Trial Date:  None Set |

2861445

# **TABLE OF CONTENTS**

**Page(s)**

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................. 1

    A.    Plaintiff cannot plead lack of consent for any of his claims because Calm's Privacy Policy discloses the relevant data practices................................. 1

    B.    Plaintiff cannot plead criminal intent for any of his claims because Twilio required Calm to disclose its data practices. ........................................... 4

    C.    Plaintiff's CIPA claim fails under the party-exception rule and other defects. ........................................................................................................ 7

        1.    Plaintiff's speculative mischaracterization of how Twilio's product works is insufficient to overcome the "party-exception" rule................... 7

        2.    Plaintiff's interception claim fails as each element is insufficiently pled................................................................................................... 8

        3.    Plaintiff's use claim is derivative and fails for the same reasons. ........... 10

    D.    Plaintiff's Federal Wiretap Act claim fails because Calm consented. ................. 11

    E.    Plaintiff's CDAFA claim fails because he does not adequately plead the requisite acts, access, or damages. ...................................................... 12

III. CONCLUSION............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ................................................................................................. 6

*Augustine v. Great Wolf Resorts, Inc.,*
 23-00281-DMS-DTF, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ................................. 10

*Austin B. v. Escondido Union Sch. Dist.,*
 149 Cal. App. 4th 860 (2007) ..................................................................................... 6

*B.K. v. Desert Care Network,*
 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ................................................................ 5

*Brown v. Google LLC,*
 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................... *passim*

*Brown v. Google LLC,*
 685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................................................... 13, 14, 15

*Bui-Ford v. Tesla, Inc.,*
 23-02321, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ........................................ 12, 14

*Calhoun v. Google,*
 113 F.4th 1141 (9th Cir. 2024) .................................................................................. 3

*Cody v. Ring,*
 23-00562-AMO, 2025 WL 240763 (N.D. Cal. Jan. 16, 2025) ................................. 8, 9

*Cody v. Ring LLC,*
 718 F. Supp. 3d 993 (2024) ...................................................................................... 8

*County of Yolo v. Los Rios Community College Dist.,*
 5 Cal. App. 4th 1242 (1992) ................................................................................... 15

*Doe I v. Google LLC,*
 23-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ................................. *passim*

*Doe v. Davita Inc.,*
 23-CV-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ...................... 4

*Doe v. FullStory, Inc.,*
 712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..................................................................... 3

*Dyna–Med, Inc. v. Fair Emp't & Hous. Comm'n,*
 43 Cal.3d 1379 (1987) ............................................................................................ 15

2861445

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014).........................................................................................6

*Esparza v. UAG Escondido A1 Inc.*,
  23-0102 DMS, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .........................9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ...............................................3, 15

*In re Finjan Holdings, Inc.*,
  58 F.4th 1048 (9th Cir. 2023) .........................................................................2

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) ....................................................................................15

*Garcia v. Ener. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...........................................................2

*Gladstone v. Amazon Web. Servs., Inc.*,
  23-00491, 2024 WL 3276490 (W.D. Wash. July 2, 2024) ..........................5

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........................................................13

*In re Google Inc. Gmail Litig.*,
  13-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .................12

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................................................14

*Hammerling v. Google, LLC*,
  22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ..................................2

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) .............................................6, 13, 15

*In re iPhone Application Litig.*,
  11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......14

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) .....................................................11, 12

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002).............................................................................9

*Licea v. Cinmar, LLC*,
  659 F. Supp. 3d 1096 (C.D. Cal. 2023) .........................................................2

*Lloyd v. Facebook, Inc.*,
  23-15318, 2024 WL 3325389 (9th Cir. July 8, 2024) ..................................2

iii

2861445

*Love v. Ladder Financial*,
   23-04234-VC, 2024 WL 2104497 (N.D. Cal. 2024) ............................................................ 10

*Maghen v. Quicken Loans Inc.*,
   94 F. Supp. 3d 1141 (C.D. Cal. 2015), *aff'd in relevant part*, 680 F. App'x 554
   (9th Cir. 2017) ................................................................................................................... 3

*McGowan v. Weinstein*,
   505 F. Supp. 3d 1000 (C.D. Cal. 2020) ............................................................................ 12

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) .........................................................................11, 12

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 954 (N.D. Cal. 2014) .............................................................................. 14

*Rodriguez v. Google LLC*,
   20-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021).......................................... 3, 14

*Roe v. Amgen Inc.*,
   07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)....................................12, 13

*Rojas v. HSBC Card Servs. Inc.*,
   93 Cal. App. 5th 860 (2023) ............................................................................................... 3

*Silver v. Stripe, Inc.*,
   20-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................................... 2, 3

*Smith v. Facebook*,
   745 F. App'x 8 (9th Cir. 2018)............................................................................................ 2

*Sussman v. Am. Broad. Cos., Inc.*,
   186 F.3d 1200 (9th Cir. 1999)........................................................................................... 12

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015)........................................................................................5, 13, 14

*Valenzuela v. Keurig Green Mountain, Inc.*,
   674 F. Supp. 3d 751 (N.D. Cal. 2023) ............................................................................ 8, 10

*Vartanian v. VW Credit, Inc.*,
   11-10776-SVW-RZ, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ................................... 7

*West v. Ronquillo-Morgan*,
   526 F. Supp. 3d 737 (C.D. Cal. 2023) .............................................................................. 14

*White v. FIA Card Servs., N.A.*,
   12-2034-AJB, 2013 WL 756292 (S.D. Cal. Feb. 26, 2013) ................................................ 3

*Williams v. DDR Media, LLC*,
   22-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ............................................... 7

iv

2861445

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................ 10

**Statutes**

Cal. Civ. Code § 1798 .......................................................................................... 4

Cal. Pen. Code § 502 ........................................................... 12, 13, 14, 15

DEFENDANT TWILIO INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:24-cv-04914-AMO

## I. INTRODUCTION

Plaintiff alleges that non-party Calm improperly configured software provided to it by Twilio, Calm's service provider, to collect his personal information. In Opposition to Twilio's Motion to Dismiss ("MTD"), Plaintiff asks this Court to ignore Calm's Privacy Policy, which plainly discloses that Calm employs service providers like Twilio to collect this information. Plaintiff also asks this Court to ignore Twilio's agreement with Calm, which expressly required Calm to obtain such end-user consent. But Plaintiff cannot simply ignore and imagine away these inconvenient facts, and his Complaint is devoid of any well-pleaded allegations supporting his claims. Plaintiff's Opposition fails to rebut Twilio's motion or its authorities. For these reasons, and as further detailed below and in Twilio's MTD, the Court should dismiss Plaintiff's Complaint.

## II. ARGUMENT

### A. Plaintiff cannot plead lack of consent for any of his claims because Calm's Privacy Policy discloses the relevant data practices.

The gravamen of the Complaint is that the Segment SDK, as configured by Calm, allows Twilio to collect data about Plaintiff's activities within the Calm App, such as his page views. Compl. ¶ 31. But Calm's Privacy Policy discloses exactly that practice. For example, it states:

> We [Calm] allow others to provide analytics services and serve advertisements on our behalf across the web and in mobile applications. These entities use cookies, web beacons, device identifiers and other technologies to collect information about your use of the Services . . . , including your pages viewed, time spent on pages or in apps, links clicked, and conversion information. This information may be used by Calm and others to, among other things, analyze and track data, . . . deliver advertising and content targeted to your interests on our Services and other websites and online services, and better understand your online activity.

Heim Decl., Ex. E at 4, Dkt. 23;[1] *see also id.* at 3-4 ("We share information about you . . . [w]ith companies and contractors that perform services for us, including analytics providers, advertising partners, and other service providers."); *id.* at 1-2 (detailing the categories of information that Calm collects from users); MTD at 7-8, Dkt. 21 (summarizing relevant disclosures).

---

[1] Throughout the MTD, Twilio referred to Exhibit C in discussing Calm's Privacy Policy. Because Plaintiff now suggests the operative version is Exhibit E, Twilio refers to that Exhibit in this Reply. Regardless, the versions do not contain material differences.

2861445

Plaintiff does ***not*** dispute that the Court may take judicial notice of Calm's Privacy Policy. RJN Opp. at 3 (not opposing Exhibit E, the operative Privacy Policy until October 2023). And Plaintiff does not address ***any*** of the cases cited by Twilio in which the Ninth Circuit and courts in this District have found that privacy claims fail at the pleading stage because terms of service or privacy policies disclose the data practice at issue. *Smith v. Facebook*, 745 F. App'x 8, 9 (9th Cir. 2018); *Hammerling v. Google, LLC*, 22-17024, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024); *Lloyd v. Facebook, Inc.*, 23-15318, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (similar); *Silver v. Stripe, Inc.*, 20-08196, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021); *Garcia v. Ener. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015); *see also* MTD at 10-11 (summarizing cases). Instead, Plaintiff makes four scattershot arguments. Each fails.

***First***, Plaintiff argues that his conclusory allegation denying consent is sufficient, even if it is contradicted by judicially noticeable disclosures. Opposition to MTD ("Opp."), Dkt. 31 at 4 (citing Compl. ¶¶ 20-23). This ignores Ninth Circuit precedent and Twilio's cited authority. *See Garcia*, 78 F. Supp. 3d at 1136; *see also In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) ("When a general conclusion in a complaint contradicts specific facts retold in a document . . . subject to judicial notice, those specific facts are controlling."). Instead, Plaintiff relies on a single case, *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1106 (C.D. Cal. 2023) that did not involve judicially noticeable documents that contradicted the relevant allegation. *See id.* The court did not discuss the plaintiffs' allegations or even suggest they were conclusory. *See id.* And the court dismissed the claim on other grounds, so its consent ruling is dicta. *Id.* at 1109.

***Second,*** Plaintiff argues that the Court should ignore the judicially noticeable disclosures because "nothing that Twilio has submitted shows that Plaintiff did in fact consent . . . or even that Plaintiff saw Calm's Terms of Service or Privacy Policy." Opp. at 4. But this speculative contention is refuted by actual evidence submitted through Twilio's Request for Judicial Notice ("RJN"), which presents the interfaces that a user sees when he downloads the Calm App, opens the App to create an account, and logs into his account—establishing that Plaintiff was presented with Calm's Privacy Policy, at each of these three steps. Heim Decl. Ex. A (Google Play Interface), Ex. B (Calm Sign-up and Log-in Pages). Courts regularly find sign-up wraps like the

one viewed by Plaintiff are sufficient to find consent. *See Silver*, 2021 WL 3191752, at *4 (collecting cases finding consent based on similar pages). While Plaintiff seeks to cast doubt about whether he viewed this version of the consent flow, *see* RJN Opp. at 2, Dkt. 32, he fails to allege or even argue that the interface he saw was any different. Nor could he. The user interfaces presented are "the same in all material respects as what users would have seen during the period when Plaintiff downloaded and used the Calm App."[2] Tien Decl. ¶ 7, Dkt. 20.

**Third**, Plaintiff argues that the disclosure is insufficient because it does not mention "Twilio" by name or use the term "SDK." Opp. at 4-7. Plaintiff cites no authority for the proposition that a disclosure identifying collection by third-party service providers must **name** every such provider individually. Rather, the cases Plaintiff cites (Opp. at 5) all involved alleged conduct that was **contrary** to the disclosures. *See Calhoun v. Google*, 113 F.4th 1141, 1148 (9th Cir. 2024) ("Plaintiffs asserted that the explicit statements in the Chrome Privacy Notice would actually give a reasonable user the *opposite* impression regarding Google's data collection practices.") (emphasis in original); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) ("[Defendant's] specific disclosures and assertions indicate[d] that Favor would not disclose" users' "personal information" which was "the exact type of information she contends was intercepted"); *Rodriguez v. Google LLC*, 20-04688-RS, 2021 WL 2026726, at *3, *5 (N.D. Cal. May 21, 2021) (Google SDK allegedly allowed Google to collect app activity notwithstanding contrary statements); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 792 (N.D. Cal. 2019) (similar); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1066–67 (N.D. Cal. 2021) ("*Brown I*") (similar).

Indeed, courts considering Plaintiff's argument in the context of other CIPA provisions have rejected it. *See Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 887–88 (2023) (finding consent based on terms disclosing calls may be recorded with "representatives"); *White v. FIA Card Servs., N.A.*, 12-2034-AJB, 2013 WL 756292, at *5 (S.D. Cal. Feb. 26, 2013) (stating defendant's "affiliates, or its marketing associates" may record was sufficient); *Maghen*

---

[2] In his Opposition to Twilio's MTCA, Plaintiff does not present evidence that the user interface he saw was different. Instead, he assumes those interfaces were operative. MTCA Opp. at 5-9, Dkt. 30.

*v. Quicken Loans Inc.,* 94 F. Supp. 3d 1141, 1146 fn.3 (C.D. Cal. 2015), *aff'd in relevant part,* 680 F. App'x 554 (9th Cir. 2017) (terms that did "not list Quicken or any of its other 200 providers" were not ambiguous). This makes sense as the California statute governing these disclosures, the California Consumer Privacy Act, only requires companies to disclose the ***categories*** of third parties to whom it shares end-user data. Cal. Civ. Code §§ 1798.100(a)(1), 1798.130(a)(5)(B)(iv). There is no requirement that companies name each service provider.

Similarly, Plaintiff cites no authority for the proposition that the disclosure was required to use the term "SDK." Calm disclosed use of third-party "technologies" that collect information about his use of the Calm App. That is how Plaintiff himself describes the SDK. Compl. ¶¶ 2, 14, 22 ("The Segment SDK" is "software" or "code" that "is collecting [end users'] In-App Activity"). Here, the word "technologies" plainly includes use of an SDK. *See, e.g.*, *Doe v. Davita Inc.*, 23-CV-01424-AJB-BLM, 2024 WL 1772854, at *1 (S.D. Cal. Apr. 24, 2024) (referring to Facebook's SDK as one of several "tracking technologies").

***Fourth***, Plaintiff selectively quotes the disclosures to argue that the Privacy Policy limits potential uses of the data to services "performed for [Calm]" or "on [Calm's] behalf," whereas he baldly alleges Twilio used the data for its own purposes. In fact, just below the words Plaintiff quotes, the disclosure states: "This information may be used by Calm ***and others*** to, among other things, analyze and track data . . . deliver advertising and content targeted to your interests on our Services and other websites and online services, and better understand your online activity." Heim Decl., Ex. E at 4. Moreover, Plaintiff points to no well-pleaded allegations that Twilio did or could do anything other than act on Calm's behalf, as Calm's software service provider. That is because Twilio never used, and in fact was prohibited from using, end-user information for its own benefit. MTD at 4-9, 14-16; *see also supra*, Section II.C.1 (discussing third-party exception).

### B. Plaintiff cannot plead criminal intent for any of his claims because Twilio required Calm to disclose its data practices.

Plaintiff does not dispute that, to bring claims under the criminal statutes he is invoking, he must allege *mens rea* for each element, specifically, that Twilio knowingly and intentionally obtained his data without authorization. *Doe I v. Google LLC*, 23-02431-VC, 2024 WL 3490744,

4

at *5-*6 (N.D. Cal. July 22, 2024); *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015). Plaintiff also does not dispute that Twilio's agreements with Calm required Calm to warrant that it "has provided and will continue to provide adequate notices, and that it has obtained and will continue to obtain the necessary permissions and consents, to provide Customer Data to Twilio for processing." Heim Decl., Ex. G ¶ 5.3; *accord* Heim Decl. Ex. H ¶ II.4. And he ignores the *Doe I* ruling, which dismissed privacy claims for failure to plead intent under similar circumstances. 2024 WL 3590744, at *5.

Plaintiff instead makes five arguments—none of which save his claims. **First**, he argues that the Court must ignore the relevant documents based on his Opposition to Twilio's RJN. Opp. at 7. But the Court need not and should not bury its head in the sand. RJN at 9; RJN Reply 6-8.

**Second**, Plaintiff argues that even if considered, "courts have generally rejected the notion that such contractual provisions preclude a showing of the requisite intent," citing a single out-of-District opinion, *Gladstone v. Amazon Web. Servs., Inc.*, 23-00491, 2024 WL 3276490 at *11 (W.D. Wash. July 2, 2024). But in that case, the court considered whether Amazon Web Services ("AWS"), which provided a call recording service to Capital One had requisite intent under a different subsection of CIPA. Emphasizing allegations that AWS featured Capital One on its own website as a "case study" (showing it understood the specific allegedly wrongful uses of the software by Capital One), the court declined to find AWS's terms of use negated intent. *Id.* at *11. But here there are no allegations showing that Twilio has any specific insight into Calm's uses of the SDK, let alone that Twilio was aware (or should have been aware) that any such uses would be contrary to its Privacy Policy—something that Plaintiff has also not alleged.

Instead, this case is just like *Doe I*, a case from this District cited in the MTD, that Plaintiff simply ignores. *Doe I* deals with the same CIPA section alleged here, and highly similar allegations against a defendant that provided software to third party websites. *Doe I*, 2024 WL 3490744, at *4-*6. Because "there is nothing inherently unlawful about Google offering its source code to health care providers," no inference of intent could be drawn especially "against the backdrop of Google's admonitions that providers must avoid transmitting it." *Id.* at *4. This holding is in accord with other courts. *See, e.g.*, *B.K. v. Desert Care Network*, 2024 WL 1343305,

at *7 (C.D. Cal. Feb. 1, 2024) (where Meta notified partners that they needed to have the right to collect, use, and share, user data the plaintiffs failed to adequately plead willfulness for CIPA); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (similar). Thus, courts recognize that such terms *can* negate conclusory allegations of wrongful intent.

**Third**, Plaintiff argues that Twilio has not "show[n] that Calm actually agreed to the highlighted contractual term, or even that Twilio bothers to check for, or enforce compliance with, the highlighted term." Opp. at 7. In other words, Plaintiff speculates without support that perhaps Calm never actually agreed to the contract (despite Calm's judicially noticeable signature on the Software Contract, Ex. F) or that Twilio includes the instructions just for appearances. But even if Plaintiff made such allegations in the Complaint (he does not), they would be implausible. *See Doe I*, 2024 WL 3490744, at *4 ("[N]o inference can be drawn that Google's failure to prevent providers from using its source code entirely somehow reveals an intent to receive private health information[.]"). Such allegations are also immaterial: whether Calm agreed says nothing about **Twilio's** intent, and none of the relevant statutes require Twilio to police its clients' conduct. *Cf. Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007) ("As a general rule, one owes no duty to control the conduct of another.")

**Fourth**, Plaintiff argues that Twilio required Calm to get consent only to "provide" data, whereas it claims Twilio "intercepted" data "at [its] own initiative." Opp. at 6-7. Again, Plaintiff cites no allegations for this characterization of Twilio's SDK, and Plaintiff's affirmative allegation that the SDK is embedded into the Calm App **by Calm developers** suggests the opposite conclusion. Compl. ¶ 31. The notion that Twilio is using or can use the Segment SDK to collect beyond what is contemplated in its Software Contract and as publicly represented in its Business Terms is neither pled nor plausible. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). And while Plaintiff focuses on the word "provide" in the contract, he ignores that the terms cover all data "processing." Heim Decl. Ex. H, ¶ 1.

**Finally**, while Plaintiff suggests that under Rule 9 intent can be "generally" alleged, intent allegations still must be supported by well-pleaded facts that make the allegation plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009) ("Rule 9 . . . does not give him license to evade

6

the less rigid—though still operative—strictures of Rule 8."). Thus, Plaintiff's conclusory intent allegation is insufficient to avoid dismissal. *See Vartanian v. VW Credit, Inc.*, 11-10776-SVW-RZ, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (plaintiff must allege "factual circumstances that make plausible [defendant's] intent").

## C. Plaintiff's CIPA claim fails under the party-exception rule and other defects.

### 1. Plaintiff's speculative mischaracterization of how Twilio's product works is insufficient to overcome the "party-exception" rule.

Plaintiff's Section 631 claim—for unauthorized interception (clause two) and for attempting to use or share his communications (clause three)[3]—fails under the party-exception rule, which provides that a party cannot wiretap or intercept its own communications. Where a service provider offers software to a first-party website or app operator, which the first-party uses to collect data from its own end-users, the service provider is not intercepting but is instead merely "an extension of" the first-party operator using its software. *Williams v. DDR Media, LLC*, 22-03789-SI, 2023 WL 5352896, at *3 (N.D. Cal. Aug. 18, 2023).[4]

Plaintiff sought to avoid this rule by alleging in his Complaint that Twilio "did not act as a mere extension of the [Calm App] because it used the intercepted communications for its own purposes" to "correlate data across various mobile apps to create a unified customer profile" and "make various behavioral predictions about Plaintiff." Compl. ¶ 60; *see also id.* ¶¶ 26-29. As detailed in Twilio's MTD, those allegations are based on snippets of pages from Twilio's website describing its Unify and Engage products. But the generic product descriptions these allegations are predicated upon "do not support this assumption; indeed, they appear to contradict [them]." *See Doe I*, 2024 WL 3490744, at *2; *see also* MTD at 14-15. In fact, the descriptions make clear that the Unify and Engage products, when enabled, only allow an individual Twilio client to process its own first-party data, *e.g.*, to allow **the client** to see how its users interact with **its own app** across different devices, and do not allow Twilio to intermingle data from different clients or

---

[3] Plaintiff concedes his claim is not brought under the first clause of Section 631. Opp. at 10 n.1.
[4] Plaintiff argues at length about the proper standard for avoiding the party exception rule, *i.e.*, whether he must allege that the software provider actually uses the data for its own purposes or just that it is *capable* of doing so. The Court need not reach this issue, because Plaintiff does not allege well-pleaded facts that would allow the Court to infer even capability of use.

2861445

to use such data other than for the clients' purposes. *See* Heim Decl., Ex. J-U.

In response, Plaintiff does not address *Doe I*, does not dispute that his use allegations are drawn from the descriptions of the Unify and Engage products on Twilio's website, and does not even contest Twilio's characterization of what those pages say. Instead, Plaintiff argues "the fact that Twilio's website makes certain representations about its products does not mean that these representations are accurate or complete." Opp. at 10. But Plaintiff points to no well-pleaded allegation to support his speculation that Twilio's products work differently than how it publicly describes them. Nor has Plaintiff addressed a more fundamental point: Calm does not use Unify or Engage, and Plaintiff did not and cannot truthfully allege that it does. Heim Decl., Ex. F.

Plaintiff then retreats to two additional allegations, which he contends Twilio cannot dispute: that "Twilio's business model depends on collecting sensitive information from consumers' devices and sharing it" and that Twilio "has created a platform that allows the sharing of data." Opp. at 10 (citing Compl. ¶¶ 12, 29). But nothing in these allegations, even if true, says that Twilio is capable of doing anything with the data *for its own purposes*, as opposed to for its clients' purposes and at those clients' direction. *See* MTD at 16 (collecting cases Plaintiff ignored). Such generic allegations are like those this Court recently found insufficient in *Cody v. Ring*, 23-00562-AMO, 2025 WL 240763, at *3 (N.D. Cal. Jan. 16, 2025) (*Cody II*). There, the plaintiff relied on the software provider's marketing materials noting the provider's "capacity for information sharing" through integrations with third parties. *Id*. The Court found those materials to be "of no service" to the plaintiff because she did not allege how such integration would even "give rise to a plausible inference that [the service provider] can use data from chat tools[.]" *Id.*

## 2. Plaintiff's interception claim fails as each element is insufficiently pled.

The interception claim (second clause of CIPA) suffers additional flaws:

**Interception**: Plaintiff's conclusory assertion that Twilio "intercepts" his communications is insufficient, as he fails "to explain how the software works or how the interception occurs." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (2024) (*Cody I*); *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("Plaintiff alleges Defendant's code 'allows the [third party] to secretly intercept in real time' . . . . But how?"). Plaintiff

acknowledges that his Complaint is devoid of such facts but argues that the reasoning of the several courts who have dismissed CIPA claims on this ground (including this Court) is unpersuasive. Opp. at 11-12. Courts requiring some factual detail about how interception occurs get it right: the fact that an app has code embedded does not allow for an inference of interception because an SDK is a "collection" of tools that do not all work the same way. This Court again recently reiterated that a plaintiff must offer "specific factual allegations" describing how the software works. *Cody II*, 2025 WL 240763, at *3. The one case Plaintiff suggests holds otherwise involved specific allegations that explained how and when data was routed from the chat through the relevant party's servers. *See* Opp. at 12 (citing *Esparza v. UAG Escondido A1 Inc.*, 23-0102 DMS, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024)). There are no such allegations here.

**In-Transit:** Plaintiff's argument for why the "in-transit" element is adequately pled highlights why it is deficient. Plaintiff argues that because he alleged that Twilio is "collecting sensitive information from consumers' devices" (Compl. ¶ 12), the collection necessarily occurs "before this information reaches the intended recipient." Opp. at 11. That the information is (allegedly) collected directly "from consumer devices" **contradicts** any notion that it is collected **after** it has left his device and before it reaches its intended destination, as the "in transit" element requires. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876–77 (9th Cir. 2002)) ("[The] allegations must demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage."). Plaintiff fails to address any of Twilio's authority, and none of Plaintiff's cases help him because none dealt with a similarly contradictory allegation. *See* Opp. at 11-12.

**Contents**: In his Opposition, Plaintiff limits what he claims are actionable "contents" to "information about Plaintiff's current mood, what things he searches for on the Calm app, and what pages he views." Opp. at 13.[5]

As for search terms and mood indicators, Plaintiff has not adequately alleged that such

---

[5] Plaintiff explicitly disclaims reliance on his allegations (Compl. ¶ 16) about "email address, advertising ID, device make and model, etc." Opp. at 13 n.2. Plaintiff also fails to mention other types of data such as "keystrokes . . . button presses, and other choices on their mobile devices, including their affirmative actions (such as installing a mobile app on their device)." Compl. ¶ 57.

9

collection was enabled in Calm, that Plaintiff actually entered any specific terms or moods in the App that were collected, or that he was targeted with an ad connected with such a search term or mood indicator. The paragraph in the Complaint Plaintiff cites states only that the "developers of the Calm mobile app embedded the Segment SDK into its mobile app ***allowing*** Defendant to intercept communications between Plaintiff and Calm ***such as*** Plaintiff's . . . search terms he input into the Calm app[.]" Compl. ¶ 31. There are no well-pled allegations that Calm did in fact configure the code to collect search terms or mood indicators or that Twilio did in fact obtain such information. Plaintiff is required to allege facts that make it plausible that the SDK was actually configured to, and did, send "content" information. *See Doe I*, 2024 WL 3490744, at *2; *Augustine v. Great Wolf Resorts, Inc.*, 23-00281-DMS-DTF, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) (content element not met without allegation that plaintiff made an order). As for "pages viewed," Plaintiff fails to make any argument or address *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021), which found page views were not content.

    ***Read or Learn:*** Plaintiff contends that Twilio attempted to read or learn the contents of his communications by pointing to his "use" allegations. Opp. at 14 (citing Compl. ¶¶ 26-28). But those allegations misrepresent how the products work and assume certain optional products are enabled. *See* MTD at 14-16. And Plaintiff's citation to *Valenzuela*, 686 F. Supp. 3d at 972, 977, is inapt because the court was not considering the read or learn element. There, the plaintiff alleged that the defendant "eavesdrop[ed]" on a website's chat box and "harvested" the "transcripts" for data, so the court held that the plaintiff plausibly alleged that the defendant intercepted the "contents" of the chats, as opposed to "record information." *Id.* In contrast, *Love v. Ladder Financial*, 23-04234-VC, 2024 WL 2104497, at *2 (N.D. Cal. 2024) (cited in the MTD) is on point. It held that the read/learn element was insufficiently pled where, like here, there was no "coherent story of how or why a service provider would learn granular information [e.g., search terms or page views] about users of one of its customers' sites," *i.e.*, information that has "nothing to do with" its "stated uses of consumer data."

    **3.**    **Plaintiff's use claim is derivative and fails for the same reasons.**

    Plaintiff does not dispute that his use claim (clause three of CIPA) rises and falls with his

interception claim. Plaintiff also does not dispute that, if the Court finds he failed to adequately

allege that Twilio can or does use his data (*infra*, Section II.C.1), this claim fails.

**D.     Plaintiff's Federal Wiretap Act claim fails because Calm consented.**

Plaintiff's allegation that "the developers of the Calm mobile app embedded the Segment

SDK" (Compl. ¶ 31) is fatal to his Federal Wiretap Act claim because it shows that Calm

consented to the alleged interception. Plaintiff splits hairs trying to get around that self-defeating

allegation by suggesting there is a difference between ***permitting*** an interception and ***enabling*** it.

Opp. at 15. To support this argument, Plaintiff veers back into speculation, suggesting some

nefarious plot in which Twilio misrepresents to Calm (and the public) the way that the Segment

SDK works. Plaintiff contends that while the Twilio Software Contract and Business Terms show

that Calm "agreed to share data with Twilio," Twilio was actually secretly intercepting

communications and "ingest[ing] whatever information it desire[d], for whatever purpose." Opp.

at 15. But again, this allegation is neither pled nor plausible. Because Calm configured and

embedded the code within its own app for the purpose of using Twilio's data services, Calm

necessarily consented to the data collection at issue. *See In re Meta Pixel Healthcare Litig.*, 647

F. Supp. 3d 778, 796 (N.D. Cal. 2022) ("[T]he healthcare providers who configured the Pixel on

their websites presumably consented to Meta's receipt of the information."); *Katz-Lacabe v.*

*Oracle Am., Inc*., 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (collecting cases).

Otherwise, Plaintiff's argument relies on one district court case, *Brown I* (here and

elsewhere), without appreciating the differences. In *Brown I*, Google's alleged conduct

(collecting data from users directly while they used Google Chrome in private browsing mode)

contradicted representations Google allegedly made to third-party websites that it would abide by

its Privacy Policy with respect to end-user data, so the court reasoned that the websites might not

know that Google engaged in conduct contrary to its Policy. 525 F. Supp. 3d at 1068. Here, there

are no allegations that Twilio is secretly obtaining from Calm any data that it represents to Calm

or end-users that it will not obtain. Further, the *Brown I* plaintiffs offered detailed allegations as

to how Google collected data ***directly from users*** through browser software, so Google did not

need the website's consent. *Id.* at 1055-56. Plaintiff offers no similar allegations as to how Twilio

could practically collect data from Calm's end-users without Calm's consent.

Plaintiff next contends that Calm's consent is not sufficient because the crime-tort exception applies. Not so. The crime-tort exception focuses on whether "the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Yet, "[m]ultiple courts in this district have found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *In re Meta Pixel*, 647 F. Supp. 3d at 797; *accord In re Google Inc. Gmail Litig.*, 13-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *Katz-Lacabe*, 668 F. Supp. 3d at 945; *Roe v. Amgen Inc.*, 07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024). Despite this authority, Plaintiff again relies on the same lone case with distinct facts. Opp. at 15-16 (citing *Brown I*, 525 F. Supp. 3d at 1068). There, the plaintiff sufficiently alleged a tortious purpose based on allegations "that internal Google communications show that the company's employees recognized that its privacy disclosures were problematic." *Id.* But here there are no plausible allegations that Twilio's purpose was to do anything other than provide a lawful service for a fee.

E.    **Plaintiff's CDAFA claim fails because he does not adequately plead the requisite acts, access, or damages.**

*Acts*: Plaintiff asserts that requiring him to allege the specific "act" Twilio took to violate three separate subsections of CDAFA is somehow "frivolous." Opp. at 16. But the different sections prohibit different conduct, and the "analysis necessarily changes across the subsections at issue." *Bui-Ford v. Tesla, Inc.*, 23-02321, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024). For instance, Section 502(c)(1) creates liability for anyone who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data." Yet, Plaintiff fails to allege whether it is data or a computer that was "accessed" and how Twilio ever "alters, damages, deletes, destroys, or otherwise uses" the computer or data. Courts have held that the phrase "otherwise uses" is only meant to prohibit conduct "similar to alteration, damage, deletion, or destruction." *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D.

Cal. 2020). Yet it is unclear how any such conduct has been alleged. This failure alone warrants dismissal of the CDAFA claim. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090-91 (N.D. Cal. 2018) (dismissing CDAFA claim where plaintiff "parrot[ed]" the language of five different subsections but failed to allege how Uber "violated a particular subsection of the Act").

***Access*:** The only allegation in the Complaint concerning the "access" element provides that Twilio allegedly "accessed" Plaintiff's "computers and/or computer systems because it gained entry to and/or caused output from their mobile devices." Compl. ¶ 52. That allegation just paraphrases the statute's definition of "access." *See* Cal. Pen. Code § 502(a)(b)(1). Plaintiff argues that he does more than parrot the statute because he claims to have alleged that the SDK "redirected communications between Plaintiff and the Calm App towards Twilio." Opp at 16-17 (citing Compl. ¶¶ 18-20, 24). The cited allegations do not say that and instead exclusively discuss Plaintiff's contradictory, yet equally conclusory, theory of interception, not access. Moreover, under CDAFA such "output" must come from the "logical, arithmetical, or memory function resources of a computer." *Roe*, 2024 WL 2873482, at *6. Plaintiff does not explain how data generated by his use of the Calm App can be considered such "output," let alone how Twilio can be said to ***cause*** such output. *See id.*; *see also Heiting*, 709 F. Supp. 3d at 1020 (similar).

Plaintiff again relies on *Brown*, glossing over crucial distinctions. *See* Opp. at 17 (*citing Brown v. Google LLC*, 685 F. Supp. 3d 909, 939-40 (N.D. Cal. 2023) ("*Brown II*").[6] In *Brown II*, **Google Chrome users** demonstrated that "Google receive[d] data from users' **browsers directly**, not indirectly through third-party websites." 685 F. Supp. 3d at 940. But here it is far from clear how Twilio is indirectly "accessing" Plaintiff's phone based on use of a third-party's app.

Moreover, Plaintiff must allege additional facts showing Twilio circumvented a barrier to establish that Twilio's alleged "access" to his phone was "without permission" under Section 502(c)(7). Plaintiff's argument to the contrary relies on cases that adopt a minority view and/or incorrectly extend *Christensen*. Opp. at 17-18. In *Christensen*, the Ninth Circuit interpreted the meaning of "without permission" in the context of Section 502(c)(2) and explained ***that***

---

[6] *Brown I* resolved a motion to dismiss, whereas *Brown II* resolved summary judgment in the same case after the case was reassigned.

2861445

subsection "does not require unauthorized access." 828 F.3d at 789 (citing Cal. Pen. Code § 502(c)(2)). Relying on *Christensen*, some district courts, such as the *Rodriguez, Brown II*, and *West* courts relied on by Plaintiff, have held that plaintiffs need not show a defendant has "circumvents technical or code-based barriers." *See Rodriguez*, 2021 WL 2026726, at *7; *Brown II*, 685 F. Supp. 3d at 940 n.38; *West v. Ronquillo-Morgan*, 526 F. Supp. 3d 737, 746 (C.D. Cal. 2023). But unlike Section 502(c)(2), Section 502(c)(7) directly penalizes ***unauthorized access*** to a computer*,* and thus, courts have acknowledged that "the logic of *Christensen* does not extend to [Section 502] (c)(7)," "[n]or does *Christensen* displace case law requiring a defendant to circumvent[ ] technical or code based barriers to access a computer 'without permission.'" *Bui-Ford*, 2024 WL 694485, at *5; *see also Brown I*, 525 F. Supp. 3d at 1074 ("*Christensen* did not conclude that a barrier need not be circumvented."). Indeed, even Plaintiff's cited cases point to allegations of circumvention. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 967 (N.D. Cal. 2014) (defendants changed passwords to accounts "eliminating … technical access barriers"); *Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024, 1049 (S.D. Cal. 2023) ("circumvention" alleged based on facts regarding "end-run around Apple's privacy framework").

The allegations here demonstrate why the barrier requirement is necessary. Plaintiff alleges that the SDK is voluntarily embedded within the code of the Calm App and that he voluntarily downloaded and used the App containing the code that allegedly "caused output" from his device. Compl. ¶¶ 30-31, 52. Nothing about this alleged "access" was unauthorized. *See, In re iPhone Application Litig.*, 11-MD-02250-LHK, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) ("[O]n Plaintiffs' own allegations, the iOS and third party apps—which contain the alleged 'surreptitious code'—were all installed or updated *voluntarily* by Plaintiffs.").

***Damages***: Plaintiff fails to establish that unjust enrichment is cognizable "loss or damages" under CDAFA. Section 502(e) authorizes a cause of action for one who "suffers damage or loss by reason of a violation." Cal. Penal Code § 502(e)(1). And it explains that "[c]ompensatory damages shall include" expenditures incurred "to verify" that the computer or data "was or was not altered, damaged, or deleted by the access." *Id.* Such verification costs are illustrative of the type of "damage or loss" that can be said to have been caused "by reason of" a

CDAFA violation. As such, the "majority of courts to consider the issue," have found "that the CDAFA's private right of action contemplates some damage to the computer" or "data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting*, 2023 WL 9319049, at *7; MTD at 22 (collecting cases).

Plaintiff contends that the courts that have read Section 502(e) to limit the type of damages available under CDAFA are wrong because, as a matter of statutory interpretation, the statute's use of the word "include" is one of enlargement, not limitation. Opp. at 18-19 (citing *Flanagan v. Flanagan*, 27 Cal. 4th 766, 744 (2002)). But California courts make clear that the word "include" is not one of "unlimited expansion," instead, the word tends to extend only to other items in the same category. *See County of Yolo v. Los Rios Community College Dist.*, 5 Cal. App. 4th 1242, 1254 (1992); *Dyna–Med, Inc. v. Fair Emp't & Hous. Comm'n,* 43 Cal.3d 1379, 1388-91 (1987) (statute did not cover remedies "different in kind" from those listed).

Plaintiff again cites *Brown II*, this time for the notion that *In re Facebook* establishes that one "can state an economic injury for their misappropriated data." *Brown II*, 685 F. Supp. 3d at 940. The *Heiting* court explicitly rejected this argument, explaining that the *In re Facebook's* Article III holding does not naturally extend to the CDAFA statutory standing analysis. While "loss of control over personal data may constitute an economic injury" for purposes sufficient to confer Article III standing, the "majority of courts" have not extended that to mean that "such an injury is contemplated by [] CDAFA." *Heiting*, 709 F. Supp. 3d at 1021.

Further, even if unjust enrichment were cognizable, Plaintiff's conclusory allegation is insufficient. Compl. ¶ 53. To support this theory, Plaintiff relies on his speculative and implausible allegations that misdescribe Twilio's business model. But the judicially noticeable materials make clear that Twilio sells software, not data. Unlike in *Facebook Tracking*, where the public information and studies ***supported*** the plaintiffs' claims about Facebook's business model, here Plaintiff's allegations about Twilio directly ***contradict*** Twilio's public statements. Heim Decl., Ex. H, Schedule 1, ¶ 1. Plaintiff has not and cannot adequately allege unjust enrichment.

## III.    CONCLUSION

Twilio respectfully requests that the Court dismiss this entire action with prejudice.

2861445

1    Dated:  January 31, 2025                              KEKER, VAN NEST & PETERS LLP

2

3                                              By:    /s/Benjamin Berkowitz
                                                      BENJAMIN BERKOWITZ
4                                                     MATAN SHACHAM
                                                      JACQUELINE CONCILLA
5                                                     NATALIE R. HEIM

6                                                     Attorneys for Defendant
                                                      TWILIO INC., a Delaware corporation

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2861445