| | |
|---|---|
| 1 | KEKER, VAN NEST & PETERS LLP |
| | BENJAMIN BERKOWITZ - # 244441 |
| 2 | bberkowitz@keker.com |
| | MATAN SHACHAM - # 262348 |
| 3 | mshacham@keker.com |
| | JACQUELINE CONCILLA - # 335733 |
| 4 | jconcilla@keker.com |
| | NATALIE R. HEIM - # 340549 |
| 5 | nheim@keker.com |
| | 633 Battery Street |
| 6 | San Francisco, CA 94111-1809 |
| | Telephone:  415 391 5400 |
| 7 | Facsimile:  415 397 7188 |

Attorneys for Defendant
TWILIO INC., a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NOAH BENDER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWILIO INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:24-cv-04914-AMO<br><br>**REPLY IN SUPPORT OF TWILIO INC.'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date:     June 26, 2025<br>Time:    2:00 p.m.<br>Dept.:    10, 19th Floor<br>Judge:   Hon. Araceli Martínez-Olguín<br><br>Date Filed: August 8, 2024<br><br>Trial Date: None Set |

## TABLE OF CONTENTS

                                                                     **Page(s)**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

    A. Privacy Policies and Terms of Service (Exhibits C-E and V-W) .......................... 2

    B. Calm's User Interfaces (Exhibits A-B) ................................................................. 2

        1. Judicial Notice ........................................................................................... 2

        2. Incorporation by Reference ....................................................................... 4

    C. Twilio Software Contract and Business Terms (Exhibits F-I) .............................. 6

        1. Judicial Notice ........................................................................................... 7

        2. Incorporation by Reference ....................................................................... 8

    D. Twilio's Webpages (Exhibits H-U) ....................................................................... 8

        1. Judicial Notice ........................................................................................... 8

        2. Incorporation by Reference ....................................................................... 9

III. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
 603 F. Supp. 3d 857 (N.D. Cal. 2022) ............................................................................... 4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................... 9, 10

*Bui-Ford v. Tesla, Inc.*,
 4:23-CV-02321, 2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ............................................. 5

*Chyba v. Green Tree Servicing, LLC*,
 12-2530-H (WMC), 2012 WL 12874929 (S.D. Cal. Dec. 12, 2012) .................................... 4

*Cordas v. Uber Techs., Inc.*,
 228 F. Supp. 3d 985 (N.D. Cal. 2017) ................................................................................ 4

*Della v. Colgate-Palmolive Co.*,
 23-CV-04086-JCS, 2024 WL 457798 (N.D. Cal. Feb. 6, 2024) .................................... 10, 11

*Doe I v. Google LLC*,
 23-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ........................................... 7, 8

*In re Easysaver Rewards Litig.*,
 737 F. Supp. 2d 1159 (S.D. Cal. 2010) ............................................................................... 3

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) .............................................................................................. 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
 402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................ 8

*In re Finjan Holdings, Inc.*,
 58 F.4th 1048 (9th Cir. 2023) ............................................................................... 2, 5, 6, 8

*Garcia v. Enter. Holdings, Inc.*,
 78 F. Supp. 3d 1125 ..................................................................................................... 4, 5, 6

*Genasys Inc. v. Vector Acoustics, LLC*,
 638 F. Supp. 3d 1135 (S.D. Cal. 2022) ............................................................................... 8

*Golub v. Gigamon Inc.*,
 372 F. Supp. 3d 1033 (N.D. Cal. 2019), *aff'd,* 994 F.3d 1102 (9th Cir. 2021) ................. 3

*India Price v. Carnival Corp.*,
 712 F. Supp. 3d 1347 (S.D. Cal. 2024) ............................................................................... 5

*Indian Hills Holdings, LLC v. Frye*,
    337 F.R.D. 293 (S.D. Cal. 2020) .................................................................................... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..................................................................... 5, 6, 8, 11

*Knievel v. ESPN*,
    393 F.3d 1068 (9th. Cir. 2005) ............................................................................ 9, 10

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ........................................................................................ 7

*Perry-Hudson v. Twilio, Inc.*,
    24-03741-VC, 2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) .............................. 4, 5

*Reyes v. Educ. Credit Mgmt. Corp.*,
    773 Fed. App'x 989 (9th Cir. 2019) ........................................................................ 5

*Saeedy v. Microsoft Corp.*,
    C24-0219-SKV, 2024 WL 4945106 (W.D. Wash. Nov. 21, 2024) ..................... 3, 4

*Sarmiento v. Sealy, Inc.*,
    367 F. Supp. 3d 1131 (N.D. Cal. 2019) ................................................................ 3, 7

*Silver v. Stripe Inc.*,
    20-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................... 5

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021) ....................................................................... 7

*Starks v. Geico Indem. Co.*,
    15-5771-MWF (PJW), 2015 WL 12942282 (C.D. Cal. Nov. 10, 2015) ................ 4

*Turner v. Nuance Commc'ns., Inc.*,
    735 F. Supp. 3d 1169 (N.D. Cal. 2024) .................................................................... 5

**Other Authorities**

Fed. R. Evid. 201 .................................................................................................................... 4

I.  **INTRODUCTION**

Plaintiff seeks to bring a nationwide class action based on Calm and Twilio's alleged failure to disclose Calm's use of Twilio's software to collect his personal information. But, in his Opposition to Twilio's RJN, Plaintiff seeks to bar the Court from looking at the relevant public disclosures, contracts, and product descriptions—because these documents doom his case.

Plaintiff's privacy claims are based on his allegation that "[n]either Defendant nor Calm informed Plaintiff, or otherwise disclosed to Plaintiff . . . that if he used the Calm app, Defendant would collect his personally identifiable information and In-App Activity." *See, e.g.*, Compl. ¶ 33. Plaintiff does not dispute that the Court may take judicial notice of at least the Calm Terms and Privacy Policy that were in effect when he claims he downloaded and used the Calm App. Heim Decl., Exs. E, W, Dkt. 23. But he asks the Court not to look at the pages through which Calm repeatedly disclosed to users its Terms and Privacy Policy when a user downloaded the Calm App, created an account, and logged in. Heim Decl., Exs. A-B.

Plaintiff's claims also necessarily depend on the terms and conditions upon which Twilio provided its software to Calm. *See, e.g.*, Compl. ¶¶ 2, 31. But Plaintiff asks this Court not to read those contractual terms. *See* Heim Decl., Exs. F-I.

Finally, Plaintiff's claims are also necessarily based on his allegations regarding how Twilio's software works—*i.e.*, that Twilio is a "data mining company" that "used" his data for its own purposes and for profit (as opposed to a service provider that processes data strictly at the direction and for the benefit of its clients). *See, e.g.*, Compl. ¶¶ 1-4, 12-13, 26, 27, 28, 44, 45, 51, 53, 59, 60 62. Those allegations rely on cherry-picked and misconstrued statements scattered across Twilio's website about its business and products. *See* Heim Decl., Exs. H-U. But Plaintiff asks the Court not to read those webpages in full to obtain the proper context.

Fortunately, Plaintiff's ostrich-like position—that the Court should be forced to ignore these documents that are fundamental to his claims—is simply not the law. Each of these documents is properly incorporated by reference and/or subject to judicial notice.

## II. ARGUMENT

### A. Privacy Policies and Terms of Service (Exhibits C-E and V-W)

Plaintiff does not dispute that the Calm Privacy Policy in effect from June 16, 2022 to October 12, 2023 (**Exhibit E**) or the Calm Terms of Service in effect prior to October 13, 2023 (**Exhibit W**) are subject to judicial notice. *See* RJN Opp. at 3, Dkt. 32 (skipping Exhibit E); *see id.* at 7 (failing to advance judicial notice argument for Exhibit W). Therefore, the Court should consider both Exhibits.[1] *See In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) ("[W]here a complaint incorrectly summarizes or characterizes a legally operative document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, the document itself is controlling.").

Plaintiff argues that the Court should not consider other versions of the Privacy Policy and Terms (**Exhibits C, D**, and **V**) because the "Complaint does not allege that Mr. Bender's activity on the Calm app postdates October 13, 2023." RJN Opp. at 3, 7. This is an issue of Plaintiff's own making. He vaguely alleged that he downloaded and used the Calm App "within the last year." Compl. ¶ 30. As such, Twilio attached versions that spanned a year prior to the date the Complaint was filed. But there are no material differences between the versions, so it is sufficient for the Court to consider Exhibits E and W.

### B. Calm's User Interfaces (Exhibits A-B)

#### 1. Judicial Notice

Plaintiff opposes Twilio's request for judicial notice of the Calm App User Interface on Google Play Store for Android devices (**Exhibit A**) and the Calm App's Log-in Page (**Exhibit B**), both of which are presented to users who download and open the Calm App on their mobile Android device, as Plaintiff alleges he did. Heim Decl. ¶¶ 2-3; Compl. ¶ 30. Plaintiff argues that "Twilio has not shown that this is the page flow that Mr. Bender would have seen when he downloaded the Calm [A]pp." RJN Opp. at 2. This argument rings hollow given that, in the context of Twilio's Motion to Compel, which is decided on a summary judgment standard,

---

[1] The Privacy Policy and Terms of Service (Exhibits E and W) are also incorporated by reference for the same reasons as the Calm User Interfaces (Exhibits A and B), discussed below. However, the Court need not reach that issue because Plaintiff concedes they are subject to judicial notice.

Plaintiff presented *no evidence* that the user interface he saw when he downloaded the Calm App, created an account, and logged in, was different than the documents presented by Twilio. To the contrary, he assumes that the very same user interfaces control and instead argues about various deficiencies within them (*e.g.*, font is too small). MTCA Opp. at 6-9, Dkt. 30.

Plaintiff's argument in the RJN Opposition essentially challenges the documents' authenticity, *i.e.*, that they are what Twilio says they are: the user interfaces presented to Plaintiff when he downloaded and used the Calm App within the last year. But a plaintiff's "bald allegation that [a document] is not authentic does not raise an actual dispute as to the document's authenticity." *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d. 1131, 1143 (N.D. Cal. 2019); *see also Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1043 (N.D. Cal. 2019), *aff'd,* 994 F.3d 1102 (9th Cir. 2021), and *aff'd*, 847 F. App'x 368 (9th Cir. 2021) (judicially noticing conference call transcripts where plaintiff was "unsure if the attached transcripts [were] the same version used to prepare the complaint," finding the "argument fail[ed]" as plaintiff did "not raise doubts about the [transcript's] authenticity or accuracy"). Plaintiff relies on *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1167–68 (S.D. Cal. 2010), but unlike here, the defendant there declared that the pages "were changed, modified, and revised over time," so the court declined to "compare and contrast the several versions of the webpages to determine if there are any material differences."

By contrast, here there is no evidence or even a plausible indication by Plaintiff that the Calm Log-in Page has changed in any material respect within a year of the filing of the Complaint (*i.e.*, the time Plaintiff alleges to have downloaded and used the Calm App, see Compl. ¶ 30). Plaintiff does not argue—much less point to allegations—that they have. Nor could he do so consistent with Rule 11, because he knows that they have not changed. Calm's declaration in support of Twilio's Motion to Compel makes clear that the user interface has not materially changed in the relevant time period. Tien Decl. ¶ 7, Dkt. 20.

The circumstances here are more like those in *Saeedy v. Microsoft Corp.*, C24-0219-SKV, 2024 WL 4945106, at *10-11 (W.D. Wash. Nov. 21, 2024), where the court rejected a similar argument because the plaintiffs "fail[ed] to offer contradictory evidence as to what they saw when they opened their Microsoft accounts." The court reasoned that such "bare assertions d[id] not

suffice" to "create a reasonable dispute" given "Microsoft provide[d] substantively consistent and uncontradicted testimonial and exemplar evidence showing what the account-creation process would have looked like during the periods of time in which [p]laintiffs created their accounts." *Id.* (*citing Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989-90 (N.D. Cal. 2017)).

Because Plaintiff does not otherwise dispute that the user interfaces can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," **Exhibits A-B** are subject to judicial notice and should be considered by the Court. Fed. R. Evid. 201(b).

## 2. Incorporation by Reference

The user interfaces are also incorporated by reference. Where a plaintiff's claims depend on his allegation that notice was not provided, and a defendant provides evidence that such notice did occur, courts have held that such evidence is integral to the complaint and properly subject to incorporation by reference. *See, e.g., Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 867-868 (N.D. Cal. 2022) (incorporating by reference a notice allegedly not received by plaintiff); *Starks v. Geico Indem. Co.*, 15-5771-MWF (PJW), 2015 WL 12942282, at *2 (C.D. Cal. Nov. 10, 2015) (same); *Chyba v. Green Tree Servicing, LLC*, 12-2530-H (WMC), 2012 WL 12874929, at *2 (S.D. Cal. Dec. 12, 2012) (incorporating written correspondence between the parties where plaintiff "alleg[ed] that [defendant] did not send her written notice"); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (incorporating by reference Privacy Policy where Plaintiff did not mention it but alleged he did not consent to the relevant data practices).

Here, Plaintiff explicitly alleges that "[n]either Defendant nor Calm informed Plaintiff, or *otherwise disclosed* to Plaintiff, that the Segment SDK was embedded in the Calm [A]pp, or that if he used the Calm [A]pp, Defendant would collect his personally identifiable information and In-App Activity." Compl. ¶ 33 (emphasis added). But the user interfaces show that Plaintiff was necessarily provided notice of such disclosures when he downloaded, signed up for, and logged into the Calm App. Heim Decl., Exs. A, B. Accordingly, incorporation by reference is proper.

Plaintiff argues in Opposition that his claims are "concerned not with what Calm does, but with what *Twilio* does." RJN Opp. at 2 (emphasis in original). Not true. Plaintiff's Complaint alleges that **Calm** could have provided the requisite disclosures but failed to do so. Compl. ¶ 33.

Indeed, Plaintiff seeks to represent a class of all individuals who "used an app on their mobile device" with the Segment SDK embedded and "that did not publicly disclose 'Twilio' in any of *the app's* notices or disclosures." Compl. ¶ 34 (emphasis added). In other words, Plaintiff himself views the contents of an app's notices or disclosures as facts that are central to defining a potential class member's entitlement to relief. Unsurprisingly, courts have found it appropriate to consider the sign-up-wraps and associated privacy policies of non-parties in similar circumstances. *See, e.g.*, *Silver v. Stripe Inc.*, No. 20-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (consent for the defendant Stripe's (a payment processor) data collection established through its client's (Instacart) privacy disclosures).

Plaintiff next argues that pleading lack of consent does not incorporate by reference the notices and Privacy Policies of an app because they merely create a "defense" to liability. RJN Opp. at 2-3. But courts have repeatedly held that plaintiffs asserting privacy claims such as the ones here must prove lack of consent as an element of the claims. *See, e.g.*, *Perry-Hudson v. Twilio, Inc.*, 24-03741-VC, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024) ("Each claim requires [plaintiff] to plead (and ultimately prove) that he did not consent to Twilio's interception . . . . [C]onsent is an element to each claim [.]"); *Garcia*, 78 F. Supp. 3d at 1135-36 ("As an initial matter, the Court disagrees with Plaintiff's assertion that lack of consent is not an element of his [CIPA] claim."); *Reyes v. Educ. Credit Mgmt. Corp.*, 773 Fed. App'x 989, 990 n.1 (9th Cir. 2019) ("[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record."); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1356 n.7 (S.D. Cal. 2024) (lack of consent must be pled for federal wiretap claim); *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024) (access is unlawful under CDAFA because it is done "without permission").

Plaintiff also appears to argue that, even if consent is an element of his claims, the Court may not rely on an incorporated document to contradict his conclusory allegation that he did not consent, citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).[2] But

---

[2] Plaintiff also cites *Turner v. Nuance Commc'ns., Inc.*, 735 F. Supp. 3d 1169, 1176 (N.D. Cal. 2024) but *Turner* failed to consider *Finjan*.

2844402

the Ninth Circuit has since made clear that *Khoja* does not stand for that proposition. Instead, *Khoja* merely explained that defendants may not seek to disprove "specific facts" that are well-pleaded in a complaint with extraneous documents. *Finjan Holdings*, 58 F.4th at 1052 n.1 (citing *Khoja*, 899 F.3d at 1003). As the *Finjan* court explained, "[w]hen a ***general conclusion*** in a complaint contradicts ***specific facts*** retold in a document attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice, those ***specific facts*** are controlling. *Id.* (emphasis added). Here, Plaintiff's conclusory allegation that he "did not consent" is not a well-pleaded allegation, so the incorporated user interfaces that specifically contradict that threadbare allegation are controlling. *See id.*; *Garcia*, 78 F. Supp. 3d at 1137 ("[T]he express provisions of the Privacy Policy … contradict [plaintiff's] bare allegation that he did not consent").

### C. Twilio Software Contract and Business Terms (Exhibits F-I)

**Exhibits F-I** together make up the relevant contractual and legally operative documents governing the relationship between Twilio and Calm, including the circumstances under which Twilio provides Calm with software and/or processes Calm's end-user data. **Exhibit F** (Calm Order Form) and **Exhibit G** (Platform Agreement) are executed directly between Calm and Twilio (collectively the "Twilio Software Contract"). **Exhibit H** (Twilio's Data Processing Addendum ("DPA")) and **Exhibit I** (Twilio's Security Practices Overview) are part of Twilio's publicly available Business Terms, which are generally applicable to all of Twilio's business clients (collectively Twilio's "**Business Terms**").

In his Opposition, Plaintiff wrongly contends that "Twilio insists that the documents [Exhibits H-I] are 'expressly incorporated by reference' into the Complaint." RJN Opp. at 4. Plaintiff is confusing the issue. Twilio never stated that **Exhibits H** or **I** were "expressly" incorporated into "the Complaint" as Plaintiff claims. Rather, Twilio explained that **Exhibit H** (the DPA) "is expressly incorporated by reference *in the Platform Agreement [Exhibit F]*" and that **Exhibit I**, the Security Overview, "is expressly incorporated by reference *in the DPA.*" Twilio's RJN at 4 (emphasis added), Dkt. 22. In other words, in its RJN, Twilio explained how **Exhibits F-I** are interconnected such that both Business Terms (**Exhibits H-I**) are part of and form the contractual relationship between Twilio and Calm. All four documents are subject to

judicial notice and incorporated by reference (because Plaintiff's claims necessarily rely on them) as explained in Twilio's RJN. *Id.* at 5-6, 9.

### 1. Judicial Notice

The existence of a signed contract between Calm and Twilio is relevant to showing that Calm consented to the data practices at issue, which defeats Plaintiff's federal wiretapping claim. *See* MTD at 19-20, Dkt. 21. The fact that such a contract was signed by both parties is subject to judicial notice. *Indian Hills Holdings, LLC v. Frye*, 337 F.R.D. 293, 302 n.7 (S.D. Cal. 2020) "A court may take judicial notice of the fact that a contract was signed.") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)) (holding that although the district court could take judicial notice of "the *fact* that [a document] was signed"); *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 946 n.5 (S.D. Cal. 2021)). As such, the **Twilio Software Contract** (**Exhibits F** and **G**) are subject to judicial notice, as Plaintiff fails to raise any genuine dispute as to their authenticity. *See Sealy*, 367 F. Supp. 3d. at 1143 (a plaintiff's "bald allegation that [a document] is not authentic does not raise an actual dispute[.]").

The **Business Terms** (**Exhibits H-I**) are available on a public website, so, as Plaintiff acknowledges, they too are subject to judicial notice for the fact that the statements were made by Twilio to the public. *See* RJN Opp. at 4. The fact that the statements in **Exhibits H** and **I** were made by Twilio to the public is directly relevant to the plausibility of Plaintiff's claims. For instance, in **Exhibit H** (DPA), Twilio imposes an obligation on all its clients to ensure they "ha[ve], and will continue to have, the right to transfer, or provide access to, personal data to Twilio for processing[.]" Heim Decl., Ex. H (DPA) ¶ II.4. This is a legally operative document governing the terms of Calm's use of Twilio's software and it directly refutes Plaintiff's general and conclusory allegations that Twilio has "willful" intent to acquire his Calm App data without his consent. It is thus proper to consider the judicially noticeable fact that Twilio has publicly included such a requirement in its Business Terms, especially in assessing Plaintiff's criminal intent allegation. *See Doe I v. Google LLC*, 23-02431-VC, 2024 WL 3490744, at *5 (N.D. Cal. July 22, 2024) ("[T]he plaintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions.").

Likewise, the fact that Twilio publicly represents, in **Exhibit I** (Security Overview), that Twilio APIs are "designed and built" to "prevent other customers from having access to Customer Data," highlights the implausibility of Plaintiff's allegation that Twilio itself "correlate[s] data across various mobile apps to create a unified customer profile." Compl. ¶ 60. Again, this is a legally operative document subject to judicial notice that directly contradicts Plaintiff's general "use" allegations, and therefore, it controls. *See Finjan*, 58 F.4th at 1052 n.1

### 2. Incorporation by Reference

As Twilio explained in its RJN, Twilio's argument for incorporation by reference of all four documents (**Exhibits F-I**) is that Plaintiff's claims necessarily rely on them. RJN at 9. But Plaintiff fails to respond to ***any*** of Twilio's incorporation arguments for **Exhibits F-I**, and instead incorrectly suggests that "Twilio never explains" how they can be considered incorporated into the Complaint. RJN Opp. at 4. Plaintiff does not dispute that he necessarily relies on Twilio's contract with Calm to state his claims; he offers no genuine dispute as to their authenticity; nor does he deny they are relevant to Twilio's MTD. Incorporation is therefore warranted. *See Khoja*, 899 F.3d at 1002 (incorporation is proper where the plaintiff necessarily relies on a document to state his claims); *see also Doe I*, 2024 WL 3490744, at *5; *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019).

### D. Twilio's Webpages (Exhibits H-U)

### 1. Judicial Notice

Plaintiff generally acknowledges that publicly available webpages are subject to judicial notice for the fact that the representations contained therein have been made (even if not assumed to be true). *See* RJN Opp. at 5. Therefore, it is undisputed that the Court should consider the publicly available webpages attached to Twilio's request in support of its Motion to Dismiss (*i.e.*, **Exhibits A-E; H-U**) at least for the fact that Twilio "makes certain representations about the company to the public." *See Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1146 (S.D. Cal. 2022). All of the statements Twilio makes in the attached webpages are relevant in evaluating the plausibility of Plaintiff's allegations regarding Twilio's collection, use, sharing, and profits from Plaintiff's data. At bottom, Plaintiff's theory suggests that Twilio misrepresents

8
REPLY IN SUPPORT OF TWILIO INC.'S REQUEST FOR JUDICIAL NOTICE
Case No. 3:24-cv-04914-AMO

its entire business model to the public. Such allegations sound in fraud and Plaintiff fails to allege sufficient facts for the "court to infer reasonably that such conduct is plausibly part of a fraudulent scheme." *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014). The Court should thus consider the webpages to assess Plaintiff's Complaint.

### 2. Incorporation by Reference

Twilio's webpages are also incorporated by reference into the Complaint. In his Opposition, Plaintiff contends that the full contents of materials incorporated by reference can only be considered where the statements in the incorporated materials are themselves actionable (*e.g.*, a defamation claim), as opposed to instances where a company's public statements are relied on by the plaintiff as factual support for an element of the plaintiff's claims. RJN Opp. at 5. But the seminal Supreme Court case governing pleading standards makes clear that Plaintiff is wrong. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568, n. 13 (2007), the Supreme Court stated that district courts are "entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn." In that case, the plaintiff relied on a newspaper article to quote statements a CEO made that the plaintiff argued evidenced a conspiracy, where an agreement was an element of the plaintiff's antitrust claim. *Id*. The Court noted that when viewed in full context the selectively quoted statements did not support a plausible inference of agreement. *Id.*

The circumstances here are analogous. Plaintiff selectively quotes and paraphrases Twilio's website to describe Twilio's business model and products, indicating those select quotes allow for an inference that Twilio uses data for its own purposes, for instance, by creating profiles based on information combined across distinctly owned websites. *See, e.g.*, Compl. ¶¶ 26, 60. Those allegations are false, and when viewed in full, Twilio's website does not allow for a plausible inference that Twilio uses consumer data for its own purposes. *See, e.g.*, Heim Decl., Ex. H ("Twilio does not sell Customer's personal data or Customer end users' personal data and does not share such end users' information with third parties for compensation[.]"); *see also* Exs. J, K, R, U (describing how Twilio helps its *clients* collect their first-party data). Thus, contrary to Plaintiff's suggestion, *Knievel* (a defamation case) is simply a specific application of the broader

rule announced by *Twombly*; it does not limit the "context" rule to cases where the statements are actionable. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th. Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document … even though the plaintiff does not explicitly allege the contents of that document[.]") (internal citation omitted).

Plaintiff further contends that even if the Court could view an incorporated document for context, Twilio is attaching "new" documents to provide "context," rather than providing the complete version of existing documents already cited in the Complaint. RJN Opp. at 6. But Plaintiff himself admits in the Opposition to the MTD and RJN that his allegations "rely on information gleaned from Twilio's website." MTD Opp at 10; *see also* RJN Opp. at 5 (admitting that certain quotes from the Complaint come from the webpages attached to Twilio's RJN). And Twilio's webpages hyperlink and cross reference each other, so these interconnected webpages that are all part of the same website are not "new" documents.

But, regardless, this is a problem of Plaintiff's own making. Plaintiff refuses to actually identify the exact pages of Twilio's website that form the basis of his Complaint, while simultaneously admitting that his allegations rely on cherry-picked statements from Twilio's marketing materials. *See* MTD Opp at 10. He cannot have it both ways. The fact that Plaintiff intentionally failed to link or attach the specific webpages he relied on to his Complaint should not allow him to prevent the Court from reviewing his claims in light of Twilio's full website. This is particularly true here, where Plaintiff has made sweeping allegations about Twilio's "entire business model," that are allegedly based on Twilio's own representations. *See, e.g.*, Compl. ¶¶ 12, 26; *see also Della v. Colgate-Palmolive Co.*, No. 23-CV-04086-JCS, 2024 WL 457798, at *16 (N.D. Cal. Feb. 6, 2024) ("Plaintiffs sufficiently rely on the Product websites to justify applying the doctrine of incorporation by reference to the websites as a whole, even if the specific webpages offered by Colgate are not expressly referenced in the FAC."). Because Plaintiff necessarily relies on the contents of Twilio's website to support his claims, they are incorporated by reference.

Plaintiff also accuses Twilio of "lumping" the webpages together. But it is clear that the

10
REPLY IN SUPPORT OF TWILIO INC.'S REQUEST FOR JUDICIAL NOTICE
Case No. 3:24-cv-04914-AMO

2844402

webpages Twilio submitted form the basis of various allegations of the Complaint as follows:

***Id Resolution and AI Predictions* (Exhibits L, O):** Plaintiff admits that **Exhibits L** and **O** are in fact quoted in the Complaint. RJN Opp. at 5-6 (citing Compl. ¶¶ 27-28). He argues, however, that they are not incorporated by reference because he only includes a single quotation from each webpage. *Id.* at 6. This is misleading. Although **Exhibits L** and **O** may only be *quoted* once, Plaintiff necessarily and extensively relies on them as the basis for at least 12 "use" allegations throughout the Complaint. *See* Compl. ¶¶ 4, 12, 26, 27, 28, 44, 45, 51, 53, 59, 60, 62. Plaintiff should not be able to avoid incorporation by limiting his use of direct quotes, while nonetheless relying on the documents to form the basis of a dozen allegations. Regardless, Twilio validly seeks incorporation because the webpages form the basis of his CIPA claim; Plaintiff need not extensively reference them for incorporation to be proper. *See Khoja*, 899 F.3d at 1002.

***Twilio's Alleged Business Model* (Exhibits J, K, U, R, T, P):** **Exhibits J, K, U, R, T**, and **P** all speak to Twilio's overall business model and how its products work, which correspond to numerous allegations in the Complaint. *See, e.g.*, Compl. ¶ 1 (referring to Twilio as a "data mining" company); *id.* ¶ 2 (indicating the SDK creates a "data collection pipeline"); *id.* ¶ 12 (alleging Twilio's "entire business model depends on collecting and share it with data partners"); *see also id*. ¶¶ 23, 29, 44, 45, 51, 53, 59, 60 (additional allegations concerning Twilio's practices and alleged sharing or profiting off data). The allegations in these paragraphs all use cherry-picked buzz words that Plaintiff took and misconstrued from Twilio's website. For instance, **Exhibits J, K, R**, and **U** explain the concept of "first-party data." *See, e.g.*, Heim Decl., Ex. R (describing first-party data as "data that's directly collected and owned by the organization doing business with them"). Within the materials, businesses that the deal in "first-party data," like Twilio, are contrasted with that of data brokers, *i.e.*, companies that collect, aggregate, and sell consumer data from across various businesses (*i.e.,* "third-party data"). *Id.*, Ex. K ("First-vs-Third Party Data"); *see also* Ex. U ("Cookies, Compliance, and Customer Data"). Plaintiff's Complaint alleges that the "secret to Twilio's data pipeline" is "first[-]party data" (Compl. ¶ 13), which appears to be based on Twilio's discussion of this concept on its website. Therefore, these webpages provide critical context for that central allegation. Plaintiff's extensive allegations

concerning Twilio's business model demonstrate that he necessarily relied on the webpages describing Twilio's business. **Exhibits J, K, U, R, T**, and **P** are properly incorporated.

*Twilio's Alleged Use of Data* (**Exhibits M and N**): In the Complaint, Plaintiff makes repeated allegations about Twilio's "use" of consumer data. Compl. ¶¶ 4, 12, 26, 27, 28, 44, 45, 51, 53, 59, 60, 62. Then, in Paragraphs 26-29, Plaintiff hones in and makes more specific allegations about how certain Twilio products "use" data, and he does so by quoting from Twilio's webpages. Plaintiff does not dispute that the quotes discuss Twilio's Engage and Unify products, which are explained in **Exhibits M** and **N**, respectively. Since those allegations form Plaintiff's vital "use" allegations, they are incorporated and should be viewed in full context.

*Twilio's Alleged "Interception" of Data* (**Exhibits Q, S, R, T**): **Exhibits Q, R, S**, and **T** form the basis of, or otherwise provide context for, Plaintiff's allegations concerning Twilio's collection of end-user data. *See* Compl. ¶¶ 3, 5, 16, 17, 18, 19, 21, 24. 25, 31, 32, 33, 43, 44, 45 52, 57, 58, 59, 60. For instance, **Exhibits S** and **T** discuss Twilio's "Connections" product that seems to be the central aspect of the "Segment SDK" that Plaintiff complains of as it is the feature that might allow Twilio's clients to "collect" their "first-party data." *See* Heim, Decl., Ex. T. **Exhibits Q** and **R** explain what types of data can be tracked, which corresponds to Plaintiff's allegations about what types of "contents" are allegedly collected by the Segment SDK. *See, e.g.*, Compl. ¶¶ 1, 3, 5, 16, 17.; *but see* Heim Decl., Ex. Q (Native Mobile Spec) (describing common "events" tracked in mobile apps). Because Plaintiff's "interception" allegations stem from the contents of these webpages, Plaintiff necessarily relies on them and they are incorporated.

### III. CONCLUSION

Twilio's request for incorporation by reference and judicial notice should be granted.

Dated: January 31, 2025                    KEKER, VAN NEST & PETERS LLP

By: */s/Benjamin Berkowitz*
BENJAMIN BERKOWITZ
MATAN SHACHAM
JACQUELINE CONCILLA
NATALIE R. HEIM

Attorneys for Defendant
TWILIO INC., a Delaware corporation

12
REPLY IN SUPPORT OF TWILIO INC.'S REQUEST FOR JUDICIAL NOTICE
Case No. 3:24-cv-04914-AMO

2844402